Hearing Date: October 1, 2026 at 10:30 a.m.
Objection Deadline: September 24, 2026 at 4:00 p.m.

**ABRAHAM KLEINMAN**
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com
*Creditor and Party in Interest, Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re: Chapter 11

THE RIDGEVIEW REALTOR LLC, Case No. 26-43491 (ESS)

Debtor.

-----------------------------------------------------------x

**JOINDER OF ABRAHAM KLEINMAN IN THE OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S APPLICATION TO RETAIN RUBIN LLC, AND MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 542(e) AND FED. R. BANKR. P. 2004, 7065 AND 9016 (I) AUTHORIZING EXAMINATIONS AND THE ISSUANCE OF SUBPOENAS, (II) DIRECTING THE PRESERVATION OF BOOKS AND RECORDS, AND (III) DIRECTING THE TURNOVER OF RECORDED INFORMATION BY THE DEBTOR'S ACCOUNTANTS**

**TO THE HONORABLE ELIZABETH S. STONG, UNITED STATES BANKRUPTCY JUDGE:**

Abraham Kleinman ("Kleinman"), a creditor holding a claim of not less than $3,500,000, the holder of a 10% membership interest in the Debtor, and a party in interest, pro se, respectfully (a) joins in the Objection of the United States Trustee (ECF No. 17) (the "UST Objection") to the Debtor's Application to Retain Rubin LLC (ECF No. 7) (the "Retention Application"), and (b) moves (the "Motion") for entry of an order, substantially in the form annexed as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 542(e) of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2004, 7065 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 65 of the Federal Rules of Civil Procedure, and Local Bankruptcy Rule 2004-1: (i) authorizing Kleinman to examine under oath, and to obtain the production of documents from, the Debtor, Joseph Doppelt ("Doppelt"), Moshe Zev Doppelt, and Yeshivah and Mesivta Arugath Habosem ("YMAH"), and to issue subpoenas under Bankruptcy Rule 9016 to the third parties identified in Schedule 2 (together, the "Examinees"); (ii) directing every Examinee to preserve all books and records relating to the Debtor and the Property; (iii) directing Hirsch Dinter & Co., CPAs, YMAH's auditors, to turn over their recorded information concerning the Debtor under section 542(e); and (iv) pre-authorizing the enforcement procedure set out in the Proposed Order. In support, Kleinman relies on the Declaration of Abraham Kleinman dated September 15, 2026, filed contemporaneously with his motion for the appointment of a chapter 11 trustee, and on Exhibits 1 through 31, including Exhibit 14, annexed hereto and listed in the Schedule of Exhibits at the end of this Motion (cited "Ex. 2" and so forth), and states:

**PRELIMINARY STATEMENT**

1. Two documents should be read before anything else in this case. On June 4, 2026, five weeks before the petition, Kalter, Kaplan, Zeiger & Forman, the firm the Debtor now asks this Court to retain, wrote to the Town of Rochester "on behalf of my client," with "Yoseph Doppelt" copied, that "[a]s has been the case the last two summers, my client would like to operate the facility this summer for religious education with an emphasis of alcohol and drug abuse," and that "[f]ollowing this summer, my client will consent to terminate the use of the property as a alcohol and drug rehabilitation center." Ex. 1 at 2. Attached to that letter, as the "letters and documents from my clients confirming the continuing use of the property," was a letter dated June 2, 2026 on Yeshivah Mesivta Arugath Habosem letterhead, signed "Joseph Doppelt,

Administrator": "We operate a year-round organization for children ages twelve to eighteen. Within our organization we have a program to assist kids in abstaining from alcohol and drugs. … At this time, we want to take the kids to our facility in Kerhonkson, NY and continue with our activities there for the next two months." Ex. 1 at 3. "Our facility in Kerhonkson" is 5 Ridgeview Road, the Debtor's only asset. The "last two summers" are 2024 and 2025, and the second of them ended with the death of a child in the ritual bath on the Property. The "kids" are twelve to eighteen years old. The credentials attached for the director of this "year-round" program were a master's degree conferred on May 22, 2026, eleven days before the letter, and a printout dated June 1, 2026 of three online assignments in a course titled "Drug and Alcohol." Ex. 1 at 4-6.

2. Set those two documents beside what the same people told everyone else. To this Court, under penalty of perjury, the Debtor has no business, no income, no lease, no tenant and no affiliate, and the Property has been vacant since August 2025. ECF Nos. 1, 11, 16. To the Ulster County Department of Health, the same operation at the same Property was a "children's camp" for 172 campers under Subpart 7-2 of the State Sanitary Code, with Joseph Doppelt as camp director, and the words alcohol, drug and rehabilitation appear nowhere in the application. Exs. 5, 28, 29. Under New York Mental Hygiene Law § 32.05, no one may operate a substance use disorder treatment program without an operating certificate from the Office of Addiction Services and Supports; none is claimed anywhere in the record and none is scheduled. If the June 4 letter is true, an uncertified alcohol and drug rehabilitation center for minors was run on the Debtor's Property for two summers, one of them the summer of the death, by the entity the Debtor swears is a stranger to it, and the Debtor proposed to run it a third time while telling this Court the Property was empty. If the June 4 letter is not true, the Debtor's counsel put a false account of the use of the estate's only asset before a municipal prosecutor to settle a code enforcement action, at Doppelt's

direction and with Doppelt copied. Either way, the firm that wrote it cannot be the estate's counsel, the man who directed it cannot be the estate's fiduciary, and the records behind it must be produced.

