Hearing Date: September 23, 2026 at 12:00 noon (presentment)
Objection Deadline: September 23, 2026 at 12:00 noon

**ABRAHAM KLEINMAN**
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com
*Creditor and Party in Interest, Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| THE RIDGEVIEW REALTOR LLC, | Case No. 26-43491 (ESS) |
| Debtor. | |

----------------------------------------------------------x

**LIMITED OBJECTION OF ABRAHAM KLEINMAN TO THE DEBTOR'S APPLICATION TO RETAIN KALTER, KAPLAN, ZEIGER & FORMAN AS SPECIAL LITIGATION COUNSEL (ECF NO. 23)**

**TO THE HONORABLE ELIZABETH S. STONG, UNITED STATES BANKRUPTCY JUDGE:**

Abraham Kleinman ("Kleinman"), a creditor, the holder of a 10% membership interest in the Debtor, and a party in interest, pro se, submits this limited objection to the Debtor's Application to Retain Kalter, Kaplan, Zeiger & Forman ("KKZF") as Special Litigation Counsel under 11 U.S.C. § 327(e), noticed for presentment on September 23, 2026 (ECF No. 23) (the "KKZF Application"). Kleinman does not object to the Debtor having counsel in the Town of Rochester code-enforcement action. He objects to the Application being granted on presentment, without a hearing, in the form proposed, for the reasons below. The first of them rests on a document that came into Kleinman's hands this morning and is not among the thirty-six exhibits to the trustee

motion he filed earlier today (ECF No. 36): a premium finance agreement signed in the Debtor's name twenty-seven days after the petition, without this Court's authority, and paid, since then, by the entity the Debtor swears is a stranger. It is annexed as Exhibit 1 to the Declaration of Abraham Kleinman filed with this Objection ("Ex. 1"). The exhibits to the Declaration of Abraham Kleinman filed with the Trustee Motion are cited by their docket locator, ECF No. 36-4 through 36-39; Exhibit n to that declaration is ECF No. 36-(n+3).

**THE DEBTOR BORROWED MONEY DURING THIS CASE, PLEDGED ESTATE PROPERTY, TOLD THE LENDER IT WAS NOT IN BANKRUPTCY, AND HAS ARUGATH HABOSEM PAYING THE LOAN**

1. On August 17, 2026, twenty-seven days after the petition, a Premium Finance Agreement with First Insurance Funding, a division of Lake Forest Bank & Trust Company, N.A., was executed in the Debtor's name. Ex. 1; Kleinman Decl. ¶¶ 2-3. The Insured and Borrower is "The Ridgeview Realtor LLC, Habosem Home LLC, 5 Ridgeview Rd, Kerhonkson." It finances the premium on the Lexington Insurance Co. commercial property policy for the Property, No. 019764690-00, effective June 16, 2026: total premiums, taxes and fees of $49,540.63, a down payment of $12,947.00, an amount financed of $36,593.63, a finance charge of $1,440.37 at 9.350%, and nine monthly payments of $4,226.00 beginning July 16, 2026. Ex. 1 at 1. The broker is P & G Brokerage Inc., whose September 9, 2026 invoice on the same policy, to the same two insureds, is ECF No. 36-38.

2. Section 1 of the agreement provides that the Insured "grants and assigns" the lender "a first priority lien on and security interest in the financed policies" and all unearned premiums under them. Section 6 irrevocably appoints the lender the Insured's attorney-in-fact with authority to cancel the policies on default. Section 10 makes "a proceeding in bankruptcy, receivership, insolvency or similar proceeding ... instituted by or against Insured" an event of

default. Section 18 contains the Insured's warranty that "(d) Insured is not insolvent nor presently involved in any insolvency proceeding." Ex. 1 at 1-2. It is signed on the line "Signature of Insured or Authorized Agent" by electronic signature reading "yanky doppelt (Aug 17, 2026 14:24:47 EDT)." Ex. 1 at 1. Yanky Doppelt is not the Debtor's manager and is not identified anywhere in the Debtor's filings as its officer, member or agent; in this record he is Arugath Habosem personnel, writing from yanky@ymah.org, the address from which he sent Kleinman the Debtor's ten-year lease of the Property in February 2026 and corresponded with the Town for the Debtor in June 2026. ECF Nos. 36-4, 36-16; Kleinman Decl. ¶ 4.

3. The down payment and the monthly installments have been paid, and not by the Debtor: they have been paid by Arugath Habosem out of its general operating account, the account ending 7049 on which Doppelt drew the check for the ritual bath in June 2024 and from which Arugath Habosem paid $17,401 of the premiums on the Debtor's insurance. Kleinman Decl. ¶ 5; ECF Nos. 36-17, 36-38; Kleinman Declaration filed with the Trustee Motion, ECF No. 36-1, ¶¶ 13, 14.

