Hearing Date: October 26, 2026 at 12:00 noon (presentment)
Objection Deadline: October 26, 2026 at 12:00 noon

**ABRAHAM KLEINMAN**
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com
*Creditor and Party in Interest, Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| THE RIDGEVIEW REALTOR LLC, | Case No. 26-43491 (ESS) |
| Debtor. | |

----------------------------------------------------------x

**RESPONSE AND OBJECTION OF ABRAHAM KLEINMAN TO THE APPLICATION OF**
**RUBIN LLC TO WITHDRAW AS PROPOSED COUNSEL FOR THE DEBTOR (ECF NO. 42)**

**TO THE HONORABLE ELIZABETH S. STONG, UNITED STATES BANKRUPTCY JUDGE:**

Abraham Kleinman ("Kleinman"), a creditor and party in interest, pro se, submits this response and objection, under Local Bankruptcy Rules 2002-1(e) and 9075-1, to the Application of Rubin LLC to Withdraw as Proposed Counsel for the Debtor (ECF No. 42) (the "Withdrawal Application"), and asks that the Withdrawal Application not be granted on presentment but be heard on October 14, 2026 together with Kleinman's motion to appoint a trustee (ECF No. 36), to which it is directed. Kleinman does not ask the Court to keep Rubin LLC in a case it no longer wishes to handle. He objects to entry of the proposed order on presentment and asks, principally, three things. First, that the withdrawal be conditioned on a complete and accurate disclosure under

11 U.S.C. § 329 and Bankruptcy Rule 2016(b) of who paid the firm, when, how much, and from what bank and account, which the firm's filed disclosure does not state. Second, that the request to adjourn his motion for a trustee be denied. Third, that the Court disregard the Withdrawal Application's statement that his Rule 2004 motion was filed without notice or service, which the docket refutes. Kleinman has standing to be heard as a creditor and party in interest under 11 U.S.C. § 1109(b), and the Withdrawal Application was served on him. ECF No. 43.

## I. RUBIN LLC SHOULD ACCOUNT FOR WHAT IT WAS PAID, AND BY WHOM, BEFORE IT LEAVES

1. Rubin LLC filed the petition on July 21, 2026, and has filed the Debtor's papers since, including the schedules and statement of financial affairs (ECF No. 11), the affirmation of Joseph Doppelt (ECF No. 16), both monthly operating reports (ECF Nos. 25, 26), and the application to retain special counsel (ECF No. 23). What the record says about how the firm was paid comes from three sworn documents, and they do not agree.

(a) The retention application of July 27, 2026 states that "prior to the Petition Date, Mr. Doppelt paid a $25,000 retainer to Rubin LLC," that the firm "applied $4,000 from the Retainer for legal services provided in the period after receipt of the Retainer and before the filing of this case," and that $21,000 "is being held by Rubin LLC in a segregated account." ECF No. 7 ¶ 7 & n.1. Mr. Doppelt's accompanying affirmation describes the payment as his "agreement to advance the sum of $25,000 on behalf of the Debtor." Id., Ex. B ¶¶ 3, 4(ii).

(b) The firm's Disclosure of Compensation of Attorney for Debtor (Official Form 2030), signed by Mr. Rubin on August 7, 2026 and filed on August 11, 2026 at the end of the Debtor's schedules, a week after the date the Clerk's deficiency notice set for it, ECF No. 2, states that the amount the firm "agreed to accept" for its services is "N/A," that the "Balance Due" is "N/A," that it received $25,000 before the statement, that the source of that payment was "Other (specify) Joseph Doppelt," and that the source of compensation "to be paid" to the firm is the "Debtor." ECF No. 11 at 32-33. It does not mention the $4,000 the firm says it applied before the petition, or the $21,000 it says it holds, and it lists nothing in the space for services excluded from the fee.

(c) The Statement of Financial Affairs, prepared by the firm and signed by Mr. Doppelt, lists a single payment of $25,000 to Rubin LLC, made by "Joseph Doppelt," dated "7/21/26," the petition date itself. ECF No. 11 (SOFA, Part 6, Q. 11.1).

