UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF NEW YORK
In re The Ridgeview Realtor LLC, Chapter 11 Case No. 1-26-43491 (ESS)

# EXHIBIT 1

## Commercial Lease Agreement dated February 11, 2026

The Ridgeview Realtor LLC to Bais Ruchel D'Satmar Inc. d/b/a Central UTA, with the February 26, 2026 e-mail from yanky@ymah.org transmitting it. Previously filed as ECF No. 36-4.

Gmail **Abraham Kleinman <kleinmanabraham@gmail.com>**

---

1 message

---

**Yanky Doppelt** <yanky@ymah.org> Thu, Feb 26, 2026 at 12:21 PM
To: Abraham Kleinman <kleinmanabraham@gmail.com>, Yoseph Doppelt <ydoppelt@ymah.org>

--

***Mr Doppelt***
***Yeshiva And Mesivta Arugath Habosem***
***Office:***
***40 Lynch Street, Brooklyn N.Y. 11206***

***Tel: 718-237-4500 Ext 108***
***Text: 718-237-4500***
***Fax: 718-237-6064***
PAYMENT LINK

---

**Document_02262026_001.pdf**
1498K

# COMMERCIAL LEASE AGREEMENT

**AGREEMENT** of Lease ("Lease"), dated this February 15, 2026,

BETWEEN

The Ridgeview Realtor LLC, a New York limited liability company, having an office at ________________________ party of the first part (hereinafter referred to as "Landlord"),

and

**Bais Ruchel D'Satmar Inc. D/B/A Central UTA and Affiliated Entities** a _______ corporation with an address at 76 Rutledge Street, Brooklyn, NY 11249 party of the second part (hereinafter referred to as "Tenant").

## Recitals:

**Whereas**, Landlord intends to lease the property at 5 Ridgeview Road, Rochester, NY 12446 hereinafter referred to as the "Premises" which is set forth in Schedule A attached hereto and made apart hereof) to Tenant and Tenant intends to lease the Premises from the Landlord pursuant to the terms of this Lease.

## Witnesseth

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises at the property known as 5 Ridgeview Road, Kerhonkson, Town of Rochester, Ulster County, New York 12446 which consists of a 15 acre resort, as set forth in Schedule A, pursuant to the following terms:

1. BASIC TERMS: The following basic terms are hereby approved by the Parties and each reference in this Lease to any of the basic terms will be construed to include the provisions set forth below as well as all of the additional terms and conditions of the applicable sections of this Lease where such basic terms are more fully set forth:

A. Commencement Date of Lease: March 1, 2026

B. Base Rent:

Year 1: $600,000.00 annually/$50,000,00.00 monthly

C. Rent Increase: 3% on the 2nd, 4th, 6th, and 8th anniversaries of the Commencement Date.

D. Permitted Use of Premises: Educational campus.

E. Advance rent: First month's rent

F. Security: Two (2) months of Base Rent totaling $100,000.00 paid upon signing.

2. DEFINTIONS:

A. "Additional Rent" means all amounts payable by the Tenant under this Lease except Base Rent, whether or not specifically designated as Additional Rent elsewhere in this Lease;

B. "Building" means all buildings, improvements, equipment, fixtures, property and facilities from time to time located at 5 Ridgeview Road, Rochester NY 12446 as from time to time altered, expanded or reduced by the Landlord in its sole discretion

C. "Common Areas and Facilities" mean:

(i) those portions of the Building areas, buildings, improvements, facilities, utilities, equipment and installations in or forming part of the Building which from time to time are not designated or intended by the Landlord to be leased to tenants of the Building including, without limitation, exterior weather walls, roofs, entrances and exits, parking areas, driveways, loading docks and area, storage, mechanical and electrical rooms, areas above and below leasable premises and not included within leasable premises, security and alarm equipment, grassed and landscaped areas, retaining walls and maintenance, cleaning and operating equipment serving the Building; and

(ii) those lands, areas, buildings, improvements, facilities, utilities, equipment and installations which serve or are for the useful benefit of the Building, the tenants of the Building or the Landlord and those having business with them, whether or not located within, adjacent to or near the Building and which are designated from time to time by the Landlord as part of the Common Areas and Facilities;

D. "Leasable Area" means with respect to any rentable premises, the area expressed in square feet of all floor space including floor space of mezzanines, if any, determined, calculated and certified by the Landlord and measured from the exterior face of all exterior walls, doors and windows, including walls, doors and windows separating the rentable premises from enclosed Common Areas and Facilities, if any, and from the center line of all interior walls separating the rentable premises from adjoining rentable premises. There will be no deduction or exclusion for any space occupied by or used for columns, ducts or other structural elements;

E. "Premises" or "Demised Premises" means the entirety of 5 Ridgeview Road, Rochester NY approximately as shown on Schedule 'A' attached to and incorporated in the Lease;

F. "Proportionate Share" or "Allocable Share" means a fraction, the numerator of which is the Leasable Area of the Premises and the denominator of which is the aggregate of the Leasable Area of all rentable premises in the Building.

G. "Rent" means the total of Base Rent and Additional Rent.

3. <u>USE</u>:

A. The Tenant shall use the Premises solely as resort and other uses ancillary to the same. The provisions of this Article shall be binding upon Tenant's successors, assigns, subtenants and licensees and shall not be waived by any consent to an assignment or subletting or otherwise except by written instrument expressly referring to this Article.

B. Tenant acknowledges that Tenant shall solely responsible for applying for, and for procuring, any and all certificates, licenses, permits and consents from any governmental agency required in connection with such use. Landlord makes no representation as to the permitted use of the Premises. In the event that Tenant, after due inquiry and effort, is unable to obtain a certificate of occupancy for the Demised Premises for the use contemplated hereunder, Landlord shall not unreasonably withhold its consent to the use of the Demised Premises for any such other legal use that Tenant may request, provided that same does not adversely impact any other tenants at the building, if any, of which the Demised Premises is a part and such use be consistent with the nature of the Building and the neighborhood in which it is situated.

C. Tenant will not at any time use or occupy the Premises in violation of the Certificate of Occupancy. Tenant has inspected the Premises and accepts them as is, subject to the Schedules annexed hereto with respect to Landlord's Initial Work, if any. In any event, Landlord makes no representation as to the condition of the Premises and Tenant agrees to accept the same subject to violations, whether or not of record.

D. Tenant shall continuously occupy and utilize the entire Premises in the active conduct of its business in a reputable manner on such days and during such hours of business as may be determined from time to time by the Landlord.

E. The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with all statutes, bylaws, rules and regulations of any federal, state, municipal or other competent authority and will not do anything on or in the Premises in contravention of any of them.

F. Tenant shall have access to the Premises 24 hours per day, 7 days per week, subject to municipal ordinance and the terms of this Lease.

4. <u>TERM:</u> The term of this lease shall be for ten (10) years, commencing on March 1, 2026 ("Commencement Date") and expiring on the date that is the day before the tenth annual anniversary of the Commencement Date ("Expiration Date"). The first "Lease Year" shall commence on the Commencement Date and shall end with the expiration of the next succeeding twelve (12) months, plus the number of days, if any, required to have the period end at the expiration of the calendar month, and each Lease Year shall run consecutively thereafter.

5. <u>OMITTED.</u>

6. <u>RENT</u>:

A. Tenant shall pay to Landlord, at Landlord's address or to an address otherwise specified by Landlord to Tenant, annual base rent ("Rent" or "Fixed Rent" or "Base Rent"), without setoff, abatements or deduction, in monthly installments throughout the term of this Lease with a bi-annual increase of three (3%) percent every other year, as set forth in schedule B annexed hereto and made apart hereof

B. Additional Rent shall be payable with and when monthly rent is due. Failure by Tenant to pay item of Additional Rent shall entitle Landlord to exercise all remedies for such failure which it would be entitle to exercise at law or under this Lease in respect of any failure to pay monthly rent.

C. This Lease shall remain unenforceable against the Landlord until such time as the Tenant delivers to the Landlord the first month's rent, the Security Deposit and documents

evidencing tenant's insurance which is in compliance with the terms herein, which shall be delivered as of the date this Lease is executed.

D. In the event the Tenant shall fail to pay any rent or Additional Rent when the same is due and payable, then and in that event, Tenant shall be required to pay as Additional Rent, fifty dollars ($50.00) administrative fee in addition to ten (10%) percent of the dollar amount which was due and payable, in addition to any and all attorneys' fees, costs and disbursements which may arise from enforcing Landlord's rights hereunder.

7. SECURITY DEPOSIT:

Tenant shall deposit with the Landlord the sum of $100,000 representing two (2) months of initial annual rent as the initial security for the full and faithful performance by the Tenant of all the terms covenants and conditions of this lease upon the Tenant's part to be performed, which sum shall be returned to the Tenant after the time fixed as the expiration of the term herein; provided that the Tenant has fully and faithfully carried out all of said terms, covenants and conditions on Tenant's part to be performed as set forth in this Lease. The security deposit shall be adjusted from time to time to reflect two (2) months of the then current rent. Landlord shall not deposit said funds in an interest bearing account. In the event of a sale of the Premises subject to this Lease, the Landlord shall have the right to transfer the security to the vendee for the benefit of the Tenant and the Landlord shall be considered released by the Tenant from all liability for the return of such security; and the Tenant agrees to look solely to the new Landlord for the return of the said security, and it is agreed that this shall apply to every transfer of the security to a new Landlord.

