**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------X

| | |
|---|---|
| In re THE RIDGEVIEW REALTOR LLC, | Chapter 11 |
| Debtor. | Case No. 26-43491-ess |

---------------------------------------------------X

**Disclosure Statement for the Proposed Chapter 11 Plan**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

## Purpose and proposed outcome

The Ridgeview Realtor LLC proposes to market its real property for a sale closing after confirmation while pursuing governmental approvals that may support a more valuable retention, lease or refinancing transaction. The sale path is the present distribution mechanism. No creditor consent is assumed.

The claim amounts below are amounts asserted or scheduled, not findings of allowance. The sale or retention value can satisfy secured and priority obligations and provide a lawful distribution after the unliquidated tort claim, asserted Kleinman debt, possible SBA exposure, professional fees, taxes and carrying costs are determined.

## The debtor and property

The Debtor filed chapter 11 on July 21, 2026 in the Eastern District of New York, Case No. 26-43491-ess, before Judge Elizabeth S. Stong. It identified itself as a single asset real estate debtor. The scheduled principal asset is the campus at 5 Ridgeview Road in the Town of Rochester, Ulster County (the “Property”). The Property is described as approximately 85 acres with about 55,000 square feet of improvements, residential rooms and ancillary buildings and facilities. Descriptions vary slightly by source; a current survey, title and legal description control.

The schedules report $5.2 million for the real estate and no other asset value. The mortgage materials identify parcels 68.1-1-27.700, 68.3-1-16.200 and 68.3-1-16.300. The Debtor obtained the Property on or about November 2023. The Debtor's statement of financial affairs reports no revenues for 2024, 2025 or the prepetition portion of 2026. Joseph Doppelt's ECF No. 16 affidavit describes the property as vacant since September 2025 and secured. Kleinman disputes later nonuse and supplies lease and occupancy allegations. Those competing accounts remain unresolved. The July and August monthly reports show minimal activity, including a $100 August bank deposit; no September monthly report appears on the docket reviewed through ECF No. 59.

**Ownership management and related entities**

The schedules identify Joseph Doppelt 10%, Raizel Doppelt 10%, Moshe Doppelt 40% and the Estate of David Braun 40%, with Joseph acting as manager. Kleinman claims that Braun sold him 10% on March 15, 2024, reducing Braun's remaining share to 30%, and contests Joseph's authority. His supplied operating agreement is an unsigned November 2023 form naming Braun manager and requiring 60% consent for assignment and admission. These assertions require the actual agreement, transfer, consents, estate succession records and course-of-conduct evidence. Neither the plan nor this disclosure resolves them.

Kleinman's filings attribute property expenditures and operations to entities referred to as YMAH, including Arugath Habosem Inc. and Kehilath Jakov-Arugath Habosem Inc. Their separate legal identities, receipt of money, obligations and relationships to the Debtor must be traced. The estate has not conceded an alter-ego claim or that all affiliate debts are its debts.

**Case history and deadlines**

Schedules were filed at ECF No. 11. The United States Trustee raised insurance, operation, authority and professional-retention concerns. Ridgeview Lender LLC moved for stay relief at ECF No. 19, with amended notice at ECF No. 22. Kleinman filed ECF No. 27 asserting debt and requesting notices, ECF No. 30 concerning investigation, and ECF No. 36 seeking a chapter 11 trustee. He also objected to successor counsel and sought emergency relief. The Debtor's opposition and the merits of these requests are separate from this disclosure.

ECF No. 54, entered October 20, extends the section 362(d)(3) period on an interim basis through November 23, 2026 and requires an insurance status letter by November 5. Existing trustee, counsel and related matters are set for November 12 at 10:30 a.m., in person in Courtroom 3585, 271-C Cadman Plaza East, Brooklyn. ECF No. 59 schedules withdrawal on that date. A new

motion does not inherit those dates without Court assignment. November 18, 2026 is the deadline for a plan and disclosure statement.

