**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------X

In re THE RIDGEVIEW REALTOR LLC, Chapter 11

Debtor. Case No. 26-43491-ess

----------------------------------------------------X

## Debtor Chapter 11 Plan of Reorganization

The Ridgeview Realtor LLC (the "Debtor") proposes this Plan under sections 1121, 1123 and 1129. The Plan provides a market-tested sale closing after confirmation. Governmental approvals and a funded retention alternative may be pursued concurrently, but selection of retention requires definite terms, updated disclosure and any required modification and voting procedures before confirmation. The Plan assumes no creditor consent. This is the proposed plan to be completed with the transaction, funding and reserve exhibits identified below before solicitation or a representation of feasibility.

### Article I Definitions

"Allowed Claim" means a claim allowed by Final Order or otherwise under applicable law, subject to a timely objection.

"Disputed Claim" means a claim subject to a pending objection or otherwise disputed under applicable law.

"Petition Date" means July 21, 2026.

"Property" means the Debtor's interest in 5 Ridgeview Road, Town of Rochester, Ulster County, including the parcels identified in the title exhibit.

"Confirmation Date" means entry of the Confirmation Order.

"Effective Date" means the business day when the conditions below are satisfied and the sale closes, unless the confirmed transaction expressly supplies another effective mechanism.

"Plan Administrator" means the estate fiduciary identified and approved before confirmation, with identity, independence, authority, compensation and succession disclosed in the Transaction Supplement.

No individual member receives estate claims merely because of membership. Sale Proceeds means cash actually realized from the approved transaction. Distribution Fund means Sale Proceeds and other estate cash recoveries, less amounts paid or reserved under the waterfall below. A reserve is not allowance of a claim.

No defined term admits a disputed debt, ownership percentage or lien.

## Article II Unclassified claims

Allowed administrative expenses under sections 503(b) and 507(a)(2), including Court-approved professional compensation, will be paid in cash on the Effective Date, or when allowed and due if later, unless a particular holder affirmatively agrees to different treatment. Professional compensation remains subject to sections 327, 329, 330 and 331 and the Court's orders. The professional final-fee application deadline will be fixed in the Confirmation Order after notice.

Allowed non-tax priority claims will receive the cash treatment required by section 1129(a)(9)(B) absent actual acceptance of another lawful treatment. Allowed priority tax claims will be paid in full in cash on the Effective Date; any proposed installment alternative must be specifically disclosed and satisfy sections 1129(a)(9)(C) and 511 before solicitation. A single County tax obligation will not be counted both as secured and as a second priority debt. The IRS's presently filed Claim No. 5 is general unsecured, not a priority claim merely because the creditor is the IRS.

United States Trustee fees and required reports will be paid or supplied when due until closure, conversion or dismissal as applicable. No reserve for estate professionals replaces the requirement of fee allowance, and no owner-funded payment avoids required disclosure or Court review.

## Article III Classes and treatment

Class 1 consists of the Allowed Secured Claim of County of Ulster, filed Claim No. 1 for $114,593.98, to the extent secured. It will be paid in cash at closing in the allowed payoff amount, including only interest and charges lawfully recoverable, or reserved by Court order if disputed. Any allowed unsecured priority component will be paid once under Article II; an allowed nonpriority deficiency falls in Class 4. Classification does not concede the payoff, lien extent or petition-date cutoff.

Class 2 consists of the Allowed Secured Claim of Ridgeview Lender LLC, filed Claim No. 2 for $4,979,257.61 as of the petition. The allowed secured payoff, including permitted section 506(b) interest, fees and costs and all credits, will be paid from collateral proceeds at closing. A disputed

amount will be reserved or escrowed only as ordered, without invalidating the lien by mere assertion. Any allowed deficiency is Class 4. If cash proceeds cannot satisfy the secured treatment, the Debtor must modify before confirmation or otherwise establish a lawful section 1129(b)(2)(A) treatment with all applicable rights, including section 1111(b), preserved.