3. The United States Trustee asked that the Retention Application be denied or adjourned until Doppelt "can appear and answer questions under oath," because "[a]bsent a clear and consistent explanation of the source of funding for counsel and the authority of the individual directing the actions of the Debtor, it cannot be determined if proposed counsel is disinterested." UST Objection at 2. Kleinman joins that request. The record now shows why there is no clear and consistent explanation: the Debtor has given four sworn accounts of who owns it, to the IRS (Joseph Doppelt, 2023), to its Lender (David Braun, Managing Member, 2023), to the U.S. Small Business Administration ("all of the Members": Moshe Zev Doppelt and **YMAH**, December 2024), and to this Court (three Doppelts and the Braun estate, no YMAH and no Kleinman, August 2026), and one of them is false. Exs. 2, 3; ECF Nos. 11, 14, 19-2.

4. The same record shows that YMAH, a Brooklyn corporation of which Doppelt is President and Administrator, held the Ulster County permits to operate a 172-person camp on the Property in 2025, admitted in a verified state-court pleading that it is the Property's "owner and operator," wired money on the Debtor's mortgage, paid the Debtor's contractors in June 2026, and put the Debtor forward to the SBA as guarantor and mortgagor of YMAH's own $995,000 federal loan, while the Debtor swore to this Court that it had no income, no affiliate, no lease, no lien but the Lender's, and no insider transfers. Ex. 3-10; ECF No. 11. The Debtor's books are held by one person. SOFA ¶ 26c. The only accountants who have ever reported on the Property's revenue are YMAH's. Its counsel is paid by Doppelt. No one on the Debtor's side of this case will produce these records voluntarily.

5. Rule 2004 exists for this. Kleinman asks the Court to enter the kind of order that experience in this Circuit has shown actually produces records from a principal who controls them: one order reaching every custodian, with a preservation injunction, a sworn certificate of completeness from each producing party, production in native and searchable form, a list of anything withheld or destroyed, turnover from the accountants under section 542(e), and a pre-set path to contempt for non-compliance. See, e.g., In re Kossoff PLLC, No. 21-10699 (DSJ) (Bankr. S.D.N.Y.), ECF Nos. 27, 62 (omnibus Rule 2004 order with preservation injunction and § 1746 certification), 427 (order compelling production in Excel format and pre-authorizing contempt), 551 (§ 542(e) turnover from accountants).

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States District Court for the Eastern District of New York. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested are 11 U.S.C. §§ 105(a) and 542(e), Bankruptcy Rules 2004, 7065 and 9016, Fed. R. Civ. P. 45 and 65, and Local Bankruptcy Rule 2004-1.

## BACKGROUND

### A. The Debtor, the Property and the Case

7. The Debtor filed this case on July 21, 2026, the day before a scheduled foreclosure sale, and designated itself a single asset real estate debtor. ECF No. 1; UST Objection ¶¶ 4, 6-7. Its only asset is 5 Ridgeview Road, Kerhonkson, New York (the "Property"), an approximately 85-acre former treatment campus with a 55,612-square-foot, 83-room facility, bought November 20, 2023 for $5,050,000 and scheduled at $5,200,000. Schedule A/B ¶ 55.1; ECF Nos. 16 ¶ 1, 19-2. The Debtor has no cash, no bank account, no employees, no accountant,

no bookkeeper and no financial statements; reported $0 of income for 2024, 2025 and 2026; scheduled one secured creditor (Ridgeview Lender LLC, $4,550,600) and four unsecured creditors totaling $122,151.50; and lists no lease, contract, affiliate or insider transfer. Schedules A/B, D, E/F, G, H; SOFA ¶¶ 1, 4, 25, 26, 30. Joseph Doppelt signed everything as Manager and alone holds the books. SOFA ¶ 26c.

**B. Four Sworn Accounts of Ownership**

8. August 15, 2023: the Debtor was formed through a Monsey filing service, at Kleinman's expense, with Doppelt's apartment as its address, and on August 16, 2023 the IRS issued its EIN to "RIDGEVIEW REALTOR LLC, JOSEPH DOPPELT MBR," with partnership classification. Ex. 2. November 20, 2023: the Lender's note was signed by "David Braun, Managing Member." ECF No. 19-2 at 26. December 3, 2024: the closing package that Doppelt submitted to the SBA in the Debtor's name, for YMAH's $995,000 disaster loan, included a Certificate of Authority stating that "the following are all of the Members of the Limited Liability Company: MOSHE ZEV DOPPELT [and] YESHIVAH AND MESIVTA ARUGATH HABOSEM," together with the Debtor's guarantee of that loan and a mortgage of the Property to the SBA to secure it, drawn for signature for YMAH by "JOSEPH DOPPELT, PRESIDENT." Ex. 3 at 1-2, 7-10, 25-36. Kleinman is informed by the SBA that the loan did not close and was cancelled, and that on October 22, 2025 Doppelt sought a loan modification that the SBA conditioned on approvals never obtained; the SBA's file is a subject of the examination sought. August 11, 2026: the Schedules and Statement of Corporate Ownership list Joseph Doppelt (10%, Manager), Raizel Doppelt (10%), Moshe Doppelt (40%) and the Estate of David Braun (40%), although Braun sold a 10% interest to Kleinman on March 15, 2024 and Kleinman appears nowhere in them; YMAH is not a member, creditor, codebtor or lienholder; nothing about the SBA