4. Five consequences follow, and every one of them bears on whether this Court can approve a retention application that does not say who will pay the professional. First, the Debtor obtained credit after the petition and gave a lien to secure it without the authority of this Court. A debtor in possession may not obtain credit outside the ordinary course, or grant any lien to secure credit, except after notice and a hearing and by order of the Court. 11 U.S.C. § 364(b), (c); Fed. R. Bankr. P. 4001(c). No motion was made, no notice was given, no order was entered. Second, the agreement contains a warranty to a lender, made in the Debtor's name during this case, that the Debtor is not in an insolvency proceeding. It was false when made. Third, by its own terms the agreement was in default the moment it was signed, so the lender holds today an irrevocable power

to cancel the only property insurance on the estate's only asset, an 83-room facility the Town has found in violation of the fire code; that is a failure to maintain appropriate insurance that poses a risk to the estate and the public. 11 U.S.C. § 1112(b)(4)(C). Fourth, the Debtor's August 2026 Monthly Operating Report, signed by Doppelt as Responsible Party on September 10, 2026, answers "No" to Part 7(g), "Was there any postpetition borrowing, other than trade credit?"; "No" to Part 7(c), whether any payments were made to or on behalf of insiders; and reports receipts of $0, disbursements of $0 and disbursements by third parties for the benefit of the estate of $0. ECF No. 36-38 (ECF No. 26, Parts 1, 7). Each of those answers is false. Fifth, the agreement names a second borrower, Habosem Home LLC, jointly and severally liable with the Debtor and a co-insured on the estate's property policy, an entity that appears nowhere in the Schedules, the Statement of Financial Affairs or the Corporate Ownership Statement. ECF Nos. 11, 14.

5. This is the fourth documented instance of the same arrangement: Arugath Habosem wired $494,000 to the Lender on the Debtor's mortgage, ECF No. 36-36; paid $49,396 of premiums on the Debtor's insurance from five of its own accounts, ECF No. 36-1 ¶ 13; paid the Debtor's electrician and sprinkler contractor in June 2026, ECF No. 36-16; and is now servicing a loan taken in the Debtor's name after the petition. Doppelt told Kleinman the two entities "are all one" and "share the same accounts." ECF No. 36-1 ¶ 6. The KKZF Application asks this Court to approve special counsel for a debtor that has sworn it has no money, without saying who will pay; the record now shows who pays the Debtor's bills, from what account, and that the Debtor reports none of it. No retention should be approved, on presentment or otherwise, until the Debtor states under oath who paid the premium finance down payment and installments and from what account, who will pay KKZF, and what Habosem Home LLC is.

## BACKGROUND

6. Two documents should be read before anything else in this case. On June 4, 2026, five weeks before the petition, Kalter, Kaplan, Zeiger & Forman, the firm the Debtor now asks this Court to retain, wrote to the Town of Rochester "on behalf of my client," with "Yoseph Doppelt" copied, that "[a]s has been the case the last two summers, my client would like to operate the facility this summer for religious education with an emphasis of alcohol and drug abuse," and that "[f]ollowing this summer, my client will consent to terminate the use of the property as a alcohol and drug rehabilitation center." ECF No. 36-5 at 2. Attached to that letter, as the "letters and documents from my clients confirming the continuing use of the property," was a letter dated June 2, 2026 on Yeshivah Mesivta Arugath Habosem letterhead, signed "Joseph Doppelt, Administrator": "We operate a year-round organization for children ages twelve to eighteen. Within our organization we have a program to assist kids in abstaining from alcohol and drugs. … At this time, we want to take the kids to our facility in Kerhonkson, NY and continue with our activities there for the next two months." ECF No. 36-5 at 3. "Our facility in Kerhonkson" is 5 Ridgeview Road, the Debtor's only asset. The "last two summers" are 2024 and 2025, and the second of them ended with the death of a child in the ritual bath on the Property. The "kids" are twelve to eighteen years old. The credentials attached for the director of this "year-round" program were a master's degree conferred on May 22, 2026, eleven days before the letter, and a printout dated June 1, 2026 of three online assignments in a course titled "Drug and Alcohol." ECF No. 36-5 at 4-6.

7. Set those two documents beside what the same people told everyone else. To this Court, under penalty of perjury, the Debtor has no business, no income, no lease, no tenant and no affiliate, and the Property has been vacant since August 2025. ECF Nos. 1, 11, 16. To the Ulster

County Department of Health, the same operation at the same Property was a "children's camp" for 172 campers under Subpart 7-2 of the State Sanitary Code, with Joseph Doppelt as camp director, and the words alcohol, drug and rehabilitation appear nowhere in the application. ECF Nos. 36-6, 36-7, 36-8. Under New York Mental Hygiene Law § 32.05, no one may operate a substance use disorder treatment program without an operating certificate from the Office of Addiction Services and Supports; none is claimed anywhere in the record and none is scheduled. If the June 4 letter is true, an uncertified alcohol and drug rehabilitation center for minors was run on the Debtor's Property for two summers, one of them the summer of the death, by the entity the Debtor swears is a stranger to it, and the Debtor proposed to run it a third time while telling this Court the Property was empty. If the June 4 letter is not true, the Debtor's counsel put a false account of the use of the estate's only asset before a municipal prosecutor to settle a code enforcement action, at Doppelt's direction and with Doppelt copied. Either way, the firm that wrote it cannot be the estate's counsel, the man who directed it cannot be the estate's fiduciary, and the records behind it must be produced.