2. The United States Trustee objected on August 13, 2026, stating that "[t]he source of the retainer is Joseph Doppelt individually" and that "[a]bsent a clear and consistent explanation of the source of funding for counsel and the authority of the individual directing the actions of the Debtor, it cannot be determined if proposed counsel is disinterested or free from adverse interests under Section 327 of the Bankruptcy Code." ECF No. 17 at 2. In the seven weeks that followed, neither the Debtor nor its counsel filed a word in answer, and no supplemental statement under Rule 2016(b) has been filed. As the record stands, the following has never been disclosed:

(a) the source of the $25,000, beyond the name of the person who paid it: whether it came from Mr. Doppelt's own funds or from another person or entity, and if paid by wire, the name of the sender, the sending bank and the account (by its last four digits) from which it was sent, or if paid by check, the drawer, the bank and the account;

(b) the actual date of payment, which the retention application places before the petition date and the Statement of Financial Affairs places on it;

(c) the fee agreement itself, which Form 2030 reports as "N/A" even though the retention application states hourly rates of $475 to $550, ECF No. 7 ¶ 10, and what the $4,000 applied before the filing paid for;

(d) how the "Debtor," which swore it had no bank account on the petition date and whose only deposit since has been $100, ECF Nos. 11, 26-1, is to pay the compensation Form 2030 says it will pay, or whether someone else has agreed to pay it; and

(e) whether the $21,000 remains in the segregated account, whether any of it has been applied, and what the firm intends to do with it on withdrawal.

3. None of this is the kind of omission an inexperienced practitioner makes. Mr. Rubin told this Court under penalty of perjury that he has "read and am fully familiar with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures, and the Local Rules of this Court." ECF No. 7, Rubin Decl. ¶ 16. The public record bears that out: the firm has filed Official Form

2030 in other cases in this Circuit with the petition or within fourteen days of it. In re Pachanga, Inc., No. 18-12767 (Bankr. S.D.N.Y.), ECF No. 3 (filed with the petition, Sept. 14, 2018); In re Corossol FIKA Tower LLC, No. 18-12768 (Bankr. S.D.N.Y.), ECF No. 3 (same); In re FIKA Catering LLC, No. 18-12776 (Bankr. S.D.N.Y.), ECF No. 3 (same); In re 513 Union, LLC, No. 18-22927 (Bankr. S.D.N.Y.), ECF No. 8 (fourteen days after the petition); In re Wansdown Props. Corp. N.V., No. 19-13223 (Bankr. S.D.N.Y.), ECF No. 13 (thirteen days after the petition). In this case the form was late, it reports the fee agreement as "N/A," it conflicts with the firm's own retention papers, and after the United States Trustee put the source of the retainer squarely in issue it was never supplemented. Kleinman does not know whether that was the Debtor's instruction or counsel's decision. The firm's own declaration says the Debtor has withheld "information and documents requested from the Debtor." ECF No. 42, Ex. A ¶ 6. Either way, the gaps cannot fairly be called accidental, and the firm should not be permitted to leave the case with them still undisclosed.

4. Withdrawing the retention application does not withdraw the firm from these obligations, and a filed form that leaves them unanswered does not satisfy them. Nor does withdrawal happen on counsel's say-so: under Local Bankruptcy Rule 2090-1(d), an attorney who has appeared for a party "may not withdraw or be relieved or displaced except by order after notice," on an application that must show by affidavit "the posture of the case, including the status of any pending matters." The order is the Court's to shape. Section 329(a) requires "[a]ny attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title," to file a statement of the compensation "paid or agreed to be paid" for services in or in contemplation of the case "and the source of such compensation." 11 U.S.C. § 329(a). Even where the debtor did not fund the retainer, counsel is

"nonetheless obligated to comply with § 329 [and] Bankruptcy Rule 2016(b)," and the statement "must be filed whether the debtor or a third party is responsible for payment of the fees." In re Chatkhan, 496 B.R. 687, 694 (Bankr. E.D.N.Y. 2012). "The disclosure rules are applied literally, even if the results are sometimes harsh," negligent or inadvertent omissions "do not vitiate the failure to disclose," and a violation may be sanctioned "regardless of actual harm to the estate." Id. at 696 (quoting In re Park-Helena Corp., 63 F.3d 877, 881 (9th Cir. 1995)).