8. UTILITIES AND OTHER SERVICES: During the Lease term, Tenant shall pay for all gas and electricity charges, water and any other utilities furnished in respect of the Premises directly to the utility provider or if separately metered to the Landlord upon receipt of invoice and if not then shall pay its Allocable Share of same. Tenant shall pay such items as Additional Rent within 5 days of its receipt of a bill therefore from the Landlord, or direct to utility provider if account is in tenant's name and utility provided bills to Tenant directly, as the case may be.

9. REAL ESTATE TAXES, WATER AND SEWER: Tenant throughout the term of this Lease shall pay any and all real estate taxes assessments, water charges and sewer rents, or other similar taxes assessed, incurred, or otherwise charged in respect of the Premises. Tenant shall, at the option of Landlord, either pay such real estate taxes, water charges and sewer rents within ten (10) days of receipt of the real estate tax bill or a statement of same by Landlord or pay such amounts on a monthly installment basis to be determined by Landlord. No delay or failure by Landlord in preparing or delivering any statement or demand for any Additional Rent shall constitute a waiver of or impair Landlord's rights to collect such Additional Rent. If Tenant remains in possession of the demised premises after the expiration of the lease term or earlier termination of this lease, as a month to month tenant or otherwise, the provisions of this Section shall continue in full force and effect for so long as Tenant remains in possession of the demised premises. Tenant shall also pay as Additional Rent one hundred percent of any (a) business improvement district charge and/or assessment, (b) commercial rent tax or (c) occupancy tax. Tenant agrees to pay prior to delinquency any and all taxes and assessments levied, assessed or imposed during the lease term upon or against: All furniture, fixture, signs and equipment and any other personal property installed or located within the premises; and all alterations, additions, betterments or improvements of whatsoever kind or nature made by or on behalf of the tenant to the demised premises, as the same may be separately levied, taxed and assessed or imposed directly upon Tenant, by the taxing authorities.

10. COMMON AREAS, PARKING AREAS, AND FACILITIES MAINTENANCE:

A. The Tenant shall maintain the Common Areas, Parking Areas and Facilities and shall keep the same in good repair (including the making of any necessary replacements), including but not limited to periodic exterior window washing, paving, roads, hydrants, driveways, sidewalks, curbs and drainage facilities, surfacing, landscaping, barriers, retaining walls, fences, gates, grating, driveways, cleaning and marking of parking areas.

B. Tenant further agrees to maintain and repair and to keep the Parking Areas and Facilities up to the curb reasonably free from accumulated snow and ice and from refuse and open for use and fully lighted during all business hours. Tenant shall be responsible for snow and ice removal from the sidewalk areas immediately in front of the Premises to the edge of the curb, which Tenant shall keep reasonably free of snow and ice.

C. Said parking areas will be subject to the exclusive control and management of Landlord, and Landlord will have the right to establish, modify, change and enforce reasonable rules and regulations with respect to the Parking Areas and Facilities, and Tenant agrees to abide by and conform with such rules and regulations not in violation of this Lease; If the Demised Premises includes the right to parking on the Premises, then the right of employees and customers to use the parking facilities shall apply only while they are at work or patronizing the building. If Tenant is allowed to use the parking spaces, Tenant agrees that it and its employees will park their trucks, delivery vehicles and automobiles only in such of the parking areas as Landlord from time to time designate for that purpose. Tenant may not, without Landlord's written consent thereto, permit its trucks or vans to remain parked overnight in the Parking Areas and Facilities, nor shall Tenant store anything in the Parking Areas and Facilities without Landlord's written consent thereto. Landlord shall have the right to close any part of the Parking Areas and Facilities for such time as may, in the opinion of Landlord's counsel, be necessary to prevent a dedication thereof, or the accrual of any rights in any person, or to clean and repair the same, and to close any part of the parking area for such time as Landlord deems necessary in order to discourage non-customer parking, and to do other things in the parking areas as Landlord in its discretion deems reasonable and necessary for the benefit of all occupants of the building, provided such actions and determinations by Landlord shall not unreasonably interfere with the conduct of Tenant's business in the Premises.

11. CONDITION OF PREMISES:

A. "As is". Except for Landlord's Work and Tenant's Work, Tenant acknowledges that it has inspected the demised premises and accepts the same in its present condition "AS IS". Tenant warrants and represents that there are no express or implied warranties, representations or agreements on the part of the Landlord with reference to the condition or usability of the demised premises, except as may be expressly set forth in this Lease. Except as herein specifically set forth, Landlord shall not be required to repair, renovate, restore or redecorate the demised premises at any time during the term of this Lease.

B. Change in condition. Landlord shall not be liable for any change of condition in the Demised Premises caused by the compliance with any present or future laws, rules, orders, ordinances, requirements, or regulations of any Federal, State, County or Municipal authority or government, including any change required by law for off street parking or similar legislation, or by revocation by any such authority or authorities of any permit or license heretofore granted, or by construction or operation of any public or quasi public work, or by the erection of any building or buildings upon any adjacent property, or by change of environment. Landlord shall not be liable for interference with or loss of light or other incorporeal hereditaments caused by anybody other

than Landlord, or caused by or for the City or any governmental or quasi governmental agency or authority in connection with the construction of any public or quasi public work.

C. Mechanicals. the Premises shall be delivered with mechanicals in as is order. Notwithstanding anything to the contrary, Landlord makes no representation as to the existence or working order of any air condition units at the Premises. To the extent same exists at the Premises, Tenant takes them in there 'as is' condition and shall be responsible for their maintenance, repair and replacement.

12. PERMITS, LICENSES, ETC.: Tenant, at its own cost and expense, shall obtain any and all permits, licenses and/or certificates, of whatsoever kind or nature from any and all authorities having jurisdiction over the Demised Premises, necessary or required for the occupation and the use of the Demised Premises as provided in this Lease. Landlord makes no representations that any license or permit which may be required will be granted, or if granted, will continue to be in effect or be renewed. Tenant's obligations under this Lease shall in no way be affected by Tenant's inability to secure or maintain any license or permit.

13. FITNESS: The Landlord makes no warranties or representations as to the fitness of the Demised Premises for Tenant's use and occupancy and for Tenant's business, and Tenant shall be responsible for complying with all requirements of law of all departments having jurisdiction and shall obtain all permits, certificates and licenses which may be required for the occupancy of the Premises and the conduct of Tenant's business therein.

14. LANDLORD'S WORK, TENANT'S WORK AND TENANT IMPROVEMENT ALLOWANCE:

A. Landlord or its designated contractor(s) shall perform the work ("Landlord's Work") set forth in the plan attached hereto as Schedule C and made a part hereof as provided by Tenant; provided, however, that Landlord shall have the right to make any changes in Landlord's Work required by any governmental department or bureau having jurisdiction over the Building.

B. Landlord shall not be obligated to provide any Tenant improvement allowance ("TIA") for Building improvements. Tenant shall bear the cost of its construction of the Tenant's Work set forth in Schedule D annexed hereto and made apart hereof ("Tenant's Work").

C. Other than Landlord's Work or as otherwise expressly set forth in this Lease, Landlord shall have no obligation to pay any money or perform any other work in, or make any alteration, or improvements to, the Premises or the Building to ready the Premises or the Building for Tenant's initial occupancy and Tenant accepts the Premises in its AS-IS and WHERE-AS condition as of the Commencement Date.

15. MAINTENANCE OF PREMISES:

A. Tenant covenants and agrees, at its own cost and expense, to use all reasonable diligence in accordance with the best prevailing methods, for the prevention and extermination of vermin, rats and mice in the Demised Premises. Tenant at its sole expense shall immediately comply with all notices and requests of municipal authorities and/or insurance carriers or their representatives relative thereto.

B. Any and all violations, fines, summons or charges issued against the demised premises shall be paid by Tenant.

C. Tenant shall use all reasonable means to prevent any odors or noxious fumes emanating from the Demised Premises or from the operation thereof (including its storage of garbage), and shall not operate or cause the Demised Premises to be operated in any manner that constitutes a nuisance or menace to any other occupant of Landlord's property in the vicinity.