**Filed claims and scheduled additions**

Claim 1 — County of Ulster — $114,593.98. Filed July 31, 2026. Asserts secured and priority treatment of the same tax obligation. Count once; reconcile the July 31 computation to the July 21 petition and allowable lien interest.

Claim 2 — Ridgeview Lender LLC — $4,979,257.61. Filed August 17. Asserts secured mortgage debt. Claim amount is petition-date computation; lawful later interest and fees require separate reconciliation and credits.

Claim 3 — Central Hudson Gas and Electric — $73,696.15. Filed September 1. General unsecured; supporting records identify four balances. Scheduled amount was $68,588; the difference alone does not establish error.

Claim 4 — Eliezer Friedman as administrator of Estate of J F — Unknown. Filed September 12. Unliquidated wrongful-death, personal-injury, negligence and related claims.

Claim 5 — Internal Revenue Service — $4,500.00. Filed September 14. General unsecured estimated partnership-return claims for 2023, 2024 and 2025 because returns were not filed. Not filed as priority tax. Amount may change after returns.

Claim Scheduled — Kalter Kaplan Zeiger and Forman — $2,187.50. Scheduled fixed and undisputed unsecured debt; no separate numbered proof appears. May be deemed filed under section 1111(a).

Claim Asserted — Abraham Kleinman or MAA — At least $3,500,000. Asserted in ECF Nos. 27 and 36-1, plus claimed interest; no numbered proof appears on register reviewed. Formal or informal claim status, assignment, obligor, principal and interest remain disputed.

Claim Potential — SBA — Undetermined. The ECF No. 36-13 package describes a $995,000 YMAH note and proposed Ridgeview guarantee and mortgage, with blank signature pages for those instruments. It also contains a signed, notarized SBA attorney affidavit dated December 5, 2024 stating that Ridgeview executed a mortgage being offered for recording. No numbered SBA claim appears on the October 26 register. Kleinman states at ECF No. 30 paragraph 8 that he was informed the loan did not close and was cancelled, and that a later modification request required unmet approvals. Executed closing documents, disbursement and cancellation records, current

balance and title records are needed to resolve these competing indications. No $995,000 current debt or enforceable lien is conceded.

The five registered claims total $5,172,047.74 in stated dollar amounts, plus the unknown Claim No. 4. Adding the scheduled $2,187.50 KKZF debt yields $5,174,235.24 before Kleinman, possible SBA exposure, administrative claims, later interest, taxes and other adjustments. No amendment appears on the reviewed register.

No asserted membership interest is silently barred as a debt. The Town enforcement complaint requests penalties, but no entered monetary judgment has been entered. Any asserted enforcement claim will be evaluated and treated according to its actual basis, timing and legal priority, with appropriate notice; no amount or priority is presumed.

**Loan taxes utility and tort issues**

Ridgeview Lender's claim includes the mortgage balance, interest, legal fees and other charges. The Debtor will compare the claim with the foreclosure judgment and payment records to confirm that the amount is correct and all payments were credited. The records show $696,599 in payments, some made using loan proceeds or reserves. The Debtor will determine who funded the remaining payments and whether Kleinman is seeking reimbursement for any of those same amounts. The $600 difference between the claim summary and judgment requires explanation; the summary uses the lower figure and does not itself establish an overcharge. The Debtor reserves supported objections without seeking to reopen matters already conclusively decided in the foreclosure case.

Claim No. 1’s supporting tax components total the filed amount but require petition-date cutoff and lien-interest review.

Claim No. 4 concerns an alleged August 20, 2025 death and related claims in Kings County Index No. 515104/2026. The allegations remain disputed. The Debtor will obtain the relevant insurance policies and coverage information, coordinate the defense, and seek appropriate procedures to address the claim and provide for any required reserve under the Plan. The Plan preserves rights concerning liability, damages, coverage, the proper trial forum under 28 U.S.C. section 157 and any right to a jury trial, and does not release any insurer from its obligations.