Class 3 is reserved for an established SBA secured claim or another separately identified secured claimant with distinct rights. The package at ECF No. 36-13 includes unsigned note, guarantee and mortgage signature pages describing a $995,000 YMAH note and proposed Debtor guarantee and mortgage. No numbered SBA claim appears on the October 26 register reviewed. Execution, disbursement, enforceability, recording, collateral and priority remain to be established. This class confers no lien or allowed debt.

Class 4 consists of substantially similar Allowed General Unsecured Claims. Presently identified claims include Central Hudson Claim No. 3 $73,696.15; the allowed amount of the unliquidated Friedman estate Claim No. 4; IRS Claim No. 5 $4,500; scheduled KKZF $2,187.50 if deemed filed or otherwise allowed; any allowed Kleinman or MAA debt; and other allowed unsecured claims or deficiencies. Claim allowance and classification remain subject to proper objection and Court order.

Class 4 receives pro rata distributions of the Distribution Fund. The initial distribution will occur within 30 days after the Effective Date to the extent funds are available after required payments and reserves. Further distributions will occur quarterly when economically reasonable, with a final distribution after claims and estate recoveries are resolved. Pro Rata Share is a holder's Allowed Class 4 Claim divided by all Allowed Class 4 Claims plus the amounts reserved for unresolved Class 4 Claims under Court order. Reserves will be adjusted by order or approved procedures; no disputed holder loses a corresponding reserve merely because its claim is not liquidated by closing.

Class 5 consists of membership or other equity interests in the Debtor, with ownership subject to determination. No distribution will occur on an interest until higher-priority entitlements have been paid or reserved as required by law, including any interest required in a solvent estate. After final satisfaction of those entitlements and resolution of ownership, remaining proceeds, if any, will be distributed according to established ownership. No residual is promised on the present incomplete claims and reserve record.

**Article IV Voting and confirmation**

For the proposed $7.5 million sale, the following classification, treatment and voting schedule is proposed. Filed amounts are not adjudicated amounts; disputed and unliquidated claims require the applicable allowance or temporary voting procedures. No assumed recovery or voting percentage is assigned to an unresolved claim. The Court will determine any contested classification, impairment or voting issue before ballots are counted.

Class 1 County of Ulster. Proposed impaired class, entitled to vote, because the Plan defers enforcement and payment to the postconfirmation closing. Filed claim amount: $114,593.98. The allowed secured obligation will be paid in cash at closing, including lawful interest and charges, subject to determination of any disputed portion and appropriate reserve. The voting amount is the filed amount unless changed under applicable claims or voting procedures. Any priority component receives its legally required treatment without duplicating the same debt.

Class 2 Ridgeview Lender LLC. Proposed impaired class, entitled to vote. Filed petition-date amount: $4,979,257.61. The allowed secured payoff will be paid in cash at closing, with only legally recoverable accruals, fees and costs, and all applicable credits. The voting amount is the filed amount unless changed under applicable claims or voting procedures; a later payoff does not automatically become the voting amount. Any allowed unsecured deficiency receives Class 4 treatment, subject to section 1111(b) and any further required determination.

Class 3 Potential SBA secured claim. No SBA proof of claim or established voting amount appears on the October 26 register. The Plan does not allow a $995,000 claim, concede a lien or assign a zero voting amount. If an enforceable secured claim is established, its collateral, priority, amount, treatment, impairment and voting rights must be determined and disclosed before solicitation; otherwise this reserved class will be deleted. No vote will be manufactured from an unestablished claim.

Class 4 General unsecured claims. Proposed impaired class, entitled to vote to the extent claims are allowed or temporarily allowed for voting. Identified fixed amounts are Central Hudson $73,696.15, IRS $4,500 and scheduled KKZF $2,187.50 if deemed filed under section 1111(a), totaling $80,383.65 before other allowed claims. Claim No. 4 is unliquidated; Kleinman or MAA debt and any other claims or deficiencies require the applicable allowance and voting procedures. Allowed holders share pro rata in available proceeds after senior payments and required reserves. The Plan seeks payment in full to the extent funds permit but guarantees no percentage on the

present record. Disputed claims will receive appropriate court-approved reserves; no disputed amount is assigned zero merely to affect voting.