application, the certificate or the offered guarantee and mortgage appears in the Schedules. ECF Nos. 11, 14. YMAH's own audited financial statements, certified by Doppelt, report no investment in the Debtor and no $995,000 SBA loan. Ex. 8. The only operating agreement of the Debtor in existence is an unsigned form dated November 2023 naming David Braun (40%), Moshe Doppelt (40%), Raizel Doppelt (10%) and Joseph Doppelt (10%) and making Braun the Manager; Doppelt filed this case as "Manager" on a Certificate of Corporate Resolution reciting a special meeting of July 20, 2026 attended by the three Doppelts alone, of which neither Kleinman nor the Braun estate had notice. Ex. 24; ECF No. 1 at 6-7.

**C. YMAH's Operation of the Property**

9. In June 2025 the Ulster County Department of Health issued permits to "The Ridgeview Realtor LLC / Yeshiva and Mesivta Arugath Habosem" to operate a 56-room temporary residence and a 172-capacity children's camp at the Property. Exs. 4, 5. On July 6, 2025 the Accord Fire District found approximately 150 people on site and recorded that "Joseph Doppelt … had taken responsibility for all occupants"; the Town's fire constable recorded Doppelt's statement that "he is person responsible for the facility and participants of the camp." Exs. 6, 7. In August 2025 the Town sued the Debtor and YMAH as "the owner and operator"; the verified answer filed for both by Kalter, Kaplan, Zeiger & Forman ("KKZF") admitted it. Exs. 15, 16. The court enjoined further occupancy pending compliance by order of October 7, 2025, Ex. 17, and in February 2026 the Debtor and YMAH consented to an order requiring the remediation the Town had demanded. Ex. 18. On June 2, 2026 Doppelt wrote on YMAH letterhead, as Administrator, that YMAH wanted "to take the kids to our facility in Kerhonkson"; on June 4 KKZF proposed that "as has been the case the last two summers, my client would like to operate the facility this summer"; and through June, Yanky and Yoseph Doppelt, from @ymah.org addresses, scheduled

the Town's inspections and paid the Debtor's electrician through YMAH. Ex. 9-10, 18. On June 12, 2026 a treatment provider delivered to "Ridgeview Realtor LLC, Joseph Doppelt" a letter of intent to lease the whole Property for $450,000 a year. Ex. 19. On June 24, 2026 the Town issued a Notice of Non-Compliance with corrections due July 22, 2026, the day after the petition. Ex. 20. Two years earlier, on June 17, 2024, Upscale Interiors of Spring Valley issued an $18,350 order confirmation to "MESIVTA ARUGATH HABOSEM, 5 Ridgeview road, Kerhonkson NY" for the setup, nine-week rental and removal of a ritual bath with a water heater and four showers plumbed into the house drain, and the same day Doppelt signed YMAH check No. 12034 for the $9,000 deposit on that ritual bath, drawn on YMAH's account ending 7049, routing number 026013576, a routing number issued to Signature Bank and now operated by Flagstar Bank, N.A. as its successor, which Arugath Habosem's own remittance advice identifies as its "Signature 7049 Gener" account. Ex. 23. It is the ritual bath in which the child died. The New York State Police reported that on August 20, 2025 a 17-year-old "entered a large tank of water, referred to as a Mikvah, and grabbed a handheld pool heater, resulting in electrocution and loss of consciousness" on Ridgeview Road. Ex. 25. YMAH's audits report "Summer Camp Tuition" of $1.24 million, $1.53 million and $2.22 million for fiscal 2023-2025. Ex. 8. The Debtor's sworn account is that the camp was run by "Yeshiva Toras Chaim," that it earned nothing, and that the Property has been vacant since September 2025. ECF No. 16 ¶¶ 2-3.

10. Arugath Habosem told the Ulster County Department of Health, on a form its carrier signed under penalty of perjury, that it is an employer with employees. On May 30, 2024, ShelterPoint Life Insurance Company issued Form DB-120.1, the Certificate of Insurance Coverage required by section 220(8) of the New York Disability and Paid Family Leave Benefits Law, naming as the insured in Box 1a "YESHIVAH AND MESIVTA ARUGATH HABOSEM,

40 LYNCH STREET, BROOKLYN, NY 11206," federal employer identification number 11-1754036, the same number by which YMAH is defined in Schedule 1 hereto, under policy No. DBL159621 for the period January 30, 2024 to January 29, 2025. Box 4A is checked for both disability and paid family leave benefits. Box 5A is checked for "All of the employer's employees." The entity named in Box 2 as requesting the proof of coverage, that is, the certificate holder, is the Ulster County Department of Health. Ex. 27. That form is filed with a permitting agency in order to obtain a permit, and the only permits that Department issues for the Property are the temporary residence and children's camp permits at Exhibits 4 and 5. The certificate was furnished to that Department on May 30, 2024, at the express request of its Environmental Health Manager, who had asked for the permit application "with insurance and fee" for the Property. Arugath Habosem obtained that policy and paid its premium. Kleinman Decl. ¶ 12. It is dated within three weeks of the order Arugath Habosem placed for the ritual bath at the Property, Ex. 23, and it is a year earlier than the 2025 permits. The Debtor swears it has no employees, no operations and no income. On Arugath Habosem's own filing with a county agency, the employer at the Debtor's Property was Arugath Habosem.