8. On September 14, 2026, at the meeting of creditors under 11 U.S.C. § 341, Doppelt testified under oath to a third version of the Property's use, and it is the opposite of what KKZF had told the Town. Asked by the United States Trustee what the Debtor intends to do with the Property, Doppelt answered that it "used to be a drug rehabilitation many years ago," that "then we bought it off," that "our attorney Jeff Kaplan has figured out that in the last few years, drug rehabilitation businesses went up dramatically, and he got a deal with the town that they would give back for us the drug rehabilitation permit, 176 beds," and that "based on this information, the value of this property will go up from 10 to $25 million." ECF No. 36-20. Proposed counsel for the Debtor confirmed on the same record that Jeffrey Kaplan "is negotiating a deal with the town

of Rochester to approve the permitting that Mr. Doppelt just spoke about." Id. Three months earlier the same lawyer had written to the Town that "my client will consent to terminate the use of the property as a alcohol and drug rehabilitation center." ECF No. 36-5.

9. The KKZF Application seeks to retain KKZF, nunc pro tunc to the Petition Date, to represent the Debtor in Banach v. The Ridgeview Realtor LLC, Sup. Ct. Ulster County, Index No. EF2025-2829 (the "Code Enforcement Action"), which the Application describes as addressing "permitted uses for the Debtor's real property located at 5 Ridgeview Road." KKZF Application ¶ 2. The Application states that "the Debtor and the Town of Rochester were working toward what the Debtor is hoping will be a consensual resolution" and that KKZF will "continue to represent it in negotiating a stipulation with the Town of Rochester." Id. ¶ 6.

10. KKZF is a scheduled prepetition creditor of the Debtor ($2,187.50, Schedule E/F ¶ 3.3), and its declaration confirms it "is owed approximately $2,100 for pre-petition unpaid legal fees." ECF No. 23, Kaplan Decl. ¶ 6. The Application does not state whether any retainer has been or will be paid, by whom, or from what source. It does not state whether KKZF will waive its prepetition claim. It proposes rates of $350-$425 per hour. KKZF Application ¶ 8.

11. The Application and the Kaplan Declaration do not disclose the following, each of which is documented in the record of the Code Enforcement Action and in KKZF's own correspondence. On March 15, 2024, KKZF sent an engagement letter, signed by Jeffrey Kaplan and countersigned "Reviewed and Agreed Upon," addressed not to the Debtor but to Abraham Kleinman at 23 Heyward Street, #1B, Brooklyn (the Debtor's and Doppelt's address), "RE: Ridgeview Realty Town of Rochester," setting out "the terms and conditions of your engagement of our professional services in connection with the development project that you are pursuing in the proposed development of 5 Ridgeview," on a $2,500 retainer. ECF No. 36-22. Through 2024

and 2025 Kaplan appeared before the Town on that engagement, describing Kleinman to the Town as "my client" and copying him as the principal on the Debtor's application. ECF No. 36-21. On September 26, 2025, KKZF filed the Verified Answer in the Code Enforcement Action on behalf of both defendants, the Debtor and Yeshivah and Mesivta Arugath Habosem ("YMAH"), and the verification KKZF filed with it was sworn by Kleinman. ECF Nos. 36-24, 36-39. On February 17, 2026, KKZF executed an Order on Consent binding "Defendants," including YMAH. ECF No. 36-26. On May 4, 2026, KKZF moved by order to show cause, returnable May 26, 2026, to withdraw as counsel for the Defendants, on the grounds that its clients were unresponsive and had not paid its bills, and served that motion on "Abraham Kleinman, a member and officer of the Defendants." ECF No. 36-27. Five weeks later, on June 4, 2026, KKZF wrote the Town Attorney "on behalf of my client" proposing a settlement, with a copy to "Yoseph Doppelt, Yeshivah Mesivta Arugath Habosem." ECF No. 36-5. On June 9, 2026, Kleinman wrote to the Town Attorney and to Kaplan reporting code, fire and health conditions at the Property and identifying Doppelt as the person who had contracted for its use. ECF No. 36-16.

12. The Application does not attach a Rule 2016(b) statement, does not describe the terms of any engagement letter, and does not identify who at the Debtor will direct KKZF's work.