5. The question of source is not academic here. The Debtor has sworn that it had no bank account until August 7, 2026, and that the only deposit to the account it then opened, through August 31, 2026, was a $100 credit on August 11, 2026 from a JPMorgan Chase account in the names of "JACOB DOPPELT OR ROSE FRIEDLANDER." ECF No. 11 (Schedule A/B, Part 1; SOFA Part 10, Q. 18); ECF No. 26-1. At the same time, the Debtor's manager had signed, five months before the petition, a ten-year lease of the entire Property at $50,000 a month, none of which appears in the Debtor's schedules or operating reports. ECF Nos. 36, 36-4. The record gives reason to believe that the $25,000 was not paid from Mr. Doppelt's own funds but by YMAH, of which Mr. Doppelt is President, ECF No. 36-13, from one of the YMAH accounts that have paid the Debtor's other expenses, ECF Nos. 36-1 ¶ 13, 38-1 ¶ 5, and Kleinman so alleges on information and belief, as a contention likely to have evidentiary support once the disclosure sought here is made. Fed. R. Bankr. P. 9011(b)(3). If that is so, then Form 2030 and the Statement of Financial Affairs both misidentify the payor, and the Debtor's proposed counsel was funded by an entity against which the estate holds the potential claims described in Kleinman's trustee motion, ECF No. 36, which is exactly the conflict the United States Trustee's objection raised. ECF No. 17 at 2. Whether any of the money that paid Debtor's counsel came from YMAH, or traces to rent from the Debtor's own Property, is exactly the kind of fact section 329 exists to bring out, and the wire

confirmation or cleared check will answer it in a single page. Under section 329(b) the Court may order the return of any excessive payment to the estate or to the entity that made it, and it cannot make that determination without knowing what was paid, when, by whom and from what account. Leave to withdraw is committed to the Court's discretion, Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999), and nothing prevents the Court from requiring the disclosure the statute already demands as a condition of granting it.

6. Kleinman therefore asks that any order granting the Withdrawal Application require Rubin LLC, within seven days and before its withdrawal becomes effective, to file a sworn statement under section 329(a) and Rule 2016(b), signed by counsel, disclosing: (i) every payment received for services in or in contemplation of this case, with its date and amount; (ii) for each payment, the payor; if by wire, the name of the sender as shown on the wire, the sending bank, and the name on and last four digits of the account from which it was sent; if by check, the drawer, the drawee bank, and the name on and last four digits of the account; and, in each case, a copy of the wire confirmation or both sides of the cleared check, redacted only as Bankruptcy Rule 9037 requires; (iii) the engagement agreement and any agreement as to who would pay fees after the petition date; (iv) the amount of the retainer still held and the account in which it is held; and (v) any payment received for services to the Debtor from Joseph Doppelt, Yeshivah and Mesivta Arugath Habosem, aka "Yeshivah & Mesivta Arugath Habosem," and also known as "Yeshiva and Mesivta Arugath Habosem" and "Yeshiva Mesivta Arugath Habosem" ("YMAH"), or any person or entity affiliated with either. Kleinman further asks that Rubin LLC be directed to hold the unapplied retainer, and not return it to Mr. Doppelt or anyone else, pending further order of the Court. If the Court is not prepared to require the account-level detail at this stage, Kleinman asks in the alternative that the firm be directed to file, before its withdrawal takes effect, a supplemental

statement under Rule 2016(b) that reconciles the retention application, Form 2030 and the Statement of Financial Affairs as to the amount, date, payor and source of every payment, and he reserves the right to seek review under section 329(b) and Bankruptcy Rule 2017 once it is filed.