D. Intentionally omitted.

E. Intentionally omitted.

F. Landlord reserves the right, without liability to Tenant and without constituting any claim of constructive eviction, to stop or interrupt any water or other service and to stop or interrupt any permitted use of any Building facilities at such times as may be necessary and for as long as may reasonably be required by reason of accidents, strikes, or the making of repairs, alterations or improvements, or inability to secure a proper supply of fuel, steam, water, electricity, labor or supplies, or by reason of any other similar or dissimilar cause beyond the reasonable control of Landlord. No such stoppage or interruption shall entitle Tenant to any diminution or abatement of rent or other compensation nor shall this Lease or any of the obligations of Tenant be affected or reduced by reason of any such stoppage or interruption. In connection with the making of any such repairs, alterations or improvements in or to the Demised Premises, Landlord agrees to use reasonable efforts to minimize interference with Tenant's use of the Demised Premises and, except in cases of emergency, Landlord shall give Tenant reasonable prior notice thereof (which may be oral) but Landlord shall not be obligated to employ overtime labor in connection therewith.

G. Tenant shall permit Landlord to erect, use, maintain and repair pipes, ducts, cables, conduits, plumbing, vents and wires in, to and through the Demised Premises and staging, scaffolding, bridges, protective sidewalk coverings, and the like in and around the exterior of the Building, including, without limitation, near the entrance to the Demised Premises, in connection with interior and exterior renovations and repairs and construction by Landlord as and to the extent that Landlord may now or hereafter deem to be necessary or appropriate for the proper operation and maintenance of the Building or to the extent necessary to accommodate the requirements of other tenants or occupants, if any, or neighbors, provided however that Landlord shall not unreasonably block access to the Demised Premises. If scaffolding shall be erected which obstructs Tenant's exterior signage, Tenant may erect signs (subject to Landlord's approval thereof) on the scaffolding identifying Tenant's business in the Demised Premises. All such work shall be done, so far as practicable in the good faith judgment of Landlord, in such manner as to minimize interference with Tenant's use of the Demised Premises but shall not be required to be done on an overtime or expedited basis and in no event whatsoever shall Tenant be entitled to a reduction or abatement of rent as a result thereof.

H. Tenant is responsible for maintaining and repairing the entire Premises including the Structural Portions of the Buildings, and all Building systems shall be Tenant's responsibility. Notwithstanding the foregoing, all repairs to any of the foregoing as shall be required by reason of (i) the performance of any work to the Demised Premises by Tenant, (ii) the moving of any property of Tenant's or of any property being delivered to or by Tenant in or out of the Building, or (iii) the acts, omissions, negligence, gross negligence or willful misconduct of Tenant or any of Tenant's partners, members, managers, directors, officers, shareholders, principals, representatives, contractors, licensees, agents, servants, employees, customers, guests, invitees or visitors (each a "Tenant Party"), shall, at the option of the Landlord, be performed by Landlord, at Tenant's sole cost and expense, and shall be reimbursed by Tenant to Landlord, as Additional Rent, plus 10% of the total cost as an administration fee, within fifteen (15) days after demand by Landlord. For the purposes of this paragraph, "Structural Portions" shall mean the roof, foundation,

outer-walls, façade, building equipment which shall mean risers and plumbing lines from the street to the point of entry.

I. Tenant must repair any damage caused the Premises by Tenant, its agents, assigns, invitees, contractors and a like immediately or within a commercially prompt time frame after becoming aware of same. In the event Landlord notifies Tenant of such damage, Tenant must repair such damage immediately or within 5 days after receipt of such notice. Landlord reserves the right to undertake the necessary repairs and charge the cost of same to the Tenant as Additional Rent plus 10% of the total cost as an administration fee.

16. GLASS: Tenant shall be responsible for replacing any broken glass of any windows or other glass within the demised premises, regardless of whether such glass was broken through the fault of Tenant or otherwise. Tenant shall promptly replace the same at Tenant's expense.

17. WASTE REMOVAL. ETC.: Tenant shall, at its own cost and expense, promptly dispose of all garbage and waste arising from the conduct of its business in the Demised Premises at such times and in such manner as to avoid any obnoxious or offensive smells or odors therefrom. Tenant further covenants and agrees, at its own cost and expense, to keep the drain waste and connections with mains free from obstructions to the reasonable satisfaction of the Landlord, its agents and all authorities having jurisdiction thereof Tenant further covenants and agrees that the Tenant will conduct its business in such a manner that no foul smells or odors shall emanate from the premises. Tenant shall not bring, use or store on the premises any hazardous substances, materials or wastes, as such terms are defined in or contemplated by any applicable law, ordinance or regulation.

18. HAZARDOUS MATERIALS: Tenant shall not generate, manufacture or store on the Premises any flammable explosives, radioactive materials, hazardous wastes, asbestos, toxic substances or related materials ("Hazardous Materials") including but not limited to substances defined as "hazardous materials" or "hazardous substances" or "toxic substances" within the meaning of any applicable Federal, State or local law, ordinance or regulation. Tenant shall indemnify and hold harmless Landlord, its directors, officers, employees and agents, and any successors or assigns of Landlord, from and against any and all damage, cost, expense and liability: (i) including all foreseeable and all unforeseeable consequential damages, directly or indirectly arising out of the use, generation, storage, or disposal of Hazardous Materials by Tenant; and (ii) including the cost of any required or necessary repair, cleanup, or detoxification and the preparation of any closure or any other required plans, to the full extent that such action is attributable, directly or indirectly, to the presence or use, generation, storage, release, threatened release, or disposal of Hazardous Materials by any person on the Premises other than Landlord, its agents, employees or tenants (other than Tenant). Tenant's obligations pursuant to the foregoing indemnity shall survive the termination of this Lease.

19. ALTERATIONS AND ADDITIONS:

A. Any and all construction by Tenant to the Demised Premises, including but not limited to Tenant's Work, shall be done in accordance with applicable code, and rules and regulations to which the Demised Premises is subject and shall be subject to Landlord approval. If any violations result from the tenant's construction, then tenant shall clear same at its sole cost and expense. Tenant shall not be entitled to make any additional alterations or additions to the premises without the prior written consent of the landlord in each instance. Landlord shall not unreasonably withhold or delay such consent provided that the tenant is not in default under this lease and the alterations and additions to do not change the general character, reduce the value or impair the usefulness of the demised premises; are effected with due diligence, in a good and

workmanlike manner and in compliance with all applicable laws, rules and regulations of governmental authorities and requirements of insurance companies; are promptly and fully paid for by tenant; and are made under the supervision of an architect or engineer satisfactory to landlord in accordance with plans and specifications approved by Landlord.

B. Within five (5) days after receipt of a bill therefor, Tenant shall reimburse Landlord for the reasonable costs that may be incurred by Landlord in connection with said approval of alterations and additions, including without limitation, the costs of making investigations as to the acceptability of the proposed plans, and reasonable legal costs incurred by Landlord in connection with the granting of any requested approval.

C. In addition, Tenant will obtain written permission from the Landlord before doing any of the following:

(i) painting, wallpapering, redecorating or in any way significantly altering the appearance of the Premises;

(ii) removing or adding walls, or performing any structural alterations;

(iii) changing the amount of heat or power normally used on the Premises as well as installing additional electrical wiring or heating units;

(iv) subject to this Lease, placing or exposing or allowing to be placed or exposed anywhere inside or outside the Premises any placard, notice or sign for advertising or any other purpose;

(v) affixing to or erecting upon or near the Premises any radio or TV antenna or tower, or satellite dish; or

(vi) installing or affixing upon or near the Premises any plant, equipment, machinery or apparatus without the Landlord's prior consent.

20. SIGNS:

A. Tenant agrees not to place or permit the placing of any signs, awnings, aerials or flagpoles or the like on the Demised Premises without on each occasion obtaining the prior written consent of Landlord. Tenant shall hold Landlord harmless and indemnified from and against any and all claims, actions, losses, damages, liability and expenses to persons or property caused by or resulting from the installation, maintenance or removal of any signs by Tenant or by anyone who is authorized by Tenant to perform such acts and who is claiming under Tenant, including the failure to comply with relevant rules and regulations of the municipal authorities having jurisdiction thereover, or the failure to pay such fees as may be required by said municipal authorities. All work with reference to this paragraph shall be done in accordance with rules and regulations of the proper municipal authorities and the obtaining of the necessary permits and payment of necessary fees by Tenant. At Landlord's option, in accordance with paragraph C of this Section, Tenant shall remove signs and other installations after the expiration of the term of this Lease and restore the exterior of the demised Premises to its original condition at Tenant's sole cost and expense.

B. Tenant, at Tenant's sole cost and expense, prior to installing or displaying any Sign shall first apply for, obtain and thereafter maintain throughout the term of this Lease all such Sign permits as shall be required by any law, rule or regulation presently existing or hereafter enacted

of any governmental authority or agency or department thereof having jurisdiction, for the installation, display and maintenance of any such Sign.

21. DISCHARGE OF LIENS

A. Notice is hereby given that Landlord shall not, under any circumstances, be liable to pay for any work, labor or services rendered or materials furnished to or for the account of Tenant upon or in connection with the Demised Premises, and that no mechanic's lien or other lien for work, labor or services rendered or material furnished to or for the account of Tenant shall, under any circumstance, attach to or affect the estate of interest of Landlord, structure of the Building, the Demised Premises or any alteration, repair or improvement erected or made thereon.