**Leases regulation and preservation**

Kleinman relies on a February 11, 2026 document at ECF No. 36-4 purporting to lease the Property to Bais Ruchel D’Satmar Inc. dba Central UTA and affiliated entities. The Debtor disputes that

this alleged lease ever became operative and states that it never materialized. Its stated rent is not treated as existing income, an admitted obligation or plan funding. Execution, conditions, performance and any asserted rights remain disputed and require resolution on the evidence. This alleged arrangement is distinct from the historical ACI proposal at ECF No. 36-28.

The Town enforcement case, Banach v. The Ridgeview Realtor LLC and Yeshiva and Mesvita Arugata Habasem, Ulster County Index No. EF2025-2829, is being handled by separate state-court counsel. Bankruptcy counsel is coordinating with that counsel concerning the status and requirements relevant to the Plan. The Debtor is pursuing the approvals appropriate to the proposed use, with state-court counsel handling the enforcement proceeding and related legal issues.

**Proposed transactions and long milestones**

The sale has a $7.5 million purchase price under the letter of intent to Talmud Torah Ohel Yochanan.

The June 12, 2026 ACI document at ECF No. 36-28 is a historical nonbinding proposal, not an operative lease, existing rental income or committed funding. The Debtor does not rely on its proposed rent as a source for this Plan. Any future operating arrangement requires defined terms, committed funding and applicable approvals.

The proposed extended schedule calls for a January 15, 2027 report; February 16 initial market and approval assessment; April 16 selected sale or fully funded retention; May 18 final plan and disclosure supplements; and July 19 acceptance target. These require Court relief where applicable. Monthly reports, a funded preservation budget and an earlier viable transaction can justify moving sooner. Governmental approval alone does not refinance the mortgage, liquidate claims or establish feasibility.

**Illustrative sale sensitivity and liquidation comparison**

The proposed sale scenario assumes a gross price of $7,500,000. Subtracting the filed County claim of $114,593.98 and lender claim of $4,979,257.61 leaves $2,406,148.41 before closing expenses and other obligations. Subtracting Central Hudson $73,696.15, IRS $4,500 and scheduled KKZF $2,187.50 leaves $2,325,764.76 before the unresolved tort claim, any allowed Kleinman or SBA liability, administrative and professional expenses, later interest, taxes, carrying costs and reserves. If an additional $3,500,000 Kleinman principal claim were allowed, there would instead be a $1,174,235.24 shortfall before those remaining items. The $7.5 million

assumption therefore does not establish full payment or an equity distribution; final recoveries require the completed closing-cost and claims-reserve schedule.

Retention requires current value, a defined operating model, applicable approvals, rehabilitation and carrying costs, committed capital, credible projections and debt treatment. No current rental income or binding operator arrangement is assumed. The historical ACI proposal supplies no established feasibility evidence for the present Plan.

**Professional compensation funding and retained estate claims**

Sobers Law PLLC reports receipt of $25,000 from the Debtor, the engagement identifies a $550 hourly rate, subject to Court approval and fee allowance. The docket also lists the September 9, 2026 application to employ Kalter, Kaplan, Zeiger & Forman as special litigation counsel at ECF No. 23 and Kleinman's objection at ECF No. 38. No order approving that employment was located on the October 26 docket reviewed through ECF No. 59. Separate state-court representation is not described here as court-approved estate employment; any estate compensation remains subject to the applicable employment and fee orders.

The Debtor reports no current capital. Future carrying costs are expected from an individual owner without repayment or remuneration. Such funding cannot be treated as a loan, lien or administrative expense by implication. Professional fees and any contributions remain subject to disclosure and applicable approval.

The Plan preserves defenses to the alleged Central UTA arrangement and estate rights independently supported by actual receipts or transfers, without admitting a lease or rent receivable. It also preserves potential affiliate-transfer claims, disputed Kleinman/MAA debt defenses, claims concerning unauthorized guarantees or liens, insurance and indemnity rights, and unauthorized postpetition transfers if established. These are investigation categories, not findings of liability or guaranteed recoveries.