Class 5 Equity interests. Proposed impaired class. Established interest holders receive only any residual after satisfaction of all higher-ranking entitlements, including applicable interest. Ownership percentages remain subject to determination. If the solicitation version provides a potential residual distribution, eligible holders may vote in their established interests as provided by law or Court order. If it instead provides that the class receives no property, the class is deemed to reject under section 1126(g) and receives no ballot. Equity votes cannot satisfy section 1129(a)(10). No competing treatments will be submitted to voters without identifying which applies.

Proposed solicitation schedule, subject to Court approval: the disclosure-statement sufficiency hearing is proposed for December 17, 2026 at 10:30 a.m., using the date supplied for Judge Stong, subject to calendar confirmation and adequate notice. The selected transaction and final Plan and disclosure supplements are targeted for May 18, 2027, with further disclosure approval and resolicitation as required for material changes. The Debtor proposes June 14, 2027 as the solicitation mailing deadline and July 19, 2027 at 5:00 p.m. Eastern Time as both the deadline for actual receipt of ballots and the deadline to file and serve confirmation objections. No solicitation may begin before the Court approves the applicable disclosure and voting procedures. These are proposed dates and procedures, not existing Court deadlines.

A claims class accepts only if the accepting eligible votes constitute at least two-thirds in amount and more than one-half in number of the allowed claims actually voting in that class, subject to section 1126 and Court orders. Equity acceptance requires at least two-thirds in amount of allowed interests actually voting. If a claims class is impaired, the Debtor must obtain acceptance by at least one impaired claims class excluding insider acceptances under section 1129(a)(10). If that requirement and the other applicable confirmation requirements are met, the Debtor may seek confirmation over another class's rejection under section 1129(b). A $7.5 million price does not itself establish the required acceptance, adequate reserves or a right to retain equity.Confirmation must satisfy section 1129(a)(7), applicable priority rules, feasibility and, section 1129(b).

**Article V Parallel marketing and governmental approvals**

The Debtor will seek a market-tested sale while pursuing governmental approvals and a potentially financeable retention or lease alternative. Marketing must remain nonbinding absent further

approval. Broker or other professional employment and compensation require appropriate authorization. No unapproved cash-collateral use or borrowing is authorized. The Debtor proposes to pursue a sale of the Property for $7.5 million to Talmud Torah Ohel Yochanan on the terms set forth in the letter of intent attached as Exhibit "A". The proposed transaction remains subject to execution of a definitive purchase agreement, any required competitive marketing process, and Bankruptcy Court approval. The Debtor will continue pursuing governmental approvals and evaluating a funded retention alternative while the sale process proceeds. The state-court enforcement matter, Ulster County Index No. EF2025-2829, is being handled by separate state-court counsel, with bankruptcy counsel coordinating material status updates.

The June 12, 2026 ACI document at ECF No. 36-28 is a historical nonbinding proposal, not an operative lease, existing rental income or committed funding. The Debtor does not rely on its proposed rent as a source for this Plan. Any future operating arrangement requires defined terms, committed funding and applicable approvals.

Proposed longer milestones, subject to approval and existing deadlines: January 15, 2027 initial detailed report; February 16 initial market and approval assessment; April 16 selected transaction report; May 18 final plan and disclosure supplements; July 19 acceptance target. The Debtor may proceed earlier. These dates require any necessary exclusivity and scheduling relief and do not postpone the existing November 5 insurance directive, November 18 plan deadline or November 23 section 362(d)(3) date.

**Article VI Sale implementation and funding**

The selected sale will close only after confirmation and after any applicable Rule 3020(e) stay expires or is waived by order. No lien or lease is extinguished merely because the Plan says "free and clear." Any use of section 363(f) must satisfy its conditions, and all applicable section 365 rights must be addressed.