11. The Debtor was not idle at the Property either, and it acted there in its own name. On May 21 and 22, 2025, five weeks before the camp season, the Debtor applied to the Town of Rochester for two building permits. Miscellaneous Permit Application 25/394 names "Ridgeview Realtor LLC" as property owner and PSI Concrete as builder, describes a two-story structure of 3,600 square feet whose intended use is a "Prayer Room," and states the cost of the work at $11,000. Demolition Permit Application 25/395, of the same day, sought to demolish a 3,000 square foot interior room. The Town granted both on June 3, 2025. The plan filed with them, sheet A-101 of DrawME Design signed by Eric Knute Osborn, R.A., calls for the former in-ground pool

basin at the Property to be backfilled with crushed stone, compacted, covered with a vapor barrier and finished with a five inch concrete slab. Ex. 26. Three things follow. The Debtor, not Yeshiva Toras Chaim and not YMAH, was the applicant and the owner of record on that work, in the very period for which it swears to this Court that it had no income, no operations and no business of its own. The Debtor had no bank account of any kind in 2025, so someone else paid the contractor, and the Debtor has never said who. And the Workers' Compensation and Disability Benefits section of Application 25/394 is blank: no policy number is given and no exemption is claimed, and the only certificate of insurance in the Town's file is the contractor's own, which reached the Town from an Arugath Habosem e-mail address and for which Arugath Habosem, not the Debtor, paid. Kleinman Decl. ¶ 12. YMAH has also paid $49,396 of premiums on insurance for the Debtor and the Property, out of five different accounts of its own: $11,656 from the account ending 9134, $5,828 from the American Express account ending 1000, $7,451 from the account ending 8172, $7,060 from the account ending 7873, and $17,401 from the general operating account ending 7049 on which check No. 12034 was drawn. Each of the five is an account of YMAH. Kleinman Decl. ¶ 13. Which institution holds each of them is a fact within the knowledge of YMAH and of Doppelt, its President and signatory, and Schedule 1 requires them to identify it. Who employed, paid and insured the people working at the Debtor's Property is a question this estate cannot answer out of its own books, because it has none.

12. The County of Ulster has already prosecuted the Debtor and YMAH as one. On November 4, 2025 and again on April 1, 2026, the Ulster County Department of Health preferred charges under the Ulster County Sanitary Code against a single Respondent it identified as "The Ridgeview Realtor LLC/Yeshiva and Mesivta Arugath Habosem," at 23 Heyward Street, #1B, Brooklyn, addressed to Joseph Doppelt. Ex. 28. Charge 1 in each notice reads that the "Respondent

failed to adequately prevent public health hazards," that "modifications to electrical wiring done were observed in a garage converted to a Mikvah room without building department approval," that "[s]ome electrical wires were in poor condition," that "[s]ome extension cords were taped with electrical tape and double extension cords were present," and that "[o]verhead wiring [was] observed within three (3) feet above religious pool," and that the violation "was noted on the inspection dated August 22, 2025." Charge 2 in each notice reads that the "Respondent failed to adequately maintain medical log and report an incident," and that "[a]t the time of inspection, the incident which occurred at Mikvah was not reported and no medical log was on site." The Department set a preliminary conference for April 23, 2026, the parties convened, and Doppelt signed a Stipulation of Settlement for "THE RIDGEVIEW REALTOR LLC / YESHIVA AND MESIVTA ARUGATH HABOSEM" in which "the Respondent accepts responsibility for such violations and the need to take corrective measures," both of them, the wiring over the pool and the failure to report the incident, agreeing to corrective action and to a fine not to exceed $4,000 if the establishment is found in continued noncompliance during the 2026 operating year. Ex. 28. What the Debtor did with those documents is the point. Question 7 of the Statement of Financial Affairs requires the Debtor to list every legal action, administrative proceeding and governmental audit in which it was involved in any capacity within the year before filing. The Debtor answered with an exhibit listing three proceedings: the Lender's foreclosure, the Town of Rochester's code enforcement action, and the wrongful-death action in Kings County. It did not list the Ulster County Department of Health proceeding, the Notices of Charges, the preliminary conference or the Stipulation of Settlement, every one of which falls inside that year. ECF No. 11, SOFA ¶ 7 and SOFA Exhibit 7. A debtor that lists the Town's enforcement action over the same property and leaves out the County's did not overlook the category.