## LIMITED OBJECTION

### A. The "consensual resolution" with the Town is a disposition of the estate's only asset and must come back to this Court

13. The Code Enforcement Action is not incidental litigation. It concerns what the Debtor's sole asset may lawfully be used for. Doppelt has affirmed that the Town's August 2025 zoning, permitting and fire-code action is the reason the Property has been shut since September 2025. ECF No. 16 ¶ 3. Whether the Property may be used as a residential camp, and on what conditions, determines its value, its marketability, and who will buy it. The Lender's pending stay

motion (ECF No. 19) turns on that value. So does Kleinman's objection to it, and so does the trustee motion Kleinman has filed. A "stipulation with the Town of Rochester" negotiated by Doppelt, through counsel Doppelt selects and pays, could commit the estate to use restrictions, remediation obligations, fines or a consent judgment that bind whoever ultimately owns the Property. That is not a hypothetical. Doppelt has already done it once. In April 2026, three months before the petition, he signed a Stipulation of Settlement with the County of Ulster and its Department of Health on behalf of "THE RIDGEVIEW REALTOR LLC / YESHIVA AND MESIVTA ARUGATH HABOSEM," accepting responsibility for violations at the Property, including the charge that an incident at the Mikvah was not reported, and binding the Debtor to corrective action and to a fine of up to $4,000 in the 2026 operating year. ECF No. 36-7. He did it without counsel of record, and he then omitted the proceeding and the stipulation from the Debtor's Statement of Financial Affairs, whose exhibit to question 7 lists the Town's code enforcement action, the foreclosure and the wrongful-death action and nothing else. ECF No. 11, SOFA Exhibit 6. The KKZF Application does not mention the County proceeding either. The Court should not permit a second regulatory settlement of this estate's only asset to be negotiated and signed the way the first one was.

14. The testimony of September 14, 2026 removes any doubt about what KKZF is being retained to do, and what it is worth. By the Debtor's own sworn account the value of this estate above the $5,200,000 at which the Property is scheduled depends on a 176-bed drug rehabilitation permit that KKZF is negotiating and that has not issued, and the Debtor's exit from this case is a refinance against that value. ECF No. 36-20. A 176-bed substance use disorder program cannot lawfully operate in New York without an operating certificate issued under Mental Hygiene Law § 32.05, and nothing in the Debtor's papers states that the Debtor or anyone else has

applied for one. The Court is thus asked, on presentment and without a hearing, to approve counsel whose negotiation fixes the value of the estate's only asset, for a use the Debtor is not certified to make, when the same counsel's letter of June 4, 2026 offered the Town the opposite outcome. That is a matter for a hearing and a record.

15. Kleinman therefore requests that any order approving the retention provide that no stipulation, consent order, settlement or other agreement with the Town of Rochester in the Code Enforcement Action shall be executed or become effective without approval of this Court on notice to all parties in interest under Bankruptcy Rule 9019, and that the Debtor file any proposed stipulation with the Court not less than fourteen days before seeking such approval.

**B. The source of payment must be disclosed, for the same reason the United States Trustee has already raised**

16. The United States Trustee has objected to the retention of the Debtor's general bankruptcy counsel because the retainer came from Joseph Doppelt personally and "[a]bsent a clear and consistent explanation of the source of funding for counsel and the authority of the individual directing the actions of the Debtor, it cannot be determined if proposed counsel is disinterested." ECF No. 17 at 2. That objection is set for hearing October 1, 2026. ECF No. 18. The KKZF Application says nothing at all about who will pay KKZF. The Debtor had no bank account at all until August 7, 2026, and the account it then opened has received a single deposit of $100 from an account in the names of Jacob Doppelt or Rose Friedlander. ECF Nos. 26, 26-1. If KKZF is to be paid, the money will come from Doppelt, from his family or from an entity he controls, which is the very question the Court has set down for October 1. Kleinman joins the United States Trustee's objection on the further grounds set out in his joinder and Rule 2004 motion filed this day, namely that counsel selected and paid by Doppelt cannot investigate the estate's claims against Doppelt and against YMAH arising out of the condition, equipping and use of the

Property, and that the sole custodian of the Debtor's records is the same person funding its counsel, at a time when a public official has found reports submitted in the Debtor's name to be blank and suspected to be fraudulent.

17. The question is sharper for KKZF than it was for general bankruptcy counsel, because KKZF has already told a court that it was not being paid. On May 4, 2026, ten weeks before the petition, KKZF moved to be relieved as counsel in the Code Enforcement Action because its clients would neither respond to it nor pay it. ECF No. 36-27. Four months later the Debtor asks this Court to approve its retention. Nothing in the Application or the Kaplan Declaration states what changed, who is paying now, or from what source.

18. It cannot be the Debtor, and the Debtor has sworn as much. Schedule A/B answers "No" to whether the Debtor has any cash or cash equivalents and identifies no account of any kind. The Statement of Financial Affairs answers "None" to whether any account held in the Debtor's name or for its benefit was closed, sold, moved or transferred in the year before the filing, "None" to payments to creditors in the ninety days before filing, and "None" to transfers benefiting any insider in the year before filing. ECF No. 11. The first account this Debtor has ever had on this record was opened August 7, 2026, seventeen days after the petition, and its entire history is a single credit of $100.00 received August 11, 2026 from a JPMorgan Chase account in the names of two people the Debtor never identifies. ECF Nos. 25, 26, 26-1; ECF No. 36-38. Whoever is funding these professionals, it is not this estate.