## II. THE TRUSTEE MOTION SHOULD NOT BE ADJOURNED; THE WITHDRAWAL IS A REASON TO HEAR IT

7. The Withdrawal Application asks the Court to adjourn "the pending matters," including Kleinman's motion to appoint a chapter 11 trustee (ECF No. 36), set for October 14, 2026, "to allow the Debtor sufficient time to formally retain new counsel." ECF No. 42 ¶ 5. That request is not properly made by an application to withdraw on presentment, it is not made by the Debtor, and no new counsel has appeared. The Court should deny it. The trustee motion was served on September 23, 2026 by first-class mail on Rubin LLC, the United States Trustee, counsel for the Lender, the Debtor, YMAH, Joseph Doppelt and the Debtor's other creditors, and electronically through the Court's CM/ECF system on its docketing that day, as Kleinman's certificate of service for that motion shows. ECF No. 48. Its objection deadline of October 7, 2026 at 4:00 p.m. was fixed in the notice served with it. ECF No. 36. Every party has had three weeks' notice of the October 14 hearing.

8. The sequence matters. On August 13, 2026 the United States Trustee asked the Debtor a simple question: who paid its counsel, and with what money. ECF No. 17 at 2. The Court set that objection for hearing on October 1, 2026. ECF No. 18. Kleinman joined the objection and pressed the same question. ECF No. 30. The Debtor never answered it. Instead, on September 29, 2026, two days before the hearing, Rubin LLC withdrew the retention application (ECF No. 39), and on the evening of October 1, 2026 it filed the Withdrawal Application, which asks that every pending matter be put off until the Debtor finds a new lawyer. ECF No. 42 ¶ 5. Mr. Doppelt, for

his part, has said only that he is "in the process" of retaining one. Id., Ex. A ¶ 7. The result, if the adjournment is granted, is that the source-of-funds question goes unanswered, the trustee motion goes unheard, and the Debtor's manager remains in sole control of the estate's only asset for as long as he chooses not to hire counsel.

9. A debtor in possession should not obtain through its lawyer's departure the delay it could not obtain on the merits. The Debtor's duties under sections 1106 and 1107 do not pause while it looks for counsel, and its time to respond to the trustee motion, set by the notice of that motion, has not been extended by any order. The difficulty the Debtor now faces is one of its own making: its counsel says the Debtor would not give it the information and documents it asked for. ECF No. 42, Ex. A ¶ 6. The estate and its creditors should not bear the cost of that choice.

10. The timing is telling for another reason. Kleinman's trustee motion was docketed on September 23, 2026. ECF No. 36. It put before the Court, with documents, the matters the Debtor's sworn filings omit. Six days later Rubin LLC withdrew the retention application, and two days after that it asked to leave the case and to adjourn the motion. The Debtor has not filed a word in response to any of it. What the Debtor would have to answer, if the motion is heard, is this:

(a) The lease. On the petition date Mr. Doppelt declared under Local Bankruptcy Rule 1007-4 that "[t]he Debtor does not anticipate any cash receipts or disbursements for the 30-day period following the filing," and that no property of the Debtor is in the possession of any "assignee of rents." ECF No. 1 at 11-12, ¶¶ xi, xvii. The Debtor then swore in Schedule G that it has no executory contracts or unexpired leases, in its Statement of Financial Affairs and both operating reports that it has had no income and no receipts, in Mr. Doppelt's affirmation that the Property has been vacant since August 2025, and at the meeting of creditors that the Property is "locked down and secured." ECF Nos. 11, 16, 25, 26; Ex. 5; Ex. 6; Ex. 7. Five months before the petition, Mr. Doppelt signed for the Debtor a ten-year lease of the entire Property commencing March 1, 2026, at $50,000 a month, with $150,000 due on signing, and the Doppelts circulated it from YMAH's e-mail system. Ex. 1. On the face of that lease, $350,000 was payable before the petition

and $50,000 has come due every month since. None of it appears anywhere in the Debtor's sworn record.

(b) The bank account. Mr. Doppelt declared on the petition date that "[t]he Debtor does not have any pre-petition bank accounts," ECF No. 1 at 12, ¶ xix, and the Debtor swore in its schedules that it had no bank account and that no account in its name was closed or moved in the year before. ECF No. 11 (Schedule A/B, Part 1; SOFA, Q. 18); Ex. 6. On April 3, 2025, Mr. Doppelt directed Kleinman by text to send funds "to the Ridgeview realtor" at TD Bank, N.A., account ending 0416. Ex. 2. That account appears nowhere in the Debtor's filings.