B. Tenant shall take good care of the Demised Premises, both inside and outside, and keep the same and all parts thereof, including, without limitation, any and all alterations, additions and improvements therein or thereto, in good order and condition suffering no waste or injury, and shall, at Tenant's expense, promptly make all non-structural repairs and replacements which shall be of good quality sufficient for the proper maintenance and operation of the Demised Premises and shall be constructed and installed in compliance with all requirements of all governmental authorities having jurisdiction thereof, and of the New York Board of Fire Underwriters or any successor thereof.

C. Without limiting the generality of Paragraph 3 of this Lease, Tenant shall not suffer or permit any mechanic's or other lien for work, labor, services or materials rendered or furnished to or for the account of Tenant upon or in connection with the Demised Premises to attach to the said Premises or to any portion thereof, and wherever and whenever any such lien or liens shall be filed, Tenant shall within twenty (20) days after said filing, either pay or bond the same or procure the discharge thereof in such manner as may be provided by law.

D. If Tenant shall fail or cause such lien to be discharged within the period aforesaid, then, in addition to any other right or remedy Landlord shall have, Landlord may, but shall not be obligated to, discharge the lien by paying the amount claimed to be due, or by procuring the discharge of such lien by deposit or bonding proceedings, and in such event Landlord shall also be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien by the lien holder with interest, pay the amount of judgment in favor of the lien holder with interest, costs and allowances. Any amount so paid by Landlord with all costs and expenses incurred by Landlord in connection therewith, together with interest thereon at the highest legal rate for individuals from the respective date of Landlord's making of the payment or incurring of the costs and expenses, shall constitute Additional Rent payable by Tenant under this Lease and shall be required to be paid by Tenant to Landlord within five (5) days from demand therefor.

E. Prior to commencement of any work in the Premises, Tenant shall obtain and deliver to Landlord a written letter of authorization, in form satisfactory to Landlord's counsel, signed by all architects, engineers and designers to become involved in such work, which shall confirm that any of their drawings or plans are to be removed from any filing with governmental authorities on request of Landlord, in the event that said architect, engineer or designer thereafter no longer is providing services with respect to the Premises. With respect to contractors, subcontractors, materialmen and laborers, and architects, engineers and designers, for all work or materials to be furnished to Tenant at the Premises, Tenant agrees to obtain and deliver to Landlord written and unconditional waiver of mechanic's liens upon the Premises or the Building after payments to the contractors, etc., subject to any then applicable provisions of the Lien Law. Notwithstanding the foregoing, Tenant at its expense shall cause any lien filed against the

Premises or the Building, for work or materials claimed to have been furnished to Tenant, to be discharged of record as per the Terms of this Lease.

22. INSURANCE:

A. Tenant shall, at its sole cost and expense, obtain and at all times during the Term maintain the following insurance coverages:

(i) Property Insurance covering the Premises, any and all of Tenant's property at the Premises, including without limitation, Tenant's equipment, materials and tools that are used by or owned by Tenant.

(ii) Commercial general liability Insurance covering all operations of Tenant and coverage for bodily injury and property damage with minimum limits as follows:

| | | |
|---|---|---|
| a. | $5,000,000 | General Aggregate Limit (other than Products – Completed Operations) |
| b. | $5,000,000 | Products – Completed Operations |
| c. | $2,000,000 | Personal and Advertising Injury Limit |
| d. | $2,000,000 | Each Occurrence Limit |

to be written on an "occurrence" basis using ISO forms or an equivalent form acceptable to Landlord, at its sole discretion, with the following minimum enhancements:

a. Separation of Insureds (as provided by ISO CG 00 01 form); with no additional restrictions, modifications, "Cross Liability" or "Cross Suits" endorsements or exclusions,
b. Contractual Liability for liability assumed under all contracts relative to the Premises, including Tenant's Work, and shall not have any additional restrictions or modifications to the definitions of "Insured Contract" as provided by ISO CG 00 01 Form,
c. Coverage for Independent Contractors for any work performed at the Premises, including Tenant's Work,
d. Additional Insured on a primary and non-contributory basis endorsement using ISO CG 20 26,
e. No "Action Over" or "Bodily Injury to Independent Contractors" or similar restrictions, endorsements or exclusions.
f. Pollution Exclusion, which shall not have any additional restrictions or modifications to the standard ISO forms.

(iii) Commercial Automobile Liability Insurance. Insurance shall cover all Owned, Leased, Non-Owned and Hired vehicles with minimum limits of $1,000,000 per accident and shall be written on an ISO CA 00 01 form with the following minimum coverage:

a. Designated Insured endorsement ISO CA 20 48.
b. Waiver of Subrogation endorsement.

(iv) Workers' Compensation and Occupational Disease Insurance in statutory limits for all eligible employees and/or workers (including sole proprietors and officers of the Tenant) at the Premises, including workers performing Tenant's Work.

(v) Employers' Liability Insurance with minimum limits as follows:

| | | |
|---|---|---|
| a. | $1,000,000 | Bodily Injury by Accident, for each accident |
| b. | $1,000,000 | Bodily Injury by Disease, policy limit |
| c. | $1,000,000 | Bodily Injury by Disease, each employee |

(vi) Umbrella Liability Insurance in excess of commercial general liability, automobile liability and Employers' Liability. Umbrella Liability Insurance shall cover all operations of Tenant and coverage shall provide at a minimum the same coverages and additional insureds and terms and conditions included in the primary policies with the minimum limits as follows:

| | | |
|---|---|---|
| a. | $7,000,000 | General Aggregate Limit |
| b. | $7,000,000 | Each Occurrence Limit |
| c. | $7,000,000 | Products – Completed Operations |

to be written on an "occurrence" basis on a form acceptable to Landlord, in its sole discretion.

(vii) Pollution Insurance with minimum limits of $1,000,000 to be written on an occurrence form and shall remain in force for the Term of the Lease. If claims made under policy, coverage for extended reporting period shall remain in force for a minimum of three (3) years following the Expiration Date of the Lease.

(viii) Such other insurance as may be required by Landlord in its sole and absolute discretion, by law or as Tenant deems necessary to maintain.

B. All insurance policies shall:

(i) Be through carriers licensed and admitted to do business in the State of New York with a minimum A.M. Best rating of A-VII; and

(ii) The minimum limits set forth herein will not be construed as a limitation of Landlord rights under any insurance policy with higher limits, and no insurance policy maintained by Tenant or any subcontractors, of any tier, shall be endorsed to include such a limitation.

C. Tenant shall provide Landlord with evidence of the insurance required by this Section, naming Landlord and Landlord's Mortgagee, if any, as additional insured, on appropriate ACORD certificates showing compliance with the insurance requirements set forth herein along with a copy of the actual insurance policy language or endorsements providing: additional insured, additional insured is on a primary and non-contributory basis, waiver of subrogation and cancellation or non-renewal. Any policy terms and conditions, limits, deductibles, exclusions and so on which deviate from ISO insurance policy forms and endorsements or this Insurance Exhibit, must be indicated on the ACORD certificate(s) prior to the Commencement Date and prior to the performance of Tenant's Work as hereinafter provided. Tenant's ACORD certificates will evidence all self-insured retention's, deductibles and or self-insurance greater than $25,000 for any of the insurance coverages herein required.

D. If Tenant fails to provide all or any of the insurance required by this Section 7 or subsequently fails to maintain such insurance in accordance with the requirements thereof, Landlord may (but shall not be required to) (i) procure or renew such insurance and any amounts paid by Landlord for such insurance shall constitute Additional Rent due and payable on or before the next Rent Day, together with interest as provided in Section 4 and/or (ii) arrange (but not pay the premium) for such insurance and in such event Tenant shall pay such premiums within five (5)

days after Landlord's demand therefor or the date when such said premiums become due, whichever is earlier. Tenant acknowledges that the payment of such premiums is Tenant's responsibility, and Landlord shall not be required to have paid the premiums prior to invoicing Tenant therefore or (iii) terminate this Lease.

E.

(i) Any proceeds received pursuant to the insurance coverage required by this Section shall be payable to Landlord to the extent of Landlord's interest therein.

(ii) Each policy of insurance required to be carried pursuant to the provisions of this Section 7 shall contain (i) a provision that no act or omission of Landlord or Tenant shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (ii) an agreement by the insurer that such policy shall not be canceled, modified or denied renewal without at least thirty (30) days' prior written notice to Landlord and Landlord's mortgagee, ten (10) days for non-payment of premium, and (iii) a waiver of subrogation by the insurer.

(iii) Tenant shall cooperate with Landlord and its insurance carrier with respect to any and all claims which may arise in connection with this Lease. Tenant shall notify Landlord in writing within two (2) days after it receives notice of any loss, damage or injury relating the Premises. Tenant shall not take any action which may operate as a bar to Landlord from obtaining any protection afforded by any of Tenant's insurance policies or which might prejudice Landlord in its defense to a claim based on any loss, damage or injury relating to the Premises.