**Voting risks taxes and next steps**

For the proposed $7.5 million sale, the following classification, treatment and voting schedule is proposed. Filed amounts are not adjudicated amounts; disputed and unliquidated claims require the applicable allowance or temporary voting procedures. No assumed recovery or voting percentage is assigned to an unresolved claim. The Court will determine any contested classification, impairment or voting issue before ballots are counted.

Class 1 County of Ulster. Proposed impaired class, entitled to vote, because the Plan defers enforcement and payment to the postconfirmation closing. Filed claim amount: $114,593.98, counted once. The allowed secured obligation will be paid in cash at closing, including lawful interest and charges, subject to determination of any disputed portion and appropriate reserve. The voting amount is the filed amount unless changed under applicable claims or voting procedures. Any priority component receives its legally required treatment without duplicating the same debt.

Class 2 Ridgeview Lender LLC. Proposed impaired class, entitled to vote, because the Plan alters the timing of enforcement and payment pending the postconfirmation sale. Filed petition-date amount: $4,979,257.61. The allowed secured payoff will be paid in cash at closing, with only legally recoverable accruals, fees and costs, and all applicable credits. The voting amount is the filed amount unless changed under applicable claims or voting procedures; a later payoff does not automatically become the voting amount. Any allowed unsecured deficiency receives Class 4 treatment, subject to section 1111(b) and any further required determination.

Class 3 Potential SBA secured claim. No SBA proof of claim or established voting amount appears on the October 26 register. The Plan does not allow a $995,000 claim, concede a lien or assign a zero voting amount. If an enforceable secured claim is established, its collateral, priority, amount, treatment, impairment and voting rights must be determined and disclosed before solicitation; otherwise this reserved class will be deleted. No vote will be manufactured from an unestablished claim.

Class 4 General unsecured claims. Proposed impaired class, entitled to vote to the extent claims are allowed or temporarily allowed for voting. Identified fixed amounts are Central Hudson $73,696.15, IRS $4,500 and scheduled KKZF $2,187.50 if deemed filed under section 1111(a), totaling $80,383.65 before other allowed claims. Claim No. 4 is unliquidated; Kleinman or MAA debt and any other claims or deficiencies require the applicable allowance and voting procedures. Allowed holders share pro rata in available proceeds after senior payments and required reserves. The Plan seeks payment in full to the extent funds permit but guarantees no percentage on the present record. Disputed claims will receive appropriate court-approved reserves; no disputed amount is assigned zero merely to affect voting.

Class 5 Equity interests. Proposed impaired class. Established interest holders receive only any residual after satisfaction of all higher-ranking entitlements, including applicable interest. Ownership percentages remain subject to determination. If the solicitation version provides a potential residual distribution, eligible holders may vote in their established interests as provided

by law or Court order. If it instead provides that the class receives no property, the class is deemed to reject under section 1126(g) and receives no ballot. Equity votes cannot satisfy section 1129(a)(10). No competing treatments will be submitted to voters without identifying which applies.

A claims class accepts only if the accepting eligible votes constitute at least two-thirds in amount and more than one-half in number of the allowed claims actually voting in that class, subject to section 1126 and Court orders. Equity acceptance requires at least two-thirds in amount of allowed interests actually voting. If a claims class is impaired, the Debtor must obtain acceptance by at least one impaired claims class excluding insider acceptances under section 1129(a)(10). If that requirement and the other applicable confirmation requirements are met, the Debtor may seek confirmation over another class's rejection under section 1129(b). A $7.5 million price does not itself establish the required acceptance, adequate reserves or a right to retain equity.

The sale is structured to close after confirmation. Section 1146(a) may exempt qualifying stamp or similar transfer taxes on instruments under a confirmed plan. No tax savings are assumed. Court approval concerns adequacy of disclosure; it is not approval of the transaction's merits or a guarantee of recovery.

Dated: New York, New York
October 26, 2026

**SOBERS LAW, PLLC**

By: /s/ Vivian Sobers.
Vivian Sobers, Esq.
11 Broadway, Suite 615
New York, New York 10004
vsobers@soberslaw.com | (917) 225-4501
Counsel for the Debtor