The cash waterfall is: first, Court-authorized closing expenses and taxes necessary to transfer; second, secured claims in their established lien priority, with disputed amounts reserved as ordered; third, allowed administrative and priority obligations and required reserves; fourth, Class 4 pro rata distributions; fifth, any remaining lawful senior entitlements before Class 5 residual. The order and funding of any tax or expense that affects a secured creditor's collateral remain subject to applicable priority law and Court order; this clause grants no unauthorized surcharge.

The Debtor reports no current operating capital. An individual owner is expected to supply carrying costs without loan treatment, remuneration, reimbursement, lien, administrative claim or subrogation for those new contributions.

**Article VII Claims administration and retained estate rights**

Claim objections will be filed by the administrator within 180 days after the Effective Date, subject to extension for cause after notice. No new bar date for filing proofs of claim is imposed by this paragraph. Disputed claims receive no distribution until allowed, with Court-approved adequate reserves. Estimation, temporary voting allowance, liquidation and insurance recovery must be distinguished. Wrongful-death and personal-injury claims remain subject to 28 U.S.C. § 157(b)(2)(B) and (b)(5), jury and reference rules; the Plan does not authorize final distribution estimation where the bankruptcy court lacks that authority.

The Debtor preserves its defenses to the alleged Central UTA lease and any estate claims independently established by actual receipts, transfers or other conduct; no lease, rent entitlement or deposit debt is admitted. The Debtor also retains, subject to factual investigation, standing and proper procedure, potential accounting or recovery claims concerning actual Property receipts or transfers involving the identified YMAH entities, Joseph or Yanky Doppelt and other recipients established by records; defenses and objections to Kleinman/MAA debt and assignment assertions; claims concerning unauthorized affiliate guarantees or mortgages, if established; insurance, indemnity and contribution rights concerning Claim No. 4; and claims concerning unauthorized postpetition transfers, if established.

This reservation alleges no fraud, breach or recoverable amount merely from an affiliation. Before solicitation, supplement with the known transactions, actual proposed defendants, legal bases, limitations issues and estimated recoveries or an explanation of uncertainty. A general reservation alone is not a substitute for adequate disclosure. No estate claim is released to protect a funding owner or management.

**Article VIII Contracts taxes management and discharge**

The Debtor disputes that the alleged Central UTA lease ever became operative and states that it never materialized. It shall be identified separately as a disputed asserted arrangement, without admitting an unexpired lease, tenancy, cure amount or right to future rent. If an affected person asserts enforceable rights, the Debtor will seek the appropriate determination with notice before implementing conflicting transaction terms. Only an actual enforceable executory contract or

unexpired lease requires the applicable section 365 treatment. No blanket assumption, rejection or zero cure is proposed.

No nondebtor release, management exculpation or injunction beyond applicable statutory authority is proposed. Any discharge is limited by section 1141(d); a liquidating entity may receive no discharge under section 1141(d)(3). Existing safety orders, zoning law and licensing requirements remain enforceable according to applicable law. Modification and any change from sale to retention will be accompanied by compliance with § 1127, applicable Rules 3017 and 3019, and further disclosure or voting as required.

**Article IX Required supplements and continuing jurisdiction**

The Court retains jurisdiction only to the extent authorized by law over implementation, claims, professional compensation, properly retained causes, modification and final decree. Reporting and statutory fees continue. No provision silently resolves the pending trustee, counsel, stay-relief or regulatory matters. The administrator will seek a substantial-consummation timetable and final decree as required by the Local Rules and Rule 3022.

Dated: New York, New York
October 26, 2026

**SOBERS LAW, PLLC**

By: /s/ Vivian Sobers.
Vivian Sobers, Esq.
11 Broadway, Suite 615
New York, New York 10004
vsobers@soberslaw.com | (917) 225-4501
Counsel for the Debtor