13. The same file answers the question of who ran the Property. Doppelt submitted his own curriculum vitae to the Department in the camp application, from Ydoppelt@ymah.org at 23 Heyward Street, which is the Debtor's own service-of-process address. It states that he has been "Head of School" of Yeshiva Mesivta Arugath Habosem since 2012, running a school of "over 650 students, faculty, and staff" with oversight of "all aspects of school operations, including curriculum development, staff hiring and supervision, budgeting, admissions," and that he has been "Assist Camp Director" of "Camp Arugath Habosem" since 2016, supporting the Camp Director in "overseeing daily operations for a summer camp serving over 750 campers and 80 staff members" and assisting with "staff training, health & safety compliance, and emergency procedures." Ex. 29. The Department's own intake sheet for the 2025 season records 172 campers, operation from June 24 to August 29, 2025, and, in the Department's hand, "Camp Director: Name Joseph Doppelt." Ex. 29. Every inspection report the Department issued for the Property in 2025 is directed "To the Attention of: Joseph Doppelt," and the report of August 25, 2025 names as the responsible person, and as the person who received it, "Joseph Camp Director." Ex. 31. The re-inspection of August 22, 2025, two days after the death, records that State and national sex offender registry checks and staff reference checks had not been completed, that camper and staff orientation had not been done, that the aquatics director had not signed off on the safety plan, that there was no medical log on site, and that the incident at the Mikvah had not been reported. Ex. 31. Nineteen days before that, on August 1, 2025, the Department had cited as a public health hazard an exit door from the synagogue basement screwed shut and a smoke detector not functioning. Ex. 31. The Debtor's sworn account to this Court is that the camp was run by a different entity and that the Debtor had nothing to do with it. ECF No. 16 ¶ 3.

14. And the Department's file establishes who employed the people at the Property. Three certificates of employer coverage were furnished to the Department for two camp seasons, and every one of them names Arugath Habosem as the insured employer: Form DB-120.1 of May 30, 2024 for the 2024 policy year, Ex. 27; Form C-105.2, the workers compensation certificate, of May 27, 2024 for the policy year August 18, 2024 to August 18, 2025; and Form DB-120.1 again for the policy year January 30, 2025 to January 29, 2026. Ex. 30. The Debtor swears it has no employees. SOFA ¶ 30; ECF Nos. 25, 26. Both statements cannot describe the same enterprise, and the one made to this Court was sworn.

**D. The Money**

15. The Lender's payment history shows $494,000 wired on the Debtor's mortgage between January 2024 and April 2025, including a single $300,000 wire on April 10, 2025, from a Debtor with no bank account; the remitting account is not identified. ECF No. 19-5; Ex. 21. YMAH's audits show "Loans Payable - Related Parties" rising from $120,131 to $1,295,982 in the year to June 30, 2025, third-party demand loans of $1,047,580, and a $750,000 M&T Bank line "secured by all assets of the Organization." Ex. 8. The Debtor's first Monthly Operating Report, filed September 10, 2026, certifies $0 of disbursements by anyone and no payments "to or on behalf of insiders," and in the same questionnaire that the Property is insured and the premiums are current, on a policy issued to "The Ridgeview Realtor LLC, Habosem Home LLC" and invoiced on September 9, 2026. ECF No. 25 at 8; Ex. 22. On August 7, 2026, seventeen days after the petition, the Debtor opened its first bank account, a debtor in possession checking account ending 0253 at Flagstar Bank, N.A., the institution that acquired Signature Bank from the Federal Deposit Insurance Corporation in March 2023 and operates the former Signature branches, and the same institution that carries YMAH's general operating account ending 7049, on which Doppelt

drew check No. 12034. One deposit has been made into it: $100 on August 11, 2026, wired from a JPMorgan Chase account ending 9093 in the names of Jacob Doppelt or Rose Friedlander. The August report shows receipts of $100, disbursements of $0, no employees, no operations and no professional fees approved or paid. ECF Nos. 26, 26-1.

**E. The Retention Application**

16. Doppelt personally paid Rubin LLC's $25,000 retainer. ECF No. 7 ¶ 7. The United States Trustee objected that "[t]he funding by a third-party under such circumstances introduces questions of conflict of interest," that Doppelt "holds all the books and records of the Debtor," and that his authority to direct the Debtor has not been shown. UST Objection at 2. The Court set the objection for hearing on October 1, 2026. ECF No. 18. On September 9, 2026 the Debtor also applied to retain KKZF, the firm that represented the Debtor and YMAH together in the Town action and that moved to withdraw from that action in May 2026 for non-payment, as special counsel. ECF No. 23; Exs. 14, 15, 16.

17. Kleinman appeared in this case on September 11, 2026. ECF No. 27. His own position is stated plainly. He paid for the Debtor's formation in August 2023. On March 15, 2024 he purchased a 10% membership interest from David Braun, out of Braun's 40%, and has held it since; the same day KKZF engaged him as its client for the Property and he signed the Debtor's zoning application as a member. Exs. 11, 13. He verified the Debtor's answer in the Town action as a member. Ex. 12. Between November 2023 and June 2026 MAA Capital Management LLC, an entity he owns and controls, advanced not less than $3,500,000 to and for the benefit of the Debtor as loans, and on June 15, 2026 assigned that claim to him. The advances were made to and for the benefit of the Debtor and of YMAH together, at Doppelt's request, and on Doppelt's own account of the two entities, given to Kleinman when he asked which of them the money was for,

that "they are all one," that "they all share the same accounts," and that they use the same credit cards, Kleinman Decl. ¶ 6, and a substantial part of the money was received and applied by YMAH for the Property it occupied and used; Kleinman accordingly holds his claim against the Debtor and against YMAH and Doppelt jointly and severally, and the claims against YMAH and Doppelt are his own property and not property of this estate. The Schedules omit both his interest and his claim, and attribute the full 40% to Braun's estate. Kleinman joins in and ratifies the decision to seek chapter 11 relief; he does not consent to Doppelt acting as Manager or debtor in possession, and has moved for a trustee.