19. The Code supplies the framework the Application omits. Section 329(a) requires any attorney representing a debtor to disclose the compensation "paid or agreed to be paid" in connection with the case "and the source of such compensation," and Rule 2016(b) requires a supplemental statement after any payment or agreement not previously disclosed. Where the payor

is someone other than the debtor, the test in this Circuit's bankruptcy courts is the one adopted in In re Lar Dan Enterprises, Inc., 221 B.R. 93, 96 (Bankr. S.D.N.Y. 1998), from In re Kelton Motors, Inc., 109 B.R. 641 (Bankr. D. Vt. 1989): the arrangement must be fully disclosed to the debtor and the payor; the debtor must expressly consent; "the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client"; "the factual and legal relationship among the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset"; and the applicant must demonstrate the absence of facts creating a conflict. Id. Lar Dan approved special counsel paid by the debtor's principal for a single motion precisely because the firm "disclosed the compensation relationship," "disclosed on the record the factual and legal relationship between itself, [the payor], and the Debtor," and had "disclosed all payments made to it." Id. at 96-97. The KKZF Application discloses none of that: not the payor, not the arrangement, not a single payment received. And if the payor is Arugath Habosem, the third Kelton factor cannot be satisfied at all, because the payor's independent counsel would be KKZF itself. In this Circuit the duty of disclosure is "enforced literally," and the sanction for its breach is denial of all compensation. Futuronics, 655 F.2d at 469.

20. That points at a larger hole, and the Court should see the shape of it before approving anyone. The Property operated as a children's camp for two summers under Ulster County permits issued to "The Ridgeview Realtor LLC / Yeshiva and Mesivta Arugath Habosem" for a capacity of 172, and under a temporary residence permit for fifty-six rooms. ECF Nos. 36-6, 36-11. Arugath Habosem, not the Debtor, collected what that operation produced, and the Debtor reports not one dollar of it in any schedule, statement or operating report. At the meeting of creditors Doppelt testified that the camp "technically, financially, this did not work out." ECF No.

36-20. Either it produced money, in which case the money went somewhere the Debtor has not disclosed, or it lost money, in which case someone funded those losses on the Debtor's asset and that obligation appears nowhere either. Both answers describe an estate whose finances have never been shown to this Court.

21. And the entity best placed to pay the Debtor's professionals is not a stranger to the Debtor's ownership. On December 3, 2024, Doppelt submitted to the United States, in the closing package for SBA Disaster Loan No. 5889139106, a Certificate of Authority of The Ridgeview Realtor LLC certifying that "the following are all of the Members of the Limited Liability Company: MOSHE ZEV DOPPELT [and] YESHIVAH AND MESIVTA ARUGATH HABOSEM." ECF No. 36-13. That certificate names neither Joseph Doppelt, nor Raizel Doppelt, nor the Estate of David Braun, each of whom the Debtor swore to this Court eight months later was a member, and it names Arugath Habosem, which the Debtor swore to this Court is nothing at all. The same closing package offered the Debtor's only asset as security for Arugath Habosem's $995,000 debt, from which the Debtor was to receive nothing, and it ends with an Affidavit as to Exemption from Mortgage Tax, sworn on December 5, 2024 by an attorney of the Small Business Administration, certifying that the loan to YESHIVAH AND MESIVTA ARUGATH HABOSEM was "secured by a Real Estate Mortgage executed by THE RIDGEVIEW REALTOR LLC" and "to be offered herewith for recording." ECF No. 36-13 at 62-63. An estate whose only asset may carry an unscheduled mortgage for an affiliate's debt has a claim against that affiliate, and the affiliate is this applicant's other client.

22. So the Court is being asked to approve special counsel, on presentment and without a hearing, for a debtor that has sworn it has no money, where the source of payment is undisclosed, where the professional in question told a court four months ago that it was not being

paid, and where the entity with the means to pay is the same entity that took the income of the estate's only asset and that the Debtor's own manager certified to a federal agency was its member. Those facts are not an accusation. They are the reason a record is required before a professional is approved. There is now a further reason. On February 11, 2026, Joseph Doppelt signed for the Debtor a ten-year Commercial Lease Agreement of the entire Property to Bais Ruchel D'Satmar Inc. d/b/a Central UTA at $600,000 a year, $50,000 a month from March 1, 2026, with $150,000 payable on signing. ECF No. 36-4. That lease appears nowhere in the Schedules, the Statement of Financial Affairs, the Monthly Operating Reports or the Application. If its rent is being collected, the estate has an income the Court has not been told about and the Application's silence on the source of KKZF's payment is not an oversight; if it is not being collected, the Debtor's manager has let $50,000 a month go while asking the Court to approve professionals it says it cannot pay. Either way the source of payment must be put on the record under oath before any retention is approved. Declaration of Abraham Kleinman ¶ 20, annexed to Kleinman's Motion to Appoint a Chapter 11 Trustee or, Alternatively, to Convert, filed September 23, 2026 (ECF No. 36) and set for hearing on October 14, 2026 (the "Trustee Motion"); the lease is ECF No. 36-4.