(c) The camp. YMAH's audited financial statements for the fiscal year ended June 30, 2025, a year that includes the summer 2024 season at the Property, report "Summer Camp Tuition" of $2,220,906, up from $1,529,243 the year before. Ex. 4 at 41, 74. In June 2025 the Ulster County Department of Health permitted a children's camp for 172 and a temporary residence of 56 rooms at the Property, issued to "The Ridgeview Realtor LLC / Yeshiva and Mesivta Arugath Habosem." Ex. 3. The Debtor, which owns the Property, swore to no income at all. ECF No. 11 (SOFA, Q. 1); Ex. 6. Yet the Debtor's own counsel, writing to Kleinman and the United States Trustee on September 18, 2026, asked how much "rent was paid by Yeshivas Toras Chaim for use of the property as a summer camp in the summer of 2025," and whether obligations of the Debtor, "such as mortgage obligations, real estate taxes, insurance or other expenses," had been paid "from accounts of YMAH" "(as one might see in a triple net lease situation)." If rent was paid for the 2025 season, the Debtor's sworn report of no income is false; if it was not, the Property was occupied for a season for nothing. In the same fiscal year 2025, YMAH drew in full a $750,000 line of credit from M&T Bank secured by all of its assets and took in $742,186 in new loans from related parties. Ex. 4 at 73, 76, 84.

11. Taken together, these documents support a strong inference that the income generated by the Debtor's only asset, from the camp and now from the lease, has been collected and held through YMAH and through accounts the Debtor has never disclosed, while the Debtor told this Court, the United States Trustee and its Lender that it had none. Mr. Doppelt signed the lease, the schedules, the affirmation and the operating reports, and testified at the meeting of creditors; he is the one person who can say where that money went. The Withdrawal Application, if it produces the adjournment it asks for, relieves him of having to say. The bank records of TD Bank and M&T Bank, the tenant's rent payments, and YMAH's camp receipts are exactly what an

independent trustee would obtain in the first weeks of an appointment, and their absence from this record is the strongest reason not to defer one.

12. By Mr. Doppelt's own statements, it is YMAH that holds this estate. In December 2024, applying to the Small Business Administration on YMAH's behalf, he submitted in the Debtor's name a Certificate of Authority stating that "the following are all of the Members of the Limited Liability Company: MOSHE ZEV DOPPELT [and] YESHIVAH AND MESIVTA ARUGATH HABOSEM," and on that footing pledged the Property, the Debtor's only asset, to secure YMAH's $995,000 loan. Ex. 8; ECF No. 36-13. On June 2, 2026, seven weeks before the petition, he wrote on YMAH's letterhead, as its "Administrator," that "we want to take the kids to our facility in Kerhonkson, NY," and two days later the Debtor's state-court counsel told the Town, with Mr. Doppelt copied as "Yoseph Doppelt, Yeshivah Mesivta Arugath Habosem," that "as has been the case the last two summers, my client would like to operate the facility this summer." Ex. 9; ECF No. 36-5. He applied for and ran the camp at the Property as its director under permits issued to "The Ridgeview Realtor LLC / Yeshiva and Mesivta Arugath Habosem," and YMAH booked the camp tuition. Ex. 3; ECF No. 36-8; Ex. 4 at 74. In this Court, by contrast, he has sworn to a list of members that does not include YMAH, listed no affiliates, attributed the camp to "Yeshiva Toras Chaim," and reported no income. ECF Nos. 11, 14, 16. On his own account to the SBA, the Town and the County, YMAH holds the Debtor's membership, the Debtor's Property is YMAH's "facility," and the Property's income is YMAH's income. That is to say, on Mr. Doppelt's own statements, YMAH holds the Debtor's equity, occupies and operates its only asset, and receives the money that asset produces. Kleinman contends that YMAH is therefore an entity holding property of the estate that a trustee can require to account and turn over, 11 U.S.C. § 542(a), in the proceeding the Code provides for that purpose.