F. Tenant shall defend, indemnify and hold Landlord harmless from and against any and all actions, costs, claims, losses, expense and/or damages, sustained by Landlord attributable to the recklessness, carelessness, or negligence of Tenant or any of its agents, servants or employees from any cause, including, without limitation by specification, property damage and/or injury or death to any person or persons.

G. Tenant shall cause all suppliers of work or supplies to maintain for the full term of such parties' work and at such parties' own expense, the same minimum insurance requirements as outlined above and required of Tenant. Tenant shall collect and maintain copies of all suppliers of work or supplies Acord certificates reflecting all of the above minimum insurance coverage with the same attachments as required of Tenant. Tenant acknowledges that Landlord has the right to either terminate Tenant, suppliers of work or supplies or withhold payments to Tenant, suppliers of work or supplies until properly executed Acord certificates of insurance with copies of the Additional Insured, Primary and Non-Contributory Basis and Waiver of Subrogation endorsements providing insurance as required herein are received by Landlord.

H. The insurance requirements set forth herein will in no way limit Tenant and suppliers of work and supplies from any liability (including liability under the indemnification provisions or under any other provisions of this Lease or at law). The inclusions, coverage and limits set forth herein are minimum inclusions, coverage and limits (higher limits of coverage may be required which shall be determined by Landlord in its sole and absolute discretion). The required minimum limits set forth herein will not be construed as a limitation of Landlord rights under any policy with higher limits, and no policy maintained by Tenant, suppliers of work or supplies will be endorsed to include such a limitation. Nothing contained herein will be construed as limiting the type, quality or quantity of insurance coverage that Tenant, suppliers of performing work or supplies should maintain. Tenant, suppliers of work or supplies will be responsible for determining appropriate inclusions, coverage and limits which may be in excess of the minimum requirements set forth herein.

I. The Tenant shall not violate or permit to be violated any of the conditions or provisions of any policy and shall so perform and satisfy the requirements of companies writing such policies that at all times companies of good standing, satisfactory to the Landlord, shall be willing to write and/or continue such insurance.

J. Tenant shall pay for any increase in Landlord's costs for insurance that arise as a result of Tenant's use or activity at the Premises including but not limited any subtenant to which Tenant has subleased all or part of the Premises caused by any reason whatsoever. Any costs incurred by Landlord in obtaining new insurance as a results of cancelation of Landlord's insurance caused of tenants actions or omissions shall be paid by Tenant as Additional Rent.

K. The Tenant shall pay as Additional Rent the reimbursement to Landlord for Landlord's building insurance covering the replacement cost of the building and the structural elements of the Building.

L. Notwithstanding anything contained in this Lease to the contrary, for issues relating to this Lease, presuming the Landlord obtains its required insurance, the Landlord will not be liable for loss of Tenant business income, Tenant moving expenses, and consequential, incidental, punitive and indirect damages which are not covered by the Landlord's insurance.

23. LANDLORD'S LIABILITY: Tenant agrees that the liability of the Landlord under this Lease and all matters pertaining to or arising out of the tenancy and the use and occupancy of the demised premises, shall be limited to Landlord's interest in the building, and in no event shall Tenant make any claim against or seek to impose any liability against any other assets or property of Landlord, or any personal liability upon any individual, general or limited partner of any partnership, or principal of any firm or corporation that may now or hereafter become the Landlord, in excess of their interest in the Building.

24. INDEMNIFICATION. In addition to any other indemnities required to be furnished by Tenant to Landlord under the terms of this Lease, Tenant shall indemnify and save harmless Landlord against and from all liabilities, suits, obligations, fines, damages, penalties, claims, costs, charges and expenses, including architect's and attorney's fees and disbursements, which may be imposed upon or incurred by or asserted against Landlord by reason of any of the following occurring during the term of this Lease:

A. Work or thing done in, on or about the Premises or any part thereof or any liens thereon;

B. Any use, non-used possession, occupation, alteration, repair, condition, operation, maintenance or management of the Premises, or any part thereof, or of any street, alley, sidewalk, curb, vault, passageway or space comprising a part of the Premises or adjacent thereto;

C. Any negligence on the part of Tenant or any subtenant, licensee, concessionaire or other occupancy or any of its or their agents, contractors, servants, employees, licensees or invitees;

D. Any accident, injury (including death) or damage to any person or property occurring in, on or about the Premises or any part thereof or in, on or about any street, alley, sidewalk, curb, vault, passageway, or space adjacent thereto;

E. Any failure on the part of the Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease, or on its part to be performed or complied with;

F. Any liability which may be asserted against Landlord or any lien or claim which may be alleged to have arisen against or on the Premises under the laws of the State of New York or of any other governmental authority; and

G. Any failure on the part of Tenant to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in the mortgage to which this Lease is subject, or in any sublease, occupancy agreement, concession agreement or other contract and agreement affecting the Premises, on Tenant's part to be kept, observed or performed.

The provisions of this section and all other indemnity and hold harmless provisions elsewhere contained in this Lease shall survive the expiration or earlier termination of this Lease. The obligations of Tenant under this section shall not in any way be affected by the absence in any case of insurance coverage or by the failure or refusal of any insurance carrier to perform any obligation on its part under the terms of insurance policies affecting the Premises. If any claim, action or proceeding is made or brought against Landlord by reason of any event to which reference is made in this Lease, then, upon demand by Landlord, Tenant, at its sole cost and expense, shall resist or defend such claim, action or proceeding in Landlord's name, by counsel for Tenant's insurance carrier if such claims, action or proceeding is covered by insurance, otherwise by such counsel as Landlord shall approve. Notwithstanding the foregoing, Landlord may engage its own counsel to defend it or to assist in its defense and Tenant shall pay the reasonable fees and disbursements of such counsel. Notwithstanding that the Landlord or any successor in interest is an individual, corporation, joint venturer, tenancy in common, co-partnership, unincorporated association, or other unincorporated aggregate of individuals then, anything elsewhere to the contrary notwithstanding, Tenant shall look solely to the estate and property of such Landlord in the land and building for the satisfaction of Tenant's remedies for the collection of judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or breach by Landlord with respect to any of the terms, covenants and conditions of the Lease to be observed and/or performed by Landlord, and no other property or assets or such Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies and Landlord nor any individual at interest in Landlord, shall have any personal liability whatsoever.

No recourse shall be had on any of Landlord's obligations hereunder or for any claim based thereon or otherwise in respect thereof against any incorporator, subscriber to the capital stock, shareholder officer or director, past, present or future, of any corporation or partnership or joint venturer which shall be Landlord hereunder or included in the term "Landlord" or any successor of any such corporation, or against any principal of the corporation disclosed or undisclosed, or any affiliate of any part which shall be Landlord or included in the terms "Landlord," whether directly or through Landlord or through any receiver, assignee, trustee, in bankruptcy or through any other person, firm or corporation, whether by virtue of any constitution, statute or rule of law or by enforcement of any assessment or penalty, all such liability being expressly waived and released by Tenant. The aforesaid shall not reduce any right against Landlord as provided by law.

25. <u>SUBORDINATION AND ATTORNMENT</u>:

A. Subordination. This Lease shall be subject and subordinate to any mortgage, deed of trust, trust indenture, assignment of leases or rents or both, or other instrument evidencing a security interest, which may now or hereafter affect any portion of the Premises or be created as security for the repayment of any loan or any advance made pursuant to such an instrument or in connection with any sale-leaseback or other form of financing transaction, and all renewals,

extensions, supplements, consolidations, and other amendments, modifications, and replacements of any of the foregoing instruments ("Mortgage"), and to any ground lease or underlying lease of the Premises or any portion of the Premises whether presently or hereafter existing and all renewals, extensions, supplements, amendments, modifications, and replacements of any of such leases ("Superior Lease"). Tenant shall, at the request of any successor-in-interest to Landlord claiming by, through, or under any Mortgage or Superior Lease, attorn to such person or entity as described below within ten (10) days after the request is made. The foregoing provisions of this subparagraph A. shall be self-operative and no further instrument of subordination shall be required to make the interest of any lessor under a Superior Lease (a "Superior Lessor") or any mortgagee, trustee or other holder of or beneficiary under a Mortgage (a "Mortgagee") superior to the interest of Tenant hereunder; provided, however, Tenant shall execute and deliver within ten (10) days after request is made any certificate or instrument that Landlord, any Superior Lessor or Mortgagee may request in confirmation of such subordination.

B. Rights of Superior Lessor or Mortgagee. Any Superior Lessor or Mortgagee may elect that this Lease shall have priority over the Superior Lease or Mortgage that it holds and, upon notification to Tenant by such Superior Lessor or Mortgagee, this Lease shall be deemed to have priority over such Superior Lease or Mortgage whether this Lease is dated prior to or subsequent to the date of such Superior Lease or Mortgage. If, in connection with the financing of the Premises or with respect to any Superior Lease, any Mortgagee or Superior Lessor shall request reasonable modifications of this Lease that do not increase the monetary obligations of Tenant under this Lease, materially increase Tenant's other obligations, or materially and adversely affect the rights of Tenant under this Lease, then Tenant shall make such modifications within ten (10) days after request.