## JOINDER

18. Kleinman joins the UST Objection in full. Counsel whose retainer came from Doppelt cannot be expected to investigate Doppelt, YMAH, the SBA episode, the $494,000 of wires, or the camp revenue, every one of which is a claim of the estate against the person who paid the retainer. In re Granite Partners, L.P., 219 B.R. 22, 36 (Bankr. S.D.N.Y. 1998); In re Leslie Fay Cos., 175 B.R. 525, 534 (Bankr. S.D.N.Y. 1994). The Retention Application should be denied, or adjourned until the examinations sought herein are complete.

19. Kleinman joins on two further grounds, neither of which depends on the source of the retainer. The first is the subject matter of the estate's own claims. The United States Trustee has stated that the Property was the site of a tragic death within the last year, that Doppelt was a member of the Debtor at the time, and that the circumstances remain unclear. UST Objection ¶ 11; ECF No. 16 ¶ 4. The claims, defenses, insurance rights and liabilities arising out of the condition, equipping and use of the Property are assets and burdens of this estate, and they must be investigated by whoever represents it. The persons who controlled the Property and equipped it are Doppelt and YMAH. YMAH ordered the ritual bath in June 2024, and Doppelt signed the

check that paid in connection with the Mikvah, aka the ritual bath that was the place of the tragic death, a year before any permit for it was sought. Exs. 23, 25. Counsel retained and paid by Doppelt cannot investigate, value, compromise or prosecute the estate's claims against Doppelt and against the entity he heads, cannot advise the estate whether to pursue them, and cannot position the estate in the wrongful-death litigation arising from the same premises. That is an interest adverse to the estate within the meaning of section 327(a), independent of who paid the retainer, and it is not curable by disclosure. The point is no longer hypothetical. Doppelt has already signed a settlement, on behalf of the Debtor and YMAH jointly, accepting responsibility for violations at the Debtor's Property and obligating the Debtor to corrective work and to a fine, and then omitted the entire proceeding from the Debtor's sworn Statement of Financial Affairs. Ex. 28; ECF No. 11, SOFA ¶ 7. Counsel chosen and paid by the person who did that cannot be the professional who now investigates it.

20. The second is the custody and the integrity of the estate's records. The Debtor swears that Doppelt holds all of its books and records and identifies none as unavailable. SOFA ¶ 26c.1. The Town of Rochester's Code Enforcement Officer has already found that inspection reports furnished to the Town on the Debtor's behalf were blank and suspected to be fraudulent. Exs. 10, 20. Where the sole custodian of the estate's records is the person who is funding estate counsel, and where a public official has questioned the integrity of documents already submitted in the Debtor's name, the estate requires an independent fiduciary, independent counsel and a preservation directive. Kleinman seeks that directive in Part B below, and requests in addition, whatever the Court does with the Retention Application, that the Debtor, Doppelt and YMAH be directed to confirm on the record that a litigation hold has been in place since the Petition Date covering all documents, communications, devices, electronic mail and messaging accounts, bank

records and electronically stored information concerning the Property, the events of August 2025, the permits and inspections, and the Debtor's finances, and that nothing within that scope has been deleted, discarded, overwritten or altered.

21. The Debtor's own August operating report supplies a third reason to examine the person directing this case before any professional is approved on his application. The Debtor opened the first bank account it has ever had on August 7, 2026, seventeen days after the petition, at Flagstar Bank, N.A., the institution that acquired Signature Bank from the Federal Deposit Insurance Corporation in March 2023 and operates the former Signature branches, and the same institution that carries YMAH's general operating account ending 7049, on which Doppelt drew check No. 12034. ECF Nos. 26, 26-1; Exs. 22, 23. Neither report states who opened that account, on whose authority, who signed the signature card, who the authorized signatories are, or whether any existing YMAH banking relationship, officer or branch was used to open it, and the statement is addressed to 23 Heyward Street in Brooklyn rather than to the Property. The only money this estate has ever held is a credit of $100 on August 11, 2026 from a JPMorgan Chase account ending 9093 in the names of Jacob Doppelt or Rose Friedlander. Neither is identified anywhere in the Debtor's papers; their relationship to Doppelt, to the Debtor and to YMAH is not disclosed; the advance is not characterized as a loan, a capital contribution or a gift; and no application was made under section 364. Jacob Doppelt appears in the Town's records as the on-site contact and manager at the Property for the fire-alarm responses of June 2026, at a time when the Debtor swore it had no operations, no employees and no income. Ex. 20. Schedule 1 requests those documents. The examination will supply the answers.