23. The record now also shows how the Debtor's obligations are being paid during this case. On August 17, 2026, twenty-seven days after the petition, a Premium Finance Agreement with First Insurance Funding was signed in the Debtor's name, by electronic signature of Yanky Doppelt, financing $36,593.63 of the premium on the Lexington property policy for the Property, granting the lender a first priority lien on the policy and its unearned premiums, and warranting that the Insured "is not insolvent nor presently involved in any insolvency proceeding." Ex. 1. No motion under 11 U.S.C. § 364 was made and no order authorized it. The $12,947 down payment and the $4,226 monthly installments have been paid by Arugath Habosem, out of its general

operating account, not by the Debtor. Kleinman Decl. ¶ 5. The Debtor's August Monthly Operating Report, signed by Doppelt on September 10, answers "No" to whether there was any postpetition borrowing and reports $0 of disbursements by anyone. ECF No. 36-38, Part 7(g). A debtor whose post-petition debts are incurred by Arugath Habosem's staff and paid from Arugath Habosem's account, and who reports none of it, cannot be permitted to retain counsel on an application that does not say who will pay. The only entity in this record with the means and the practice of paying the Debtor's bills is the one the Debtor swears is a stranger, and whose interests KKZF represents in the very litigation for which it is to be retained.

24. Kleinman requests that the Application not be granted on presentment, that it be heard together with the Rubin LLC retention application on October 1, 2026, and that KKZF be required to file a supplemental declaration and a Rule 2016(b) statement disclosing (i) any retainer paid or promised, its source and the account from which it was or will be paid; (ii) the identity of the person who has directed and will direct KKZF's work on behalf of the Debtor; and (iii) whether KKZF has represented, or received payment from, Joseph Doppelt, Moshe Zev Doppelt, David Braun or his estate, Yeshiva and Mesivta Arugath Habosem, Yeshiva Toras Chaim, or any affiliate of any of them, in connection with the Property.

**C. KKZF should waive its prepetition claim or the order should address it**

25. Section 327(e) permits retention of an attorney that has represented the debtor only if the attorney "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is employed." KKZF holds a prepetition claim arising from the very matter on which it seeks to be retained. Courts in this District routinely condition § 327(e) retentions on waiver of the prepetition claim or, at minimum, a representation that counsel will not seek payment of it outside a plan. The Application and proposed order are

silent. Kleinman requests that the order require KKZF to waive its prepetition claim as a condition of retention, or state expressly that the claim will be treated only as a general unsecured claim and will not be paid from any retainer or postpetition funds.

**D. Nunc pro tunc relief should not be granted on presentment**

26. The Application seeks retention effective July 21, 2026, fifty days before it was filed, without explaining the delay or what work KKZF performed in the interim. Retroactive approval of professional employment requires a showing of cause; the Application offers none. See In re Keren Ltd. P'ship, 189 F.3d 86, 87-88 (2d Cir. 1999) (per curiam). Kleinman requests that any nunc pro tunc relief be deferred to the October 1 hearing and supported by a description of the postpetition services rendered and the reason the application was not filed earlier.

**E. KKZF presently holds and represents interests adverse to this estate, and the Kaplan Declaration does not disclose them**

27. Section 327(a) permits the employment of a professional only if the professional does not "hold or represent an interest adverse to the estate" and is a "disinterested person," which 11 U.S.C. § 101(14)(C) defines as a person who "does not have an interest materially adverse to the interest of the estate." This Court has construed that standard. In In re Persaud, 467 B.R. 26 (Bankr. E.D.N.Y. 2012), aff'd, 496 B.R. 667 (E.D.N.Y. 2013), the Court held that "the standard for disinterestedness is high. But it is also specific, and facts, not impressions, are required," and, adopting In re AroChem Corp., that counsel is disqualified under section 327(a) only if it presently holds or represents an interest adverse to the estate, "notwithstanding any interests it may have held or represented in the past." On affirmance the District Court added that conflicts waivers "are not effective for purposes of satisfying the adverse interest requirement," and that section 327(a) governs regardless of the professional-conduct rules. 496 B.R. 667.

28. Kleinman takes that standard as it is written and meets it on present facts. KKZF holds a present claim against this estate. KKZF is presently conducting the negotiation with the Town on which the Debtor swears the entire value of the estate depends. KKZF has represented, in the same matter and at the same time, both the Debtor and Arugath Habosem, the entity that occupied the Property and collected its income. And KKZF is, on the Debtor's own sworn account, a witness to the central question of fact in this case. Each of those is present tense, and none of them is disclosed in the Kaplan Declaration. The engagement letter of March 15, 2024 is offered not as a past conflict standing alone, which under Persaud would not disqualify, but because it identifies whose lawyer KKZF was when the obligations at issue were incurred and because the fees it now claims from this estate arise on it.

29. Bankruptcy Rule 2014(a) requires an application to employ a professional to be accompanied by a verified statement "setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." The duty is to disclose every connection and let the Court decide what matters; a professional may not "usurp the court's function by unilaterally choosing" which connections to reveal. In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998). Failure to disclose is an independent ground for denial of retention and for disgorgement, whether or not an actual conflict is ultimately found. Leslie Fay, 175 B.R. at 533-34; In re Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981).