13. The record also shows that the Debtor and YMAH have operated as one enterprise, through one set of bank accounts, and those accounts are YMAH's. The Debtor swears it had no bank account until August 7, 2026. ECF No. 11 (Schedule A/B, Part 1); ECF No. 26-1. Its expenses were paid by YMAH instead. YMAH's general operating account at Flagstar Bank, ending 7049, paid for the ritual bath installed at the Property in June 2024, ECF No. 36-17; paid $17,401 of the premiums on the Debtor's own insurance, part of $49,396 in premiums on the Debtor's insurance that YMAH paid from five of its own accounts, ECF No. 36-1 ¶ 13; and has paid the down payment and monthly installments on the premium finance agreement signed in the Debtor's name by Yanky Doppelt twenty-seven days after the petition, ECF No. 38-1 ¶ 5. YMAH obtained and paid for the employer insurance certificates furnished to the County for the camp and residence permits, ECF Nos. 36-33, 36-35, and paid the Debtor's electrician. ECF No. 36-16. The County issued its permits to, and brought its enforcement charges against, "The Ridgeview Realtor LLC/Yeshiva and Mesivta Arugath Habosem" as a single respondent, and Mr. Doppelt signed the settlement for both. ECF Nos. 36-6, 36-7, 36-11. The Debtor's lease was sent from YMAH's e-mail system, Ex. 1, its business with the Town was conducted by YMAH's staff from YMAH's e-mail addresses, ECF Nos. 36-15, 36-16, and $494,000 was wired to the Lender on the Debtor's mortgage by a Debtor that had no account to wire it from. ECF No. 19-5. Whatever the formal relationship between the two, the money moved as if they were one.

14. That bears on the relief now before the Court in three ways. First, the person who can explain the money is not only Mr. Doppelt but YMAH, which holds the accounts, collected the camp tuition and, on this record, is the most likely recipient of the rent. Subpoenas commanding YMAH, through an officer with knowledge of its accounts and its dealings with the Debtor and the Property, and Mr. Doppelt to appear and testify at the October 14, 2026 hearing with the bank

and lease records identified above were issued by the Clerk under Bankruptcy Rule 9016 and Federal Rule of Civil Procedure 45 on October 2, 2026, notice of them was given to all parties that day under Rule 45(a)(4), and they were served on both on October 5, 2026. ECF Nos. 44, 45. An adjournment would defeat them. Second, YMAH and the Debtor are on notice, by service of this objection and of ECF No. 36, that the rent, security deposit, camp revenue and other money derived from the Property is claimed as property of the estate; Kleinman will seek an order preserving those funds by separate motion on notice if any party will not confirm in writing that they are being held. Third, the Debtor's own account holds $100, and the cost of administering this estate will have to come from the money the Property generated. A trustee's first task will be to recover that money, by turnover and, if necessary, by the remedies the Code provides against an entity that has dealt with the Debtor as a single economic unit, in an adversary proceeding brought for that purpose. See Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518 (2d Cir. 1988) (substantive consolidation turns on "whether creditors dealt with the entities as a single economic unit" or whether their affairs are "so entangled" that consolidation will benefit all creditors). Kleinman reserves all rights to seek that relief, and the delay the Debtor asks for would only give the money more time to move.

15. The reasons the firm gives for withdrawing are the reasons a trustee is needed. Under oath, Debtor's counsel tells the Court that "[w]e have been unable to obtain information and documents requested from the Debtor," that there have been "disagreements between the Debtor and Rubin LLC over litigation strategy and how to move this chapter 11 case forward," and that the firm finds it "untenable to continue to function and try to advance this case." ECF No. 42, Ex. A ¶ 6. Mr. Doppelt "has stated that he is in the process of retaining new counsel" but "has not confirmed that he has done so." Id. ¶ 7. A debtor in possession that will not give its own lawyers

its own documents cannot be relied on to give them to its creditors, the United States Trustee or this Court.