C. Attornment. If at any time prior to the expiration of the term of this Lease, any Superior Lease shall terminate or be terminated or any Mortgagee comes into possession of the Premises or the estate created by any Superior Lease by receiver or otherwise, Tenant shall, at the election and upon the demand of any owner of the Premises, or of the Superior Lessor, or of any Mortgagee-in-possession of the Premises, attorn from time to time to any such owner, Superior Lessor or Mortgagee, or any person or entity acquiring the interest of Landlord as a result of any such termination or as a result of a foreclosure of the Mortgage or the granting of a deed in lieu of foreclosure, upon the then-executory terms and conditions of this Lease, for the remainder of the term. In addition, in no event shall any such owner, Superior Lessor or Mortgagee, or any person or entity acquiring the interest of Landlord be bound by (i) any payment of rent or additional rent for more than one (1) month in advance, or (ii) any security deposit or the like not actually received by such successor, or (iii) any amendment or modification in this Lease made without the consent of the applicable Superior Lessor or Mortgagee, or (iv) any construction obligation, free rent, or other concession or monetary allowance, or (v) any set-off, counterclaim, or the like otherwise available against any prior landlord (including Landlord), or (vi) any act or omission of any prior landlord (including Landlord). Notwithstanding anything to the contrary contained here, Landlord shall undertake best efforts to obtain a subordination and non-disturbance agreement from any Superior Mortgagee.

D. Rights Accruing Automatically. The provisions of this paragraph shall inure to the benefit of any such successor-in-interest to Landlord, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the termination of any such Superior Lease, and shall be self-operative upon any such demand, and no further instrument shall be required to give effect to such provisions. Tenant, however, within ten (10) days after demand of any such successor-in-interest to Landlord, shall execute, from time to time, instruments in confirmation of the foregoing provisions of this paragraph, reasonably satisfactory to any such successor-in-interest to Landlord, acknowledging such attornment and setting forth the terms and conditions of its tenancy.

E. Limitation on Termination by Tenant. As long as any Superior Lease or Mortgage shall exist, Tenant shall not seek to terminate this Lease by reason of any act or omission of Landlord until Tenant shall have given written notice of such act or omission to all Superior Lessors and Mortgagees at such addresses as shall have been furnished to Tenant by such Superior Lessors and Mortgagees and, if any such Superior Lessor or Mortgagee, as the case may be, shall have notified Tenant within ten (10) business days following receipt of such notice of its intention to remedy such act or omission, until a reasonable period of time shall have elapsed following the giving of such notice (but not to exceed sixty (60) days), during which period such Superior Lessors and Mortgagees shall have the right, but not the obligation, to remedy such act or omission. The foregoing shall not, however, be deemed to impose upon Landlord any obligations not otherwise expressly set forth in this Lease.

26. CONDEMNATION:

A. Permanent Condemnation.

(i) Lease Termination. If all or any portion of the Premises is taken under the power of eminent domain or sold under the threat of the exercise of the power (both called "Condemnation"), this Lease shall terminate as to the part taken as of the first date the condemning authority takes either title or possession. If more then twenty-five percent (25%) of the leasable area of the Premises is taken or the balance of the Premises is unfit for Tenant's use, Tenant has the option to terminate this Lease as of the date the condemning authority takes possession. The option shall be exercised in writing (A) within thirty (30) days after Landlord or the condemning authority has given Tenant written notice of the taking or (B) absent such notice, within ten (10) days after the condemning authority has taken possession. If Tenant does not terminate, this Lease shall remain in full force and effect as to the portion of the Premises remaining. The fixed annual rent and additional rent shall be reduced in the same proportion as the area of the Premises taken bears to the entire area leased hereunder.

(ii) Award. Any award for Condemnation is Landlord's, whether the award is made as compensation for diminution in value of the leasehold or for the taking of the fee, or as severance damages. If this Lease is not terminated, Landlord shall diligently repair any damage to the Premises caused by such Condemnation, subject to Unavoidable Delays.

B. Temporary Condemnation. Upon condemnation of all or any portion of the Premises for temporary use, this Lease shall continue without change or abatement in Tenant's obligations as between Landlord and Tenant. Tenant is entitled to the award made for the use. If the Condemnation extends beyond the term of this Lease, the award shall be prorated between Landlord and Tenant as of the expiration date of the term. Tenant is responsible, at its sole cost and expense, for performing any restoration work required to place the Premises in the condition it was in prior to Condemnation, unless the term of the period of Condemnation extends beyond the expiration date of the Lease term. In such case, Tenant shall assign to Landlord any claim it may have against the condemning authority for the cost of restoration, and if Tenant has received restoration funds, it shall give the funds to Landlord within ten (10) days after demand.

27. SUBLEASE OR ASSIGNMENT:

A. This Lease or any interest herein shall not be sublet or assigned by Tenant, without the express written consent of the Landlord which, in each instance, may be withheld in Landlord's absolute discretion. Landlord may request any information as to the nature and character of the business of the proposed sublessor or assignee and the credit-worthiness of the proposed

sublessor or assignee, in addition to any other information Landlord may request in connection with this Section. The restrictions set forth in this Paragraph shall include a transfer of any beneficial ownership interest in Tenant, as applicable, including corporate stock if Tenant is a corporation, a partnership interest if Tenant is a partnership, or membership interest if Tenant is a limited liability company. No assignment of this Lease or acceptance of rent by Landlord from any assignee or other party shall discharge or release Tenant or any person, firm or corporation which previously assumed tenant's obligations hereunder, and Tenant and such persons, firms and corporations shall remain liable for the payment of rent and Additional Rent and for the performance and observance of all of the terms, covenants and conditions of this Lease.

B. If Tenant shall at any time or times during the Term desire to assign this Lease or sublet all or part of the Premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by (i) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than sixty (60) nor more than one hundred and eighty (180) days after the giving of such notice, (ii) a statement setting forth in reasonable detail the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the Premises, (iii) current financial information with respect to the proposed assignee or subtenant, including, without limitation, its most recent financial report, (iv) an agreement by Tenant to indemnify Landlord against liability resulting from any claims that may be made against Landlord by the proposed assignee or subtenant or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease and (v) in the case of a sublease, such additional information related to the proposed subtenant as Landlord shall reasonably request, if any.

C. Provided that Tenant is not in default of any of Tenant's obligations under this Lease (after notice and the expiration of any applicable grace period) as of the time of Landlord's consent, and as of the effective date of the proposed assignment or commencement date of the proposed sublease, Landlord's consent (which must be in writing and form reasonably satisfactory to Landlord) to the proposed assignment or sublease shall not be unreasonably withheld or delayed, provided and upon condition that:

(i) Tenant shall have complied with the provisions of subsection B of this Article;

(ii) In Landlord's reasonable judgment the proposed assignee or subtenant is engaged in a business or activity, and the Premises, or the relevant part thereof, will be used in a manner, which (a) is in keeping with the then standards of the Building, (b) is limited to the use of the Premises as defined above, and (c) will not violate any negative covenant as to use contained in any other lease of office space in the Building;

(iii) The proposed assignee or subtenant is a reputable party of good character and with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

(iv) Neither (a) the proposed assignee or subtenant nor (b) any person which, directly or indirectly, controls, is controlled by or is under common control with, the proposed assignee or subtenant, is then an occupant of any part of the Building;

(v) The proposed assignee or subtenant is not an existing tenant/occupant of the Building or a person with whom Landlord is or has been, within the preceding six (6) month period, has exchanged offers toward leasing space in the Building, or negotiated a lease for space in the Building or submitted an offer to lease space in the Building;

(vi) The form of the proposed sublease or instrument of assignment (a) shall be in form reasonably satisfactory to Landlord, and (b) shall comply with the applicable provisions of this Article;

(vii) The amount of the aggregate rent to be paid by the proposed subtenant is not less than the then current market rent per rentable square foot for the Premises as though the Premises were vacant, and the rental and other terms and conditions of the sublease are the same as those contained in the proposed sublease furnished to Landlord pursuant to subsection B of this Article;

(xiii) Within five (5) days after receipt of a bill therefor, Tenant shall reimburse Landlord for the reasonable costs that may be incurred by Landlord in connection with said assignment or sublease, including without limitation, the costs of making investigations as to the acceptability of the proposed assignee or subtenant, and reasonable legal costs incurred by Landlord in connection with the granting of any requested consent;

(ix) The proposed occupancy shall not, in Landlord's opinion, increase the office cleaning requirements or the Building's operating or other expenses or impose an extra burden upon services to be supplied by Landlord to Tenant, if any;

(x) The proposed assignee or subtenant or its business shall not be subject to compliance with additional requirements of law (including related regulations) beyond those requirements which are applicable to the named Tenant herein; and

(xii) The proposed subtenant or assignee shall not be entitled, directly or indirectly, to diplomatic or sovereign immunity and shall be subject to the service of process in, and the jurisdiction of the courts of New York State.