## THE MOTION

### A. Rule 2004 Reaches Every Examinee and Every Subject Sought

22. Rule 2004(a) permits the Court, "[o]n motion of any party in interest," to "order the examination of any entity." The examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate," and in a chapter 11 case to "the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan." Fed. R. Bankr. P. 2004(b). Production and attendance may be compelled by subpoena. Fed. R. Bankr. P. 2004(c), 9016. The scope is "unfettered and broad." In re Bakalis, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998); In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). Non-debtor affiliates, their principals, and third parties who dealt with the debtor are within it. In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). Good cause is shown where the examination is "reasonably necessary for the protection of legitimate interests." In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004). The examination is sought for the administration of this estate: to answer the questions the United States Trustee has put on the retention application, to identify the estate's property, its insiders, its liens and the source of its funds, and to establish the custody and integrity of its books. Those are the matters Rule 2004(b) names. The rule that a party may not use Rule 2004 to obtain discovery for litigation it has already commenced, In re Enron Corp., 281 B.R. 836, 840-42 (Bankr. S.D.N.Y. 2002); In re Bennett Funding Grp., Inc., 203 B.R. 24, 28-29 (Bankr. N.D.N.Y. 1996), does not reach an examination directed to the administration of the case, and it does not permit a debtor to immunize itself from Rule 2004 by pointing to a proceeding that concerns different questions. Whether Kleinman's advances are the joint obligation of the Debtor, Doppelt and YMAH is one question. Who owns the Debtor, who paid its counsel, where its records are, who funded its bank account and what

YMAH collected from its Property are others, and they belong to every creditor and to the United States Trustee, not to Kleinman alone. Enron itself allowed the examination to proceed on the matters that were not the subject of the pending litigation. 281 B.R. at 842.

23. Good cause is plain. Who owns the Debtor, who paid its mortgage, who collected the revenue from its Property, who holds liens on it, and who is paying its counsel are the questions the United States Trustee has already put to the Court, and they are questions on which the Debtor's filings are contradicted by the Debtor's own signed documents. The estate's potential claims, avoidance under §§ 544, 548 and 550 of any obligation incurred or transfer made for YMAH's benefit, including any instrument delivered for the cancelled SBA loan, turnover of camp revenue (§§ 541(a)(6), 542; Taub v. Taub (In re Taub), 427 B.R. 208, 220-22 (Bankr. E.D.N.Y. 2010)), and recovery of insider payments, all run against the person in possession of the books. Rule 2004 is the only mechanism by which a creditor can develop that record before October 1.

**B. The Form of Order Requested**

24. Kleinman asks for six provisions beyond a bare authorization, each of which has been ordered in this Circuit in materially similar circumstances and each of which addresses a specific feature of this record:

(1) Preservation. An order under section 105(a), Bankruptcy Rule 7065 and Fed. R. Civ. P. 65 restraining each Examinee from "concealing, deleting, destroying, removing or otherwise altering" any book or record relating to the Debtor or the Property absent further order or Kleinman's prior written consent, with security waived under Rule 65(c). The Debtor's records are in the sole custody of the person whose conduct they document. SOFA ¶ 26c. The Town has already found reports submitted by the Doppelts to be blank. Ex. 10.

(2) Sworn certification of completeness. Each producing party to serve, with its production, written request-by-request responses and a declaration under 28 U.S.C. § 1746 that no responsive record has been "altered, modified, deleted, or otherwise destroyed," that a diligent search was made, and identifying every account, by

number, into or from which Debtor funds passed. Without it, a bare "no responsive records" letter is unfalsifiable.

(3) Native and searchable form. Electronically stored information to be produced in native form and, for financial data, in Microsoft Excel or comparable spreadsheet form, with bank and card statements unredacted. A PDF image of a bank statement cannot be sorted, summed or matched to the Lender's ledger; the tracing this record requires cannot be done from it.

(4) Withheld Document List. For any responsive record not produced, a schedule stating the basis for withholding, and, for any record no longer in the party's possession, when it was last held, its disposition, who now has it, and, if destroyed, when, by whom, and at whose direction. A privilege log under Bankruptcy Rule 7026 for anything withheld as privileged.

(5) Pre-authorized enforcement. Production within fourteen days of service; a meet-and-confer within five business days of any deficiency; disputes to be raised by letter not exceeding five pages; and, on any failure to comply, leave for Kleinman to submit a proposed order to show cause why the non-complying party should not be held in civil contempt and subjected to coercive sanctions "until full compliance … has been made." Section 105(a) "plainly may be used to enforce and implement" the Court's own orders. In re River Ctr. Holdings, LLC, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008); Fed. R. Civ. P. 45(g). Building the enforcement path into the order avoids a second round of motion practice before the October 19 § 362(d)(3) deadline.

(6) Section 542(e) turnover from the accountants. Section 542(e) provides that "the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information." Hirsch Dinter & Co., CPAs, of Monsey, New York, audited YMAH for fiscal 2023, 2024 and 2025, including the two years in which YMAH collected camp revenue at the Property, paid the Debtor's mortgage, and swore to the SBA that it was the Debtor's member, and certified financial statements that record neither. Ex. 8. Their workpapers, related-party schedules, bank confirmations and management representation letters are the only contemporaneous, third-party account of the money that passed between YMAH and the Debtor, and the Debtor itself has had no accountant. SOFA ¶ 26a. The Proposed Order provides that the accountants shall incur no liability under 26 U.S.C. § 7216 or any duty of confidentiality for production made in compliance with it, which removes the only objection accountants ordinarily raise. See Kossoff, ECF No. 551.