30. The Kaplan Declaration states, under penalty of perjury, that KKZF has not "in the twelve (12) months prior to the Petition Date, represented any creditor of the Debtor" (¶ 4(f)); has not, "except as described below," represented "a person who is otherwise adverse or potentially

adverse to the Debtor or its estate" (¶ 4(g)); has no "connection with the Debtor, its creditors … or any other parties in interest" except as described (¶ 4(h)); and that "KKZF represented and continues to represent the Debtor in the Code Enforcement Action" (¶ 6). Nothing further is described. The Declaration does not mention Kleinman. It does not mention YMAH. It does not mention the March 2024 engagement letter, the May 2026 motion to withdraw, the February 2026 consent order, or the source of any payment KKZF has received or expects.

31. Each omission is material, and each is current. First, KKZF's engagement letter is with Kleinman, not the Debtor. ECF No. 36-22. Whatever Kleinman's status was or is, he is a creditor and party in interest in this case, the plaintiff in an adversary proceeding to be commenced against the Debtor, YMAH and Doppelt, and the movant for appointment of a trustee. KKZF holds his confidences from a two-year engagement on the very matter for which it now seeks to be retained, and it proposes to conduct that matter for a client whose interests are now adverse to his. That is a former-client conflict under N.Y. Rule of Professional Conduct 1.9(a), which forbids a lawyer who has represented a client in a matter from representing another person "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Kleinman does not consent. Within the twelve months before the Petition Date KKZF filed the Verified Answer that Kleinman verified, executed the consent order, and moved to withdraw naming Kleinman as its client's "member and officer." Paragraph 4(f) is not accurate.

32. The engagement letter is not ambiguous about whose lawyer KKZF was. It is addressed to "Abraham Kleinman, 23 Heyward Street, #1B, Brooklyn, New York 11249," under the subject line "RE: Ridgeview Realty Town of Rochester," and it is written in the second person from beginning to end. It sets out "the terms and conditions of your engagement of our professional

services in connection with the development project that you are pursuing in the proposed development of 5 Ridgeview, Kerhonkson, New York which the property is located in the Town of Rochester, including representation before the Town Planning Board." It provides that "You agree to pay us based upon our usual hourly time charges," that "you agree to pay to us an initial retainer of $2,500.00," that "you agree to reimburse us for our disbursements," and that "Each of us shall have the right to discontinue our representation of you at any time and for any reason." It closes, "We look forward to continuing to work with you." ECF No. 36-22.

33. The countersignature block bears no title. It reads "Reviewed and Agreed Upon" above a signature line, with no printed name, no entity and no representative capacity of any kind. Nothing in the document states that Kleinman signed for the Debtor, and nothing in it identifies the Debtor as the client. The client named, addressed, billed and charged the retainer in that letter is Abraham Kleinman.

34. That matters because of what KKZF now asks for. It asks to be retained by the Debtor, adverse to Kleinman, in the Town of Rochester litigation concerning 5 Ridgeview Road. That is not a former engagement on an unrelated subject, which is the situation Persaud and AroChem address. It is the same property, the same municipality, the same Planning Board and the same subject matter as the engagement letter, and the $2,187.50 that KKZF asks this estate to carry as its prepetition claim was incurred on it.

35. Kleinman paid the initial retainer of $2,500.00 called for by paragraph 1 of that letter. Before the Court approves this retention or any claim of KKZF against the estate is allowed, KKZF should be directed to produce its invoices on this matter and its records of payment: what was billed, to whom each bill was addressed, and from whose funds each payment was made. The Application asks this estate to treat $2,187.50 as an obligation of the Debtor. If the fees on which

that figure rests were billed to Kleinman and paid by Kleinman, the Court and the United States Trustee should know it before the claim is allowed and before the firm is employed against him.

36. Kleinman further states that Joseph Doppelt has instructed KKZF not to communicate with him, and that KKZF has ceased communicating with him. If that is so, then a firm that accepted Kleinman's engagement and Kleinman's retainer on this Property has, at the direction of the person whose conduct is the subject of the pending motions, cut off the client who retained it on the very matter it was retained for, while asking this Court to approve its employment adverse to that client. Whatever else it is, it is present tense, and it is the kind of specific fact that Persaud says the disinterestedness inquiry requires.

37. Second, KKZF represents YMAH. It answered for YMAH, stipulated for YMAH, and copies YMAH's administrator on its settlement proposals. ECF Nos. 36-5, 36-24, 36-26. It is also the author of the June 4, 2026 letter that told the Town the Property had been used as an alcohol and drug rehabilitation center for two summers and would be again, a representation the Debtor has never made to this Court and that any trustee will have to investigate, which makes the firm a witness on the central fact in this case. ECF No. 36-5. YMAH is, on the Debtor's own certificate to the United States Small Business Administration, a member of the Debtor; it holds the county permits for the camp on the Property; it collected the revenue from the Property and paid the Debtor's mortgage; and an attorney of the United States swore that the Debtor had executed a mortgage of the Property to secure YMAH's loan. ECF Nos. 36-6, 36-11, 36-13, 36-14. The estate's principal claims run against YMAH. Special counsel that concurrently represents the estate's principal counterparty in a matter that will determine what the Property may be used for, and by whom, "hold[s] an interest adverse to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Paragraph 4(h) is not accurate.