16. Nor can the Debtor act without counsel. "It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel." Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993). The rule applies with full force to a limited liability company, which "may appear in federal court only through a licensed attorney." Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007). And it applies with special force in chapter 11, where the debtor "has special statutory obligations and fiduciary duties to creditors ... that frequently ... require the active involvement of counsel." In re St. Stephen's 350 East 116th St., 313 B.R. 161, 171 (Bankr. S.D.N.Y. 2004); see also Zeisler & Zeisler, P.C. v. Prudential Ins. Co. of Am. (In re JLM, Inc.), 210 B.R. 19, 26 (B.A.P. 2d Cir. 1997) (debtor's attorney "is charged with the duty of counseling the debtor in possession to comply with its duties and obligations under the law"). Once Rubin LLC leaves, this estate has no one who can lawfully speak for it, while the Lender's motion for relief from the stay (ECF No. 19) proceeds toward November 12, 2026 and the unscheduled lease, rents and post-petition borrowing described in Kleinman's papers (ECF Nos. 36, 38) remain unaccounted for. That lease, signed by Mr. Doppelt for the Debtor on February 11, 2026, lets the entire Property for ten years from March 1, 2026, at base rent of $600,000 a year ($50,000 a month) for the first two lease years, with $150,000 due on signing, and places the Property's taxes, utilities, insurance and maintenance on the tenant. ECF No. 36-4 at 1, 3-6. It is the estate's most valuable contract right, and no one acting for the estate is collecting on it. An independent trustee could take control of it at once, demand the rent and security deposit, and enforce the lease for the benefit of creditors, under 11 U.S.C. §§ 1106(a)(1), 704(a)(1) and 365. Every week of delay is another $50,000 that does not reach this estate. An

adjournment would leave the estate's only asset without a fiduciary for an indefinite period, and at the worst possible time. The Debtor designated itself a single asset real estate debtor. ECF No. 1. Under 11 U.S.C. § 362(d)(3), the ninety-day period after the order for relief within which such a debtor must either file a plan with a reasonable possibility of confirmation or begin monthly payments to the Lender expires on October 19, 2026. The Debtor has done neither, and has no account from which to make a payment, while $50,000 a month in rent that could fund those payments goes uncollected. Only a fiduciary in place before that date can act on it. The appointment of a trustee is the remedy the Code provides for exactly this situation, and the motion should be heard on October 14, 2026 as scheduled. If the Court is inclined to give the Debtor any time to retain counsel, Kleinman asks that it be a short, fixed period that runs concurrently with, and does not postpone, the October 14 hearing, with the consequence of non-compliance stated in the order.

## III. KLEINMAN'S RULE 2004 MOTION WAS NOTICED AND SERVED

17. The Withdrawal Application states that Kleinman's requests for relief in his joinder and Rule 2004 motion were made "without filing or service of any notice of motion" and are "procedurally defective." ECF No. 42 ¶ 4; id., Ex. A ¶ 9. That is not correct.

18. The motion was filed and docketed on September 17, 2026 as a motion (ECF No. 30), together with its proposed order (ECF No. 31). Its first page states, above the caption, "Hearing Date: October 1, 2026 at 10:30 a.m." and "Objection Deadline: September 24, 2026 at 4:00 p.m." ECF No. 30 at 1. Service is documented twice over. The certificate of service annexed to the motion, and Kleinman's separate certificate of service for ECF Nos. 30, 31 and 33, ECF No. 47, show that on September 15, 2026, the day it was submitted for filing, the motion was served by first-class mail on Rubin LLC (Paul A. Rubin and Hanh V. Huynh, 11 Broadway, Suite 715, New

York), on the United States Trustee, on counsel for the Lender, and on the Debtor at its address of record; and that on September 17, 2026, when it was docketed, it was served electronically through the Court's CM/ECF system upon every registered party, Rubin LLC included. That is the service the Rules require. A motion in a contested matter is served in the manner provided by Bankruptcy Rule 7004. Fed. R. Bankr. P. 9014(b). The Debtor, a limited liability company, was served by first-class mail addressed to its manager, Joseph Doppelt, at its address of record, Fed. R. Bankr. P. 7004(b)(3); and because the Debtor is represented, its attorneys were served as well, by mail and by the Court's electronic-filing system, which is service by electronic means under Federal Rule of Civil Procedure 5(b)(2)(E) on a registered user. Fed. R. Bankr. P. 7004(g).