D. If Landlord shall recover or come into possession of the Demised Premises before the date herein fixed for the termination of this Lease, Landlord shall have the right, at its option, to take over any and all subleases or sublettings of the Demised Premises or any part thereof made by Tenant and to succeed to all the rights of said subleases and sublettings or such of them as it may elect to take over. Tenant hereby expressly assigns and transfers to Landlord such of the subleases and sublettings as Landlord may elect to take over at the time of such recovery of possession, such assignment and transfer not to be effective until the termination of this Lease or re entry by Landlord hereunder or if Landlord shall otherwise succeed to Tenant's estate in the Demised Premises, at which time Tenant shall upon request of Landlord, execute, acknowledge and deliver to Landlord such further instruments of assignment and transfer as may be necessary to vest in Landlord the then existing subleases and sublettings. Every subletting hereunder is subject to the condition and by its acceptance of and entry into a sublease, each subtenant thereunder shall be deemed conclusively to have thereby agreed from and after the termination of this Lease or re-entry by Landlord hereunder of or if Landlord shall otherwise succeed to Tenant's estate in the Demised Premises, that such subtenant shall waive any right to surrender possession or to terminate the sublease and, at Landlord's election, such subtenant shall be bound to Landlord for the balance of the term of such sublease and shall attorn to and recognize Landlord, as its Landlord, under all of the then executory terms of such sublease, except that Landlord shall not (1) be liable for any previous act, omission or negligence of Tenant under such sublease, (2) be subject to any counterclaim, defense or offset not expressly provided for in such sublease, which theretofore accrued to such subtenant against Tenant, (3) be bound by any previous modification or amendment of such sublease or by any previous prepayment of more than one (1) month's rent and Additional Rent which shall be payable as provided in the sublease,

or (4) be obligated to perform any work in the subleased space or the Building or to prepare them for occupancy beyond Landlord's obligations under this Lease, and the subtenant shall execute and deliver to Landlord any instruments Landlord may reasonably request to evidence and confirm such attornment. Each subtenant or licensee of Tenant shall be deemed automatically upon and as a condition of occupying or using the Demised Premises or any part thereof, to have given a waiver of the type described in and to the extent and upon the conditions set forth in this Section.

28. EVENTS OF DEFAULT

A. If any one or more of the following events (herein sometimes called "Events of Default") occurs:

(i) If Tenant defaults in the payment of Fixed Rent or Additional Rent, within 5 days after written notice is mailed, or

(ii) If Tenant defaults in the performance of any other obligation hereunder and such default continues for thirty (30) days after written notice is mailed; or

(iii) If a petition in bankruptcy, for a reorganization or for the appointment of a receiver for all or any portion of Tenant's property is filed against Tenant and is not discharged within sixty (60) days thereafter; or

(iv) If Tenant acquiesces in the appointment of such a receiver, files any such petition, makes an assignment for the benefit of its creditors, or otherwise seeks the benefits of any insolvency laws;

Landlord, notwithstanding any other right or remedy it may have under the Lease, at law or in equity, may terminate the Lease, by notice to Tenant setting forth the basis therefor and to be effective not less than five (5) days after the date of giving such notice, whereupon the Lease shall terminate upon such effective date (with the same effect as if such date were the date fixed herein for the natural expiration of the Term), Tenant shall surrender the Premises to Landlord, and Tenant shall have no further rights hereunder but shall remain liable as hereinafter provided. In such event, Landlord may, without further notice, enter the Premises, repossess same and dispossess Tenant and all other persons and property therefrom. If required, Landlord shall use these documents as proof to obtain court approval to terminate the Lease and Tenant's consent to do so.

B. If Landlord so terminates the Lease, Tenant shall pay to Landlord, as damages:

(i) If an Event of Default occurs pursuant to subdivision (iii) or (iv) of Section A. hereof, a sum which represents any excess of (i) the aggregate of the Fixed Rent and Additional Rent for the balance of the Term (as if the Lease were not so terminated ) over (ii) the net fair rental value of the Demised Premises at the effective date of such termination; and

(ii) In all other cases, sums equal to the Fixed Rent and Additional Rent, at such times as they would have been payable if not for such termination of the Lease, less the net rents received by Landlord from any reletting, after deducting from such rents all costs incurred in connection with such termination and reletting (but Tenant shall not be entitled to receive any excess of such net rents over such sums). Landlord shall use all reasonable efforts to mitigate damages.

(iii) Landlord may also collect all expenses of reletting the Premises including, without limitation, attorney's fees, brokerage fees, expenses of remodeling for successor tenant, and free rent or other rent incentives provided to a new tenant.

(iv) Landlord may commence actions or proceedings from time to time to recover such damages or installments thereof. No provision hereof shall be construed to preclude Landlord's recovery from Tenant of any other damages to which Landlord may be entitled under applicable law.

In the event of a breach by Tenant of any of its obligations under the Lease, Landlord shall also have the right of injunction. The special remedies to which Landlord may resort hereunder are cumulative and concurrent and are not intended to be exclusive of any other remedies or means of redress to which Landlord may lawfully be entitled at any time, and Landlord may invoke any remedy allowed at law or in equity as if specific remedies were not provided for herein.

C. Tenant, on behalf of itself and all persons claiming through Tenant, including creditors, waives all rights, under present or future laws, to repossess the Premises.

D. Neither Landlord's nor Tenant's failure to insist upon the strict performance of the other's obligations hereunder to exercise any remedy consequent upon a default, nor Landlord's acceptance of any Fixed Rent or Additional Rent during the continuance of any default of Tenant (with or without knowledge thereof), shall constitute a waiver of any such obligations or default.

E. In any event of default, Tenant shall reimburse Landlord for all reasonable attorneys' fees incurred in connection with each action to compel compliance by Tenant with any provisions of this lease or to recover damages resulting from noncompliance. Such amounts shall be deemed Additional Rent and shall be paid on demand.

F. In the event that Tenant defaults under this Lease beyond applicable notice, grace and cure periods, in addition to Landlord's right to exercise any of its other rights and remedies at law, in equity or under this Lease, Landlord shall be entitled to recover from Tenant any rent abatement of Rent as provided elsewhere in this Lease, if any.

29. LANDLORD MAY PERFORM: If the Tenant fails to observe, perform or keep any of the provisions of this Lease to be observed, performed or kept by it and such failure is not rectified within the time limits specified in this Lease, the Landlord may, but will not be obliged to, at its discretion and without prejudice, rectify the default of the Tenant. The Landlord will have the right to enter the Premises for the purpose of correcting or remedying any default of the Tenant and to remain until the default has been corrected or remedied. However, any expenditure by the Landlord incurred in any correction of a default of the Tenant will not be deemed to waive or release the Tenant's default or the Landlord's right to take any action as may be otherwise permissible under this Lease in the case of any default

30. END OF TERM: Tenant shall surrender the Premises to Landlord at the expiration or sooner termination of this Lease in substantially the same order and condition as existed on the Commencement Date, except for reasonable wear and tear and damage by fire or other casualty, and Tenant shall remove all of its property. Tenant agrees it shall defend, indemnify and save Landlord harmless against all costs, claims, loss or liability resulting from delay by Tenant in so surrendering the Premises, including, without limitation, any claims made by any succeeding tenant founded on such delay (collectively, "Succeeding Tenant Expenses"); provided, however that Tenant shall not be liable for any Succeeding Tenant Expenses before the date which is thirty (30) days after the expiration or sooner termination of the Term.

31. ABANDONED EQUIPMENT: Notwithstanding anything herein contained to the contrary, any machinery, equipment or fixtures which are installed in the demised premises, which remain within the demised premises after the expiration of the Lease term or sooner termination thereof shall, at the Landlord's option, become the property of the Landlord, free of any claim by Tenant or any person claiming through the Tenant, or shall, at Landlord's option, be removed and disposed of by Landlord at Tenant's cost and expense, without further notice to or demand upon Tenant.

32. SURRENDER: No act or omission of Landlord or its agents shall constitute an acceptance of a surrender of the Premises, except a writing signed by Landlord. The delivery or acceptance of keys to Landlord or its agents shall not constitute a termination of this Lease or a surrender of the Premises. Acceptance by Landlord of less than the Rent herein provided shall at Landlord's option be deemed on account of earliest Rent remaining unpaid. No endorsement on any check, or letter accompanying Rent, shall be deemed an accord and satisfaction, and such check may be cashed without prejudice to Landlord.

33. HOLDOVER: If Tenant holds over and retains possession after the expiration or sooner termination of the original term or of any extended term of this lease, such holding over shall not be deemed to extend the term or renew the lease, but such holding over, thereafter, for so long as same exists shall continue upon the covenants and conditions herein set forth, except that the charge for use and occupancy of such holding over for each calendar month or part thereof (even if such part shall be a small fraction of a calendar month) shall be three times the amount of the highest monthly fixed rental contained in this Lease. The aforesaid obligations shall survive the expiration or sooner termination of the Term of this Lease.