**C. The Third-Party Subpoenas**

25. Schedule 2 lists the third parties to whom Kleinman proposes to issue subpoenas under Bankruptcy Rule 9016, and the categories sought from each: the Debtor's and YMAH's banks (M&T Bank; Flagstar Bank; Valley National Bank; JPMorgan Chase; any bank identified in production), by account number and by the Debtor's and YMAH's employer identification numbers rather than by name; the SBA (Loan No. 5889139106: the application and closing file, the cancellation and the October 2025 modification request, and YMAH's EIDL and PPP files); KKZF (engagement letters, retainer records, and its files in the Town action and the SBA closing); the Town of Rochester and the Ulster County Department of Health, which denied a Freedom of Information Law request for these records on July 1, 2026 on the stated ground that it has no records for the Property, over the signature of the same officer who had signed the Department's Stipulation of Settlement concerning the Property ten weeks earlier, Ex. 28, a ground its own two permits and its own enforcement file contradict (the complete permit files for the Property, including the applications for the temporary residence and children's camp permits, the person named as camp director or operator, every certificate of insurance and proof of workers' compensation and disability and paid family leave benefits coverage submitted with them, the building permit files 25/394 and 25/395, and all inspection and incident records); ShelterPoint Life Insurance Company (policy No. DBL159621 and every other policy issued to YMAH, the applications for them, the payroll and employee counts reported, and every certificate issued on them); the vendors YMAH paid for work on the Property (Firex Sprinklers, M&S Electrical, P&G Brokerage, Inc.); the prospective tenant (Areba Casriel, Inc.); and the insurer and broker on the Property's policy, to identify "Habosem Home LLC" and who pays the premiums. Each is a custodian of records the Debtor has not produced and will not.

**D. Local Rule 2004-1**

26. Kleinman has complied with Local Bankruptcy Rule 2004-1. On September 14, 2026, before filing, he wrote to proposed counsel for the Debtor, annexing the schedule of documents requested, asking whether the Debtor would produce them voluntarily and on what timetable, whether Doppelt would sit for an examination by agreement and on what date, whether the Debtor objected to any item and on what ground, and whether the Debtor preferred a consent order. Proposed counsel responded the same morning. He asked for documentation of Kleinman's membership and of the amount of his claim, relayed Doppelt's account that the money is a personal matter between Doppelt and Kleinman, stated that the schedule is broad and asked to discuss it. He did not say whether the Debtor would produce any document, did not offer a date for an examination, did not identify an objection to any numbered item, and did not respond to the proposal of a consent order. Kleinman answered the same day, identified the documents that establish his membership, stated the basis and amount of his claim, and invited proposed counsel to object to specific items and to state what the Debtor will produce, offering to narrow this Motion accordingly. No agreement had been reached when this Motion was filed, and Kleinman remains willing to narrow, adjourn or withdraw any part of it by agreement. Kleinman has not previously sought this relief.

**NOTICE**

27. Notice has been given to proposed counsel for the Debtor; the United States Trustee; counsel for Ridgeview Lender LLC; the Debtor; Joseph Doppelt; Moshe Zev Doppelt; YMAH; Hirsch Dinter & Co.; KKZF; the SBA; and all parties that have filed a notice of appearance. Kleinman submits that no further notice is required.

## CONCLUSION

WHEREFORE, Kleinman respectfully requests that the Court (a) sustain the UST Objection and deny the Retention Application, or adjourn it pending the examinations sought herein; (b) enter the Proposed Order; and (c) grant such other and further relief as is just and proper.

Dated: Miami Beach, Florida
September 15, 2026

Respectfully submitted,

/s/ Abraham Kleinman

**Abraham Kleinman**
Creditor and Party in Interest, Pro Se
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com

**TO:**

Paul A. Rubin, Esq.
Hanh V. Huynh, Esq.
Rubin LLC
11 Broadway, Suite 715
New York, New York 10004
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com
Proposed Counsel for the Debtor

Greg M. Zipes, Esq., Trial Attorney
Office of the United States Trustee, Region 2
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004-1408
USTPRegion02.BR.ECF@usdoj.gov
greg.zipes@usdoj.gov

Aviva Francis, Esq.
Jacobowitz Newman Tversky LLP
377 Pearsall Avenue, Suite C
Cedarhurst, New York 11516
afrancis@jntllp.com
Counsel for Ridgeview Lender LLC

The Ridgeview Realtor LLC
Attn: Joseph Doppelt, Manager
23 Heyward Street, #1B
Brooklyn, New York 11249

Yeshivah and Mesivta Arugath Habosem
Attn: Joseph Doppelt, President / Administrator
40 Lynch Street
Brooklyn, New York 11206

Joseph Doppelt
23 Heyward Street, #1B
Brooklyn, New York 11249

Moshe Zev Doppelt

41 Francis Place
Monsey, New York 10952

Hirsch Dinter & Co., CPAs
Monsey, New York
Auditors of Yeshivah and Mesivta Arugath Habosem

Jeffrey Kaplan, Esq.
Kalter, Kaplan, Zeiger & Forman
47 N. Main Street, P.O. Box 186
Ellenville, New York 12428

U.S. Small Business Administration
Office of Disaster Recovery & Resilience, Loan Servicing
14925 Kingsport Road
Fort Worth, Texas 76155
Re: SBA Loan No. 5889139106