38. Third, KKZF is a witness to the occupancy of the Property after the petition. On February 17, 2026 Jeffrey Kaplan consented, for both the Debtor and Arugath Habosem, to an order of the Supreme Court, Ulster County, that 5 Ridgeview Road "shall not be occupied" until the Town's October 15, 2025 violations were rectified. ECF No. 36-26. Six days before he did so, his client had leased the entire Property to Central UTA for ten years, for use as an "Educational campus," commencing March 1, 2026. ECF No. 36-4. On June 4, 2026 he asked the Town to let "my client" operate the facility "this summer." ECF No. 36-5. On June 24 the Town found the violations uncorrected. ECF No. 36-29. On August 3, 2026, thirteen days after the petition, school buses and a State Police vehicle were on the Property and groups of young people were on the grounds. Kleinman Decl. ¶ 19 (Trustee Motion). The firm that negotiated the no-occupancy order, asked for permission to occupy, and represents the entity that occupied cannot be the estate's counsel on the question of what may be done with the Property, and it will be a witness on the question of what was done with it.

39. Third, the Declaration's statement that KKZF "continues to represent the Debtor" is contradicted by KKZF's own motion, four months earlier, to be relieved as counsel because its clients would not respond to it or pay it. ECF No. 36-27. Either that motion was granted, in which case KKZF did not represent the Debtor on the Petition Date and the <u>nunc pro tunc</u> request is unsupported; or it was withdrawn or denied, in which case someone paid the arrears and re-engaged KKZF between May 26 and June 4, 2026, and the Application does not say who. The Court and the United States Trustee are entitled to that answer before any fee is charged to this estate.

40. Fourth, the $2,187.50 "pre-petition unpaid legal fees" scheduled to KKZF (Schedule E/F ¶ 3.3) and the "approximately $2,100" in the Declaration are fees incurred on an engagement whose letter runs to Kleinman. If the client was Kleinman, the claim is against

Kleinman and its scheduling as a Debtor liability is one more error in the Schedules. If KKZF billed the Debtor on a Kleinman engagement, the Court is entitled to know when and how the client changed.

41. Kleinman, as KKZF's former client on this matter, objects to KKZF's retention adverse to him and requests that the Application be denied. In the alternative, Kleinman requests that KKZF be directed, before any further consideration of the Application, to file a supplemental declaration under Rule 2014(a) disclosing (i) every engagement letter and every client on any matter concerning the Property, with dates; (ii) every payment received on such matters, the payor and the source account; (iii) the disposition of its May 2026 motion to withdraw and the circumstances of its continued involvement; (iv) its representation of YMAH and any conflict waiver obtained; and (v) how it proposes to protect Kleinman's confidences, and that KKZF produce to Kleinman his client file forthwith.

42. Fifth, the Application describes the engagement as the defense of a zoning and code enforcement action. The Debtor's own testimony describes something larger: a negotiation with the Town for the return of a drug rehabilitation permit for 176 beds, which Kaplan is said to have "figured out" and obtained "a deal" for, and on which the Debtor says the value of the estate depends. ECF No. 36-20. A lawyer who conducted that negotiation before the petition, whose letter of June 4, 2026 proposed the opposite result, and whose work now fixes the value of the estate's only asset, is a witness on the central question of fact in this case. The Application does not disclose it.

## RESERVATION

43. This limited objection is without prejudice to Kleinman's pending motions and to his right to object to any fee application by KKZF.

## CONCLUSION

WHEREFORE, Kleinman respectfully requests that the Court decline to enter the proposed order on presentment; deny the KKZF Application on the ground that KKZF represented Kleinman on the same matter, represents YMAH, and failed to disclose either under Rule 2014(a); or, in the alternative, set the KKZF Application for hearing on October 1, 2026 together with ECF No. 7 and ECF No. 17; require the supplemental disclosures described above and the production of Kleinman's file; and, if the retention is nonetheless approved, condition it on (i) Rule 9019 approval of any stipulation with the Town of Rochester, (ii) waiver or subordination of KKZF's prepetition claim, and (iii) disclosure of the source of all payments to KKZF; direct the Debtor to file within seven days a statement under penalty of perjury identifying who paid the down payment and each installment under the premium finance agreement annexed as Exhibit 1 and from what account, whether First Insurance Funding has been informed of this case, and what Habosem Home LLC is and who owns it; together with such other relief as is just.

Dated: Miami Beach, Florida
September 23, 2026

Respectfully submitted,

/s/ Abraham Kleinman
**Abraham Kleinman**
Creditor and Party in Interest, Pro Se
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com