19. Rubin LLC did not merely receive the motion; it engaged with it. Kleinman conferred with the firm before filing. At 7:18 a.m. on September 14, 2026, Kleinman e-mailed Mr. Rubin and Ms. Huynh, with the United States Trustee copied, that he intended to file a motion under Bankruptcy Rule 2004 and section 542(e) for the examination of, and production of documents by, the Debtor, Joseph Doppelt, Moshe Zev Doppelt and YMAH, annexed the schedule of the thirty-two categories of documents to be requested, and asked whether the Debtor would produce, make Mr. Doppelt available, object to any item, or agree to a consent order. Mr. Rubin answered at 10:42 a.m. that "[t]he scope of the documents listed in the Schedule you provided is exceedingly broad" and that he "would appreciate the opportunity to discuss this matter." Kleinman replied at 5:42 p.m. that he would narrow the requests if counsel identified the items objected to by number, that he was filing that day to be heard with the matters set for October 1, 2026, and that he remained available to narrow, adjourn or withdraw any part resolved. No objection to any item was ever identified. On September 18, 2026, the day after the motion was docketed, Mr. Rubin wrote again, with the United States Trustee copied, referring to "your filing

yesterday" and stating: "Your motion for a Rule 2004 examination asserts that you are a creditor holding a claim against the Debtor in the amount of not less than $3.5 million." The Withdrawal Application itself lists the motion among the matters pending before the Court. ECF No. 42 ¶ 4. A party that conferred on a motion before it was filed, received it through the Court's own electronic filing system when it was docketed, and then quoted it in writing the next day cannot say it lacked notice.

20. Nor does Bankruptcy Rule 2004 require more. It provides that "[o]n motion of any party in interest, the court may order the examination of any entity," Fed. R. Bankr. P. 2004(a), and the Rule itself prescribes no notice period or hearing for the order authorizing the examination. To the extent the Court considers any aspect of the form of the motion deficient, Local Bankruptcy Rule 1001-1(d) permits the Court to modify or suspend the requirements of the Local Rules in the interest of justice, and Kleinman, who appears pro se, asks that it do so rather than defer relief that the Debtor's own counsel now confirms is needed, because the Debtor has not produced its documents even to him.

21. Finally, the withdrawal of the Rubin retention application moots Kleinman's joinder in the United States Trustee's objection to that application, and Kleinman so acknowledges. It does not moot the separate relief requested in ECF No. 30, which is directed to the Debtor, Joseph Doppelt, Moshe Zev Doppelt and Yeshivah and Mesivta Arugath Habosem and does not depend on who represents the Debtor.

## CONCLUSION

WHEREFORE, Kleinman respectfully requests that the Court (i) condition any order permitting Rubin LLC to withdraw on the filing, within seven days, of the statement under 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b) described above, including the sender, bank and

account for each payment and copies of each check or wire confirmation, or in the alternative a supplemental Rule 2016(b) statement reconciling the three filings described in paragraph 1, and on the unapplied retainer being held pending further order; (ii) deny the request to adjourn Kleinman's motion to appoint a chapter 11 trustee (ECF No. 36), and hear it on October 14, 2026 as scheduled, with Joseph Doppelt, the Debtor's manager, directed to appear in person, and Yeshivah and Mesivta Arugath Habosem, which has been served with a subpoena to appear (ECF No. 45), to appear through an officer with knowledge of its accounts and its dealings with the Debtor and the Property; (iii) disregard the statement that Kleinman's Rule 2004 motion (ECF No. 30) was filed without notice or service, and set that motion down for decision or hearing; (iv) set the Withdrawal Application for hearing on October 14, 2026 together with ECF No. 36, rather than grant it on presentment; and (v) grant such other relief as is just. Kleinman reserves all rights to seek, by the pending Rule 2004 motion (ECF No. 30) and by separate motion or adversary proceeding, the examination of YMAH and the Doppelts and the preservation, turnover and recovery of property of the estate in their hands.

Dated: Miami Beach, Florida
October 6, 2026

Respectfully submitted,

/s/ Abraham Kleinman
**Abraham Kleinman**
Creditor and Party in Interest, Pro Se
407 Lincoln Rd, Suite 6H-1752
Miami Beach, Florida 33139
Tel.: (845) 494-9922
Email: kleinmanabraham@gmail.com