34. LITIGATION: It is mutually agreed between the Landlord and Tenant that the respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other on any matters whatsoever arising out of or in any way connected with this Lease, the Tenant's use or occupancy of said Premises and/or claim of injury or damages (other than personal injury or damage to property). If the Tenant shall allege or claim any damages resulting from any breach or alleged breach by the Landlord under the terms of this Lease or any claim of any kind whatsoever arising in favor of the Tenant against the Landlord, the Tenant agrees that such claim shall not be asserted either as a counterclaim, set-off or defense in any action or proceeding brought by the Landlord against the Tenant for the payment of rent or recovery or possession of the demised Premises. Such claim by the Tenant against the Landlord shall only be enforced, prosecuted or maintained by a separate action or proceeding instituted by the Tenant against the Landlord and not to be consolidated with any action or proceeding brought by the Landlord to recover rent or to recover possession of the demised Premises. Tenant shall reimburse Landlord for all reasonable attorneys' fees incurred in connection with each action to compel compliance by tenant with any provisions of this lease or to recover damages resulting from noncompliance. Such amounts shall be deemed Additional Rent and shall be paid on demand.

35. ESTOPPEL: Tenant agrees that at anytime, and from time to time, upon not less than ten (10) days prior written request by Landlord, to execute, acknowledge and deliver to Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications), and the dates to which the rent and other charges have been paid in advance, if any, it being intended that any such statement delivered pursuant to this Paragraph may be relied upon by any prospective purchaser of the fee or mortgagee or assignee of any mortgage upon the fee of the demised premises.

36. CONSENTS: Any consent required or permitted to be given by Landlord under this Lease may be granted or withheld by Landlord in Landlord's sole and absolute discretion, unless specifically otherwise provided herein. Wherever Landlord in this Lease specifically agrees not to unreasonably withhold its consent, it is understood and agreed that Tenant's sole remedy in connection with any refusal on the part of the Landlord to give its consent in writing shall be limited to bringing an action for a declaratory judgment or for specific performance, and in no event shall Tenant bring an action for damages against the Landlord or shall the Landlord be liable to the Tenant in damages for the Landlord's refusal to grant its consent.

37. BROKER: Tenant warrants and represents to Landlord that it has dealt with __________. and no other real estate salesperson or other person, firm or corporation in connection with this lease. Tenant shall indemnify and hold Landlord harmless from any and all claims, liabilities and/or damages which are based upon a claim by any other broker, person, firm or corporation for brokerage commission and/or other compensation by reason of having dealt with Tenant. Landlord shall pay the Broker based on a separate agreement.

38. RECORDING: Neither this Lease or any memorandum thereof shall be recorded without the prior written consent of landlord.

39. REMEDIES CUMULATIVE: No reference to or exercise of any specific right or remedy by the Landlord will prejudice or preclude the Landlord from any other remedy whether allowed at law or in equity or expressly provided for in this Lease. No such remedy will be exclusive or dependent upon any other such remedy, but the Landlord may from time to time exercise any one or more of such remedies independently or in combination

40. RULES AND REGULATIONS: The Tenant will obey all rules and regulations posted by the Landlord regarding the use and care of the Building, parking lot and other common facilities that are provided for the use of the Tenant in and around the Building on the Premises

41. BULK SALE: No bulk sale of goods and assets of the Tenant may take place without first obtaining the written consent of the Landlord, which consent will not be unreasonably withheld so long as the Tenant and the Purchaser are able to provide the Landlord with assurances, in a form satisfactory to the Landlord, that the Tenant's obligations in this Lease will continue to be performed and respected, in the manner satisfactory to the Landlord, after completion of the said bulk sale

42. FORCE MAJEURE: In the event that the Landlord or the Tenant will be unable to fulfill, or shall be delayed or prevented from the fulfillment of, any obligation in this Lease by reason of municipal delays in providing necessary approvals or permits, the other party's delay in providing approvals as required in this Lease, strikes, third party lockouts, fire, flood, earthquake, lightning, storm, acts of God or our Country's enemies, riots, insurrections or other reasons of like nature beyond the reasonable control of the party delayed or prevented from fulfilling any obligation in this Lease (excepting any delay or prevention from such fulfillment caused by a lack of funds or other financial reasons) and provided that such party uses all reasonable diligence to overcome such unavoidable delay, then the time period for performance of such an obligation will be extended for a period equivalent to the duration of such unavoidable delay.

43. NO WAIVER: No provision of this Lease will be deemed to have been waived by the Landlord unless a written waiver from the Landlord has first been obtained and, without limiting the generality of the foregoing, no acceptance of rent subsequent to any default and no condoning, excusing or overlooking by the Landlord on previous occasions of any default nor any earlier written waiver will be taken to operate as a waiver by the Landlord or in any way to defeat or affect the rights and remedies of the Landlord.

44. PARTIAL INVALIDITY: If any provision of this Lease shall be declared invalid or be unenforceable, the remainder of this Lease shall continue in full force and effect.

45. NOT VALID UNTIL EXECUTED. The submission of this Lease to Tenant shall not be construed as an offer or option, and Tenant shall not have any rights hereunder unless and until Landlord shall execute a copy of this Lease and deliver the same to Tenant.

46. NOTICES: Any notice (a "Notice") required or permitted hereunder shall be sent by recognized overnight courier, or by certified mail or registered mail, return receipt requested, if to Landlord, at its address first set forth above, and if to Tenant, at the Premises, and shall be effective on the third business day after such delivery, with a copy, in each case, by facsimile, PDF, email or regular mail, as follows:

In the case of a Notice to Landlord, to:

Landlord with the address first mentioned above and;

Daniel Kugel & Associates PLLC
*Attorneys of the Landlord*
Attention: Daniel Kugel
555 Willow Avenue
Cedarhurst, New York 11516

In the case of a Notice to Tenant, to:

____________________
____________________
____________________
____________________

47. SEVERABILITY. The provisions contained within this Lease shall be severable, and if the application of any clause, sentence, paragraph, subdivision, section or part hereof to any person or entity or circumstances shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the application of any other clause, sentence, paragraph, subdivision, section, part of this rider or remainder thereof.

48. ENTIRE AGREEMENT. This Lease constitutes the entire agreement between the parties hereto and the Landlord and or Landlord is not liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to said premises, made or furnished by the Landlord or by any real estate broker, agent, employee, servant or other person representing or purporting to represent the Landlord, unless such warranties, guarantees, promises, statements, representations or information are expressly and specifically set forth herein.

49. NO CHANGES. This Lease may not be changed, modified or discharged in any way orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification or discharge is sought.

50. TENDERING OF LEASE. The tendering of this lease to a prospective Tenant by Landlord, its servants or agents, or the return of this Lease signed by a prospective Tenant with or without a check(s) for rent or security deposit shall not constitute a binding Lease. This Lease shall be binding upon Landlord only when counter-executed by Landlord and returned to Tenant. The Lease is not binding unless executed. Submission by Landlord of the within Lease for execution by Tenant shall confer no rights nor impose no obligations on either party unless and until both Landlord and Tenant shall have executed the Lease.

51. COUNTERPARTS. This Lease may be executed in one or more counterparts, each of which when executed shall become one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Landlord and Tenant have executed this Lease as of the date set forth at the outset hereof.

LANDLORD:

**The Ridgeview Realtor LLC**

By: ______________________
Name: Joseph Dop[illegible]
Title: Member

**Bais Ruchel D'Satmar Inc. D/B/A Central UTA and Affiliated Entities LLC**

By: ______________________
Name: ISSAC Berkowitz
Title: Admin.

**SCHEDULE A**
**PROPERTY DESCRIPTION**

**Entire Property 5 Ridgeview Road, Rochester, NY 12446**

**SCHEDULE B**
**BASE RENT**

| Period | Monthly Rent | | Annual Rent | |
|---|---|---|---|---|
| Lease Year 1 | $ | 50,000.00 | $ | 600,000.00 |
| Lease Year 2 | $ | 50,000.00 | $ | 600,000.00 |
| Lease Year 3 | $ | 51,500.00 | $ | 618,000.00 |
| Lease Year 4 | $ | 51,500.00 | $ | 618,000.00 |
| Lease Year 5 | $ | 53,045.00 | $ | 636,540.00 |
| Lease Year 6 | $ | 53,045.00 | $ | 636,540.00 |
| Lease Year 7 | $ | 54,636.35 | $ | 655,636.20 |
| Lease Year 8 | $ | 54,636.35 | $ | 655,636.20 |
| Lease Year 9 | $ | 56,275.44 | $ | 675,305.29 |
| Lease Year 10 | $ | 56,275.44 | $ | 675,305.29 |

## SCHEDULE C

## LANDLORD'S INITIAL WORK

1. Landlord shall perform the following work at its cost an expense using its own contractors (collectively the "Landlord Work")

**NONE**

## Schedule D

## Tenant's Work

Tenant is responsible for, and permitted to perform, the following improvements at tenant's sole cost and expense subject Landlord's consent as per the terms of the Lease as set forth in relation to